**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SARA SANGUINETTI, RAYMOND D. SPEIGHT, DAVID DIETZEL, PATRICIA SAAVEDRA, AND NINA S. KUHLMANN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>NEVADA RESTAURANT SERVICES, INC.,<br><br>Defendant. | Case No. 2:21-cv-01768-RFB-DJA<br><br>Consolidated with: 2:21-cv-01780-RFB-EJY<br><br>**CLASS ACTION SETTLEMENT AGREEMENT** |

This Settlement Agreement, dated as of March 12, 2024, is made and entered into by and among the following Settling Parties (as defined below): Sara Sanguinetti, Raymond D. Speight, David Dietzel and Nina S. Kuhlmann[1] (collectively, "Plaintiffs"), individually and on behalf of the Settlement Class (as defined below), by and through their counsel of record, and Nevada Restaurant Services, Inc. ("NRS" and, together with Plaintiffs, the "Parties"), by and through its counsel of record, J. Randall Jones, Esq., Michael J. Gayan, and Mona Kaveh, Esq. of Kemp Jones, LLP.  The Settlement Agreement (as defined below) is subject to Court approval and is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof:

**THE LITIGATION**

Plaintiffs allege that on or about January 16, 2021, cybercriminals breached NRS's computer systems and networks ("Data Incident").  Plaintiffs further allege that, as a result of the Data Incident, the criminals gained access to Plaintiffs' and others' personal information, including but not limited to

---

[1] Patricia Saavedra will be voluntarily dismissed from this action prior to final approval, and is not being put forth as a Class Representative.

**Settlement Agreement**

names, dates of birth, Social Security Numbers, driver's license numbers or state ID numbers, passport numbers, financial account and/or routing numbers, health insurance information, treatment information, biometric data, medical record, taxpayer identification numbers, and credit card numbers and/or expiration dates. (collectively, "PII").

After discovering the Data Incident, NRS notified approximately 227,903 individuals of the Data Incident. NRS offered individuals who were impacted by the Data Incident one or more years of free credit monitoring depending on his/her jurisdiction.

Individuals, including Plaintiffs, were mailed notices of the Data Incident on or around July 1, 2021. On August 24, 2021, Plaintiff Sara Sanguinetti filed a lawsuit asserting claims against NRS relating to the Data Incident.  On September 27, 2021 Plaintiff Raymond D. Speight filed a separate lawsuit asserting claims against NRS relating to the Data Incident (Case No. 2:21-cv-01780-RFB-EJY). On November 4, 2021, the Court consolidated these matters, and on November 16, 2021, Plaintiffs filed the operative amended class-action complaint in the United States District Court for the District of Nevada. The case is titled *Sanguinetti, et al. v. Nevada Restaurant Services, Inc.*, Case No. 2:21-cv-01768-RFB-DJA (D. Nev.) (the "Litigation").

After substantial litigation including significant motion practice and discovery, and over the course of several months, the Parties engaged in settlement negotiations. The Parties participated in a formal mediation presided over by Bruce Friedman, Esq. on November 7, 2023. As a result of these negotiations and the mediation, and negotiations following the mediation which lead to a mediator's proposal by Mr. Friedman, the Parties accepted Mr. Friedman's mediator's proposal with some modification, and reached a settlement, which is memorialized in this settlement agreement ("Settlement Agreement").

Pursuant to the terms set out below, this Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against NRS and the Released Persons (as defined below) relating to the Data Incident, by and on behalf of Representative Plaintiffs and the Settlement Class (as defined below).

/ / /

**Settlement Agreement**

1

**CLAIMS OF REPRESENTATIVE PLAINTIFFS AND BENEFITS OF SETTLING**

2      Plaintiffs believe the claims asserted in the Litigation, as set forth in the Amended Consolidated

3  Class Action Complaint, have merit. Plaintiffs and Proposed Settlement Class Counsel recognize and

4  acknowledge, however, the expense and length of continued proceedings necessary to prosecute the

5  Litigation against NRS through motion practice, trial, and potential appeals. They have also considered

6  the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such

7  litigation, especially in complex class actions. Proposed Settlement Class Counsel are highly

8  experienced in class action litigation and very knowledgeable regarding the relevant claims, remedies,

9  and defenses at issue generally in such litigation and in this Litigation.  They have determined that the

10  settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best

11  interests of the Settlement Class.

12

**DENIAL OF WRONGDOING AND LIABILITY**

13      NRS denies each and all of the claims and contentions alleged against it in the Litigation. NRS

14  denies all charges of wrongdoing or liability as alleged, or which could be alleged, in the Litigation.

15  Nonetheless, NRS has concluded that further conduct of the Litigation would be protracted and

16  expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon

17  the terms and conditions set forth in this Settlement Agreement. NRS has considered the uncertainty

18  and risks inherent in any litigation. NRS has, therefore, determined that it is desirable and beneficial that

19  the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement

20  Agreement.

21

**TERMS OF THE SETTLEMENT**

22      NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiffs,

23  individually and on behalf of the Settlement Class and NRS that, subject to the approval of the Court,

24  the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and

25  the Litigation shall be dismissed with prejudice as to the Settling Parties, and the Settlement Class,

26  except those members of the Settlement Class who lawfully opt-out of the Settlement Agreement, upon

27  and subject to the terms and conditions of this Settlement Agreement, as follows.

28

**Settlement Agreement**

1.      **Definitions**

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1      "Agreement" or "Settlement Agreement" means this agreement.

1.2      "Claims Administration" means the processing and payment of claims received from members of the Settlement Class by the Claims Administrator.

1.3      "Claims Administrator" means Kroll Settlement Administration LLC, a company experienced in administering class action claims generally and specifically those of the type provided for and made in data breach litigation.

1.4      "Claims Deadline" means the postmark and/or online submission deadline for valid claims submitted pursuant to ¶¶ 2.1 and 2.2.

1.5      "Claim Form" means the claim form to be used by members of the Settlement Class to submit a Settlement Claim, either through the mail or online through the Settlement Website, substantially in the form as shown in **Exhibit C** to this Agreement.

1.6      "Costs of Claims Administration" means all actual costs associated with or arising from Claims Administration.

1.7      "Court" means the United States District Court for the District of Nevada.

1.8      "Dispute Resolution" means the process for resolving disputed Settlement Claims as set forth in this Agreement.

1.9      "Effective Date" means the first date by which all of the events and conditions specified in ¶ 1.10 herein have occurred and been met.

1.10      "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered an Order of Dismissal with Prejudice (as that term is defined herein); and (iii) the time to appeal or seek permission to appeal from the Order has expired or, if appealed, the appeal has been dismissed in its entirety, or the Order has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review.  Notwithstanding the above, any order modifying or reversing any attorneys' fee award or service award made in this case shall not affect whether the Order is "Final" as defined herein or any other aspect of the Order of

Dismissal.

1.11 "Final Approval Order" means the order finally approving the Settlement and entering an Order of Dismissal.

1.12 "Order of Dismissal" means an Order dismissing the entire case with prejudice has been rendered and entered by the Court.

1.13 "Long Notice" means the long form notice of settlement posted on the Settlement Website, substantially in the form as shown in **Exhibit B** to this Agreement.

1.14 "Notice Commencement Date" means thirty days following entry of the Preliminary Approval Order.

1.15 "Objection Date" means the date by which members of the Settlement Class must mail to Proposed Settlement Class Counsel and counsel for NRS or, in the alternative, file with the Court through the Court's electronic case filing ("ECF") system their objection to the Settlement Agreement for that objection to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes.

1.16 "Opt-Out Date" means the date by which members of the Settlement Class must mail their requests to be excluded from the Settlement Class for that request to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes.

1.17 "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.18 "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement and ordering that notice be provided to the Settlement Class.

1.19 "Proposed Settlement Class Counsel" means David Lietz and Gary Klinger of Milberg Coleman Bryson Phillips Grossman PLLC; M. Anderson Berry and Gregory Haroutunian of Clayeo C. Arnold, A Professional Corp.; Jean Martin of Morgan & Morgan; George Haines and Gerardo Avalos of Freedom Law Firm; Michael Kind of Kind Law; and David Wise and Joseph Langone of Wise Law

Firm, PLC.

1.20   "Related Entities" means NRS's respective past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was, or could have been named as a defendant in any of the actions in the Litigation, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Incident or who pleads *nolo contendere* to any such charge.

1.21   "Released Claims" shall collectively mean any and all past, present, and future claims and causes of action including, but not limited to, any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, including: 15  U.S.C. §§ 45 *et seq.*, and all similar statutes in effect in any states in the United States as defined below; negligence; breach of implied contract; negligence *per se*; violation of the Nevada Consumer Fraud Act Nev. Rev. Stat. § 41.600; unjust enrichment; violations of the California Consumer Privacy Act, Cal. Civ. Code. § 1798.100 *et seq.*; violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*;  breach of fiduciary duty; breach of confidence; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any member of the Settlement Class against any of the Released Persons based on, relating to, concerning or arising out of the Data Incident and alleged theft of personal information or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation.  Released Claims shall not include the

6

**Settlement Agreement**

right of any Settlement Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of members of the Settlement Class Members who have timely excluded themselves from the Settlement Class.

1.24    "Released Persons" means NRS and its Related Entities and each of its past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers.

1.25    "Plaintiffs" and "Representative Plaintiffs" mean David Dietzel, Raymond D. Speight, Sara Sanguinetti, and Nina S. Kuhlmann.

1.26    "Data Incident" means the cyberattack perpetrated on NRS on or about January 16, 2021, in which third-party criminals gained unauthorized access to NRS's network and gained unauthorized access to the personal information of Plaintiffs and other consumers.

1.27    "Settlement Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement.

1.28    "Settlement Class" means all persons who were mailed notice by NRS that their personal and/or financial information was impacted in a data incident occurring on or before January 16, 2021. The Settlement Class specifically excludes: (i) NRS, any Related Entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

1.29    "Settlement Class Member(s)" means all persons meeting the definition of the Settlement Class.

1.30    "Settlement Website" means a website, the URL for which to be mutually selected by the Settling Parties, that will inform Settlement Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines and related information, as well as provide the Settlement Class Members with the ability to submit a Settlement Claim online.

1.31    "Settling Parties" means, collectively, NRS and Plaintiffs, individually and on behalf of the Settlement Class.

1.32    "Short Notice" means the short form notice of the proposed class action settlement, substantially in the form as shown in **Exhibit A** to this Agreement. The Short Notice will direct recipients to the Settlement Website and inform members of the Settlement Class of, among other things, the Claims Deadline, the Opt-Out and Objection Deadlines, and the date of the Final Fairness Hearing (if set prior to the Commencement Date (as defined below)).

1.33    "Unknown Claims" means any of the Released Claims that any member of the Settlement Class, including any Plaintiffs, does not know or suspect to exist in his/her favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with, and release of, the Released Persons, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Plaintiffs intend to and expressly shall have, and each of the other members of the Settlement Class intend to and shall be deemed to have, and by operation of the Order of Dismissal shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, California Civil Code §§ 1798.80 *et seq.*, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Members of the Settlement Class, including Plaintiffs, and any of them, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiffs expressly shall have, and each

other member of the Settlement Class shall be deemed to have, and by operation of the Order of Dismissal shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and members of the Settlement Class shall be deemed by operation of the Order of Dismissal to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.34 "United States" as used in this Settlement Agreement includes the District of Columbia and all territories.

1.35 "Valid Claims" means Settlement Claims in an amount approved by the Claims Administrator or found to be valid through the claims processing and/or Dispute Resolution process.

**2.  Settlement Benefits**

2.1  <u>Expense Reimbursement</u>. All members of the Settlement Class who submit a Valid Claim using the Claim Form are eligible for the following documented out-of-pocket expenses, not to exceed $350 per member of the Settlement Class, that were incurred as a result of the Data Incident, such as: (i) unreimbursed bank fees; (ii) long distance telephone charges; (iii) cell phone charges (only if charged by the minute); (iv) data charges (only if charged based on the amount of data used); (v) postage; (vi) gasoline for local travel; and (vii) expenses stemming from credit reports, credit monitoring, or other identity theft insurance product purchased between January 16, 2021 and the end of the Claims Period. To receive reimbursement for any of the above-referenced out-of-pocket expenses, Settlement Class Members must submit (i) their name and current address; (ii) supporting documentation of such out-of-pocket expenses; and (iii) a description of the loss, if not readily apparent from the documentation.

Members of the Settlement Class are also eligible to receive up to four hours of lost time spent dealing with issues arising out of the Data Incident (calculated at the rate of $35 per hour).  Members of the Settlement Class must attest under penalty of perjury on the Claim Form as to the time spent by providing a written description. Claims made for lost time can be combined with claims made for out-of-pocket expenses and, together with the out-of-pocket expenses, are subject to the $350 cap for each member of the Settlement Class.

2.2  <u>Extraordinary Expense Reimbursement</u>: All members of the Settlement Class who have suffered a proven monetary loss and who submit a Valid Claim using the Claim Form are eligible for

up to $10,000 if: (1) the loss is an actual, documented, and unreimbursed monetary loss requiring the submission of a proof of loss under penalty of perjury; (2) the loss was caused by the Data Incident; (3) the loss occurred between January 16, 2021, and the Claims Deadline; and (4) the loss is not already covered by one or more of the reimbursement categories listed in ¶ 2.1; and the member of the Settlement Class made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

2.3    Members of the Settlement Class seeking reimbursement under ¶¶ 2.1 and/or 2.2 must complete and submit a Claim Form to the Claims Administrator, postmarked or submitted online on or before the 90th day after the Notice Commencement Date. The notice to the class will specify this deadline and other relevant dates described herein. The Claim Form must be verified by the member of the Settlement Class with a statement that his or her claim is true and correct, to the best of his or her knowledge and belief, and is being made under penalty of perjury. Notarization shall not be required. The member of the Settlement Class must submit reasonable documentation that the out-of-pocket expenses and charges claimed were both actually incurred and plausibly arose from the Data Incident. Failure to provide supporting documentation of the out-of-pocket expenses and lost-time expenses referenced above, as requested on the Claim Form, shall result in denial of a claim. Disputes as to claims submitted under this paragraph are to be resolved pursuant to the provisions stated in ¶ 2.6.

2.4    <u>Credit Monitoring and Identity-Theft Protection</u>.  All members of the Settlement Class who submit a Valid Claim using the Claim Form are eligible for 36 months of free one-bureau identity-theft protection through IDX or another equivalent provider selected by Defendant. For members of the Settlement Class who opted to receive the credit monitoring initially offered by NRS, the credit monitoring and identity theft protections shall be in addition to that year. The identity theft shall include, at least, the following, or similar, services:

- One bureau credit monitoring.
- $1M in fraud protection.

2.5    <u>Alternative Cash Payment.</u> In place of the benefits contained in ¶¶ 2.1, 2.2, and 2.4, and not in addition to all other benefits, all Settlement Class Members are eligible to receive a payment of $50. The amount of Alternative Cash Payments shall not exceed $150,000 and, if the amounts claimed

exceed that amount, they shall be reduced *pro-rata* so that the total amount to be paid is not more than $150,000.

2.6     <u>Dispute Resolution for Claims</u>.

2.6.1     The Claims Administrator, in its sole discretion to be reasonably and in good faith exercised, will determine whether: (1) the claimant is a Settlement Class Member; (2) the claimant has provided all information needed to complete the Claim Form, including any documentation that may be necessary to reasonably support the out-of-pocket expenses and/or lost time described in ¶¶ 2.1 and 2.2; and (3) the information submitted could lead a reasonable person to conclude that the claimant has suffered the claimed losses as a result of the Data Incident. The Claims Administrator may, at any time, request from the claimant, in writing, additional information as the Claims Administrator may reasonably require in order to evaluate the claim, e.g., documentation requested on the Claim Form, information regarding the claimed losses, available insurance and the status of any claims made for insurance benefits, and claims previously made for identity theft and the resolution thereof. For any such Claims that the Claims Administrator determines to be implausible, the Claims Administrator will submit those Claims to the Settling Parties (one Plaintiffs' lawyer shall be designated to fill this role for all Plaintiffs). If the Settling Parties do not agree with the Settlement Administrator's determination, after meeting and conferring, then the Claim shall be referred for resolution to the claim referee, to be selected by the Parties if needed. Any costs associated with work performed by the claims referee shall be paid by NRS.

2.6.2     Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is facially valid, the Claims Administrator shall request additional information and give the claimant thirty (30) days to cure the defect before rejecting the claim. If the defect is not cured, then the claim will be deemed invalid and there shall be no obligation to pay the claim.

2.6.3     Following receipt of additional information requested by the Claims Administrator, the Claims Administrator shall have thirty (30) days to accept, in whole or lesser amount, or reject each claim. If, after review of the claim and all documentation submitted by the claimant, the Claims Administrator determines that such a claim is facially valid, then the claim shall be paid. If the

11

**Settlement Agreement**

claim is not facially valid because the claimant has not provided all information needed to complete the Claim Form and evaluate the claim, then the Settlement Administrator may reject the claim without any further action.

2.6.4    Settlement Class Members shall have thirty (30) days from receipt of the offer to accept or reject any offer of partial payment received from the Claims Administrator. If a Settlement Class Member rejects an offer from the Claims Administrator, the Claims Administrator shall have fifteen (15) days to reconsider its initial adjustment amount and make a final determination.  If the claimant approves the final determination, then the approved amount shall be the amount to be paid. If the claimant does not approve the final determination within thirty (30) days, then the dispute shall be submitted to the Settling Parties. If the Settling Parties do not agree with the Settlement Administrator's determination, or are unable to reach a mutually satisfactory resolution after meeting and conferring, then the Claim shall be referred for resolution to the claim referee, to be selected by the Parties if needed.

2.6.5    If any dispute is submitted to the claims referee, the claims referee may approve the Claims Administrator's determination by making a ruling within fifteen (15) days. The claims referee may make any other final determination of the dispute or request further supplementation of a claim within thirty (30) days. The claims referee's determination shall be based on whether the claims referee is persuaded that the claimed amounts are reasonably supported in fact and were caused by the Data Incident. The claims referee shall have the power to approve a claim in full or in part. The claims referee's decision will be final and non-appealable. Any claimant referred to the claims referee shall reasonably cooperate with the claims referee, including by either providing supplemental information as requested or, alternatively, signing an authorization allowing the claims referee to verify the claim through third-party sources, and failure to cooperate shall be grounds for denial of the claim in full. The claims referee shall make a final decision within thirty (30) days of receipt of all supplemental information requested. The Parties shall jointly select an acceptable claims referee if the need for one arises under the terms of this section.

2.7    <u>Business Practices Changes</u>. Plaintiffs have received assurances in the form of a highly confidential declaration (suitable for filing under seal if the need to do so arises) that NRS has implemented or will implement certain reasonable steps to adequately secure its systems and

environments and will maintain such measures, at its own separate expense, through December 31, 2025.

2.8    Confirmatory Discovery. NRS has provided reasonable access to confidential and highly confidential confirmatory discovery regarding the number of Settlement Class Members and state of residence, the facts and circumstances of the Data Incident and NRS's response thereto, and the changes and improvements that have been made or are being made to further protect Settlement Class Members' PII.

2.9    Settlement Expenses. All costs for notice to the Settlement Class as required under ¶¶ 3.1 and 3.2, Costs of Claims Administration under ¶¶ 8.1, 8.2, and 8.3, and the costs of Dispute Resolution described in ¶ 2.5, shall be paid by NRS.

2.10    Settlement Class Certification. The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class. If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue. The Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

**3.    Order of Preliminary Approval and Publishing of Notice of Fairness Hearing**

3.1    As soon as practicable after the execution of the Settlement Agreement, Proposed Settlement Class Counsel and counsel for NRS shall jointly submit this Settlement Agreement to the Court, and Proposed Settlement Class Counsel will file a motion for preliminary approval of the settlement with the Court requesting entry of a Preliminary Approval Order in the form to be agreed upon by the parties, or an order substantially similar to such form in both terms and cost, requesting, among other things:

a)    certification of the Settlement Class for settlement purposes only pursuant to ¶ 2.10;

**Settlement Agreement**

b) preliminary approval of the Settlement Agreement as set forth herein;

c) appointment of Proposed Settlement Class Counsel as Settlement Class Counsel;

d) appointment of Plaintiffs as Class Representatives;

e) approval of a customary form of Short Notice to be mailed to Settlement Class Members in a form substantially similar to the one attached as **Exhibit A** to this Agreement;

f) approval of the Long Notice to be posted on the Settlement Website in a form substantially similar to the one attached as **Exhibit B** to this Agreement, which, together with the Short Notice, shall include a fair summary of the parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making claims to the extent contemplated herein, and the date, time and place of the Final Fairness Hearing; and

g) appointment of Kroll Settlement Administration LLC as the Claims Administrator.

The Short Notice and Long Notice have been reviewed and approved by the Claims Administrator but may be revised as agreed upon by the Settling Parties prior to submission to the Court for approval.

3.2 NRS shall pay for providing notice to the Settlement Class in accordance with the Preliminary Approval Order, and the costs of such notice, together with the Costs of Claims Administration. Attorneys' fees, costs, and expenses of Settlement Class Counsel, and service awards to Class Representatives, as approved by the Court, shall be paid by NRS as set forth in ¶ 7 below. Notice shall be provided to Settlement Class Members by the Claims Administrator as follows:

a) *Class Member Information*: No later than seven (7) days after entry of the Preliminary Approval Order, NRS shall provide the Claims Administrator with the name, and last known physical address and email address of each Settlement

**Settlement Agreement**

Class Member (collectively, "Class Member Information") that NRS possess.

      • The Class Member Information and its contents shall be used by the Claims Administrator solely for the purpose of performing its obligations pursuant to this Settlement Agreement and shall not be used for any other purpose at any time. Except to administer the settlement as provided in this Settlement Agreement, or provide all data and information in its possession to the Settling Parties upon request, the Claims Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Class Member Information.

b) *Settlement Website:* Prior to the dissemination of the Class Notice, the Claims Administrator shall establish the Settlement Website that will inform Settlement Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines and related information. The Settlement Website shall include, in .pdf format and available for download, the following: (i) the Long Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iv) this Settlement Agreement; (v) the operative Amended Class Action Complaint filed in the Litigation; and (vi) any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website shall provide Class Members with the ability to complete and submit the Claim Form electronically.

c) *Short Notice:* Within thirty (30) days after the entry of the Preliminary Approval Order and to be substantially completed not later than forty-five (45) days after entry of the Preliminary Approval Order, and subject to the requirements of this Agreement and the Preliminary Approval Order, the Claims Administrator will provide notice to the Settlement Class as follows:

      • To all class members for whom NRS is in possession of a postal address. Before any mailing under this Paragraph occurs, the

**Settlement Agreement**

Claims Administrator shall run the postal addresses of Settlement Class Members through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS;

- in the event that a mailed Short Notice is returned to the Claims Administrator by the USPS because the address of the recipient is no longer valid, and the envelope contains a forwarding address, the Claims Administrator shall re-send the Short Notice to the forwarding address within seven (7) days of receiving the returned Short Notice;

- in the event that subsequent to the first mailing of a Short Notice, and at least fourteen (14) days prior to the Opt-Out and Objection Deadline, a Short Notice is returned to the Claims Administrator by the USPS because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender" and does not contain a new forwarding address, the Claims Administrator shall perform a standard skip trace, in the manner that the Claims Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Short Notice within seven (7) days of receiving such information. This shall be the final requirement for mailing.

- For all class members for whom NRS is in possession of a valid email address the Claims Administrator will send the Short Notice via email. In the event NRS is in possession of a valid physical address and a valid email address the Claims

16

**Settlement Agreement**

Administrator will send a copy of the Short Notice to the email address, only, unless the email is returned as undeliverable, in which case the Claims Administrator will re-send the Short Notice via USPS.

d)    Publishing, on or before the Notice Commencement Date, the Short Notice, Claim Form, and Long Notice on the Settlement Website, as specified in the Preliminary Approval Order, and maintaining and updating the website throughout the claim period; and

e)    A toll-free help line, with an interactive voice response system providing answers to the most common questions and a live operator option, shall be made available to provide Settlement Class Members with additional information about the settlement.  The Claims Administrator also will provide copies of the forms of Short Notice, Long Notice, and paper Claim Form, as well as this Settlement Agreement, upon request; and

f)    Contemporaneously with seeking Final Approval of the Settlement, Proposed Settlement Class Counsel and NRS shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with this provision of notice.

3.3    The Short Notice, Long Notice, and other applicable communications to the Settlement Class may be adjusted by the Claims Administrator, respectively, in consultation and agreement with the Settling Parties, as may be reasonable and not inconsistent with such approval. Initial notice under the Notice Program shall commence within thirty (30) days after entry of the Preliminary Approval Order and shall be completed within forty-five (45) days after entry of the Preliminary Approval Order.

3.4    Proposed Settlement Class Counsel and NRS's counsel shall request that after notice is completed, the Court hold a hearing (the "Final Fairness Hearing") and grant final approval of the settlement set forth herein.

3.5    NRS will also cause the Claims Administrator to provide (at NRS's expense) notice to the relevant state and federal governmental officials as required by the Class Action Fairness Act.

**4.     Opt-Out Procedures**

4.1     Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator. The written notice must clearly manifest a Person's intent to opt-out of the Settlement Class.  To be effective, written notice must be postmarked no later than sixty (60) days after the Notice Commencement Date.

4.2     All Persons who submit valid and timely notices of their intent to opt-out of the Settlement Class, as set forth in ¶ 4.1 above, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement.  All Persons falling within the definition of the Settlement Class who do not opt-out of the Settlement Class in the manner set forth in ¶ 4.1 above shall be bound by the terms of this Settlement Agreement and Order of Dismissal entered thereon.

4.3     In the event that within ten (10) days after the Opt-Out Date as approved by the Court, there have been more than 500 timely and valid Opt-Outs submitted, NRS may, by notifying Proposed Settlement Class Counsel and the Court in writing, void this Settlement Agreement.  If NRS voids the Settlement Agreement pursuant to this paragraph, NRS shall be obligated to pay all settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of Proposed Settlement Class Counsel and service awards.

**5.     Objection Procedures**

5.1     Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Date. All written objections and supporting papers (a) must be submitted to the designated Post Office box established by the Claims Administrator (who shall promptly forward any objections to counsel for the Parties; (b) must also be submitted to the Court either by filing electronically or in person at any location of the United States District Court for the District of Nevada or by mailing them to the Class Action Clerk, United States District Court for the District of Nevada at 333 Las Vegas Blvd South, Las Vegas, Nevada, 89101; (c) must clearly identify the case name and number (*Sanguinetti et al. v. Nevada Restaurant Services, Inc.*, Case No. 2:21-cv-01768-RFB-DJA), and; (d) be filed with the Court and postmarked on or before sixty

(60) days after the Notice Commencement Date. All objections will be scanned into the electronic case docket, and the parties will receive electronic notices of all filings.

5.2     Any such notices of an intent to object to the Settlement Agreement must be written and must include all of the following: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of notice, copy of original notice of the Data Incident); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of any and all counsel representing the objector in connection with the objection; (v) a statement as to whether the objector and/or his or her counsel will appear at the Final Fairness Hearing, and; (vi) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation).

5.3     Any Settlement Class Member who fails to comply with the requirements for objecting in ¶ 5.1 and ¶ 5.2 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation.  The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 5.1 and ¶ 5.2.  Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Order of Dismissal to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

**6.     Releases**

6.1     Upon the Effective Date, each Settlement Class Member, including Plaintiffs, shall be deemed to have, and by operation of the Order of Dismissal shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims. Further, upon the Effective Date,  and  to the fullest extent permitted by law, each Settlement Class Member, including Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in

which any of the Released Claims is asserted.

6.2     Upon the Effective Date, NRS shall be deemed to have, and by operation of the Order of Dismissal shall have, fully, finally, and forever released, relinquished, and discharged, Representative Plaintiffs, each and all of the Settlement Class Members, Proposed Settlement Class Counsel, of all claims, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims, except for enforcement of the Settlement Agreement.  Any other claims or defenses NRS may have against such Persons including, without limitation, any claims based upon or arising out of any retail, banking, debtor-creditor, contractual, or other business relationship with such Persons that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims are specifically preserved and shall not be affected by the preceding sentence.

6.3     Notwithstanding any term herein, neither NRS nor its Related Parties shall have or shall be deemed to have released, relinquished or discharged any claim or defense against any Person other than Representative Plaintiffs, each and all of the Settlement Class Members, and Proposed Settlement Class Counsel.

**7.     Plaintiffs' Counsel's Attorneys' Fees, Costs, and Expenses; Service Award to Representative Plaintiffs**

7.1     The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or service award to Plaintiffs, as provided for in ¶¶ 7.2 and 7.3, until after the substantive terms of the settlement had been agreed upon, other than that NRS would pay reasonable attorneys' fees, costs, expenses, and a service award to Plaintiffs as may be agreed to by NRS and Proposed Settlement Class Counsel and/or as ordered by the Court, or in the event of no agreement, then as ordered by the Court. NRS and Proposed Settlement Class Counsel then negotiated and agreed to the payment described in ¶ 7.2.

7.2     Proposed Settlement Class Counsel will seek, and NRS has agreed not to oppose, an order from the Court awarding $400,000.00 to Proposed Settlement Class Counsel for attorneys' fees, inclusive of any costs and expenses of the Litigation. Proposed Settlement Class Counsel, in their sole discretion, shall allocate and distribute the amount of attorneys' fees, costs, and expenses awarded by

the Court among Plaintiffs' Counsel.

7.3     Proposed Settlement Class Counsel will seek, and NRS has agreed not to oppose, an order from the Court awarding $2,500 in service awards to each of the four Class Representatives in this case (for a total payment of $10,000).

7.4     If awarded by the Court, NRS shall pay the attorneys' fees, costs, expenses, and service awards to Plaintiffs, as set forth above in ¶¶ 7.2, 7.3, and 7.4, within 10 (ten) days after the Effective Date.  Service awards to Class Representatives and attorneys' fees, costs, and expenses will be mailed to M. Anderson Berry, Clayeo C. Arnold, APC, 865 Howe Avenue, Sacramento, CA 95765. Proposed Settlement Class Counsel shall thereafter distribute the award of attorneys' fees, costs, and expenses among Plaintiffs' Counsel and service awards to Plaintiffs consistent with ¶¶ 7.2 and 7.3.

The amount(s) of any award of attorneys' fees, costs, and expenses, and the service award to Plaintiffs, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. These payments will not in any way reduce the consideration being made available to the Settlement Class as described herein. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or service award ordered by the Court to Proposed Settlement Class Counsel or Plaintiffs shall affect whether the Order of Dismissal is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

**8.     Administration of Claims**

8.1     The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶¶ 2.1 and 2.2.  Proposed Settlement Class Counsel and counsel for NRS shall be given reports as to both claims and distribution, and have the right to review and obtain supporting documentation and challenge such reports if they believe them to be inaccurate or inadequate. The Claims Administrator's and claims referee's, as applicable, determination of whether a Settlement Claim is a Valid Claim shall be binding, subject to the dispute resolution process set forth in ¶ 2.6.  All claims agreed to be paid in full by NRS shall be deemed valid.

8.2     Checks for Valid Claims shall be mailed and postmarked within sixty (60) days of the Effective Date, or within thirty (30) days of the date that the claim is approved, whichever is later.

8.3     All Settlement Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Order of Dismissal.

8.4     No Person shall have any claim against the Claims Administrator, claims referee, NRS, Proposed Settlement Class Counsel, Plaintiffs, and/or NRS's counsel based on distributions of benefits to Settlement Class Members.

**9.      Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

9.1     The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

      a)     the Court has entered the Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing, as required by ¶ 3.1;

      b)     NRS has not exercised its option to terminate the Settlement Agreement pursuant to ¶ 4.3;

      c)     the Court has entered the Order of Dismissal granting final approval to the settlement as set forth herein; and

      d)     the Order of Dismissal with prejudice has become Final, as defined in ¶ 1.12.

9.2     If all conditions specified in ¶ 9.1 hereof are not satisfied, the Settlement Agreement shall be canceled and terminated subject to ¶ 9.4 unless Proposed Settlement Class Counsel and NRS's counsel mutually agree in writing to proceed with the Settlement Agreement.

9.3     Within seven (7) days after the Opt-Out Date, the Claims Administrator shall furnish to Proposed Settlement Class Counsel and to NRS's counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

9.4     In the event that the Settlement Agreement or the releases set forth in paragraphs 6.1, 6.2, and 6.3 above are not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, (i) the Settling Parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled litigation deadlines be reasonably

extended by the Court so as to avoid prejudice to any Settling Party or Settling Party's counsel, and (b) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*. Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses, and/or service awards shall constitute grounds for cancellation or termination of the Settlement Agreement. Further, notwithstanding any statement in this Settlement Agreement to the contrary, NRS shall be obligated to pay amounts already billed or incurred for costs of notice to the Settlement Class, Claims Administration, and Dispute Resolution pursuant to ¶ 2.5 above and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

### 10.    Miscellaneous Provisions

10.1    The Settling Parties (i) acknowledge that it is their intent to consummate this agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

10.2    The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.  The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis. It is agreed that no Party shall have any liability to any other Party as it relates to the Litigation, except as set forth herein.

10.3    Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the

settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  Any of the Released Persons may file the Settlement Agreement and/or the Order of Dismissal in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4     The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

10.5     This Agreement contains the entire understanding between NRS and Plaintiffs regarding the payment of the Litigation settlement and supersedes all previous negotiations, agreements, commitments, understandings, and writings between NRS and Plaintiffs in connection with the payment of the Litigation settlement. Except as otherwise provided herein, each party shall bear its own costs.

10.6     Proposed Settlement Class Counsel, on behalf of the Settlement Class, is expressly authorized by Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

10.7     Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

10.8     The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

10.9     The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

**Settlement Agreement**

10.10   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

10.11   As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it."

10.12   All dollar amounts are in United States dollars (USD).

10.13   Cashing a settlement check is a condition precedent to any Settlement Class Member's right to receive settlement benefits. All settlement checks shall be void ninety (90) days after issuance and shall bear the language: "This check must be cashed within ninety (90) days, after which time it is void." If a check becomes void, the Settlement Class Member shall have until six months after the Effective Date to request re-issuance. If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and NRS shall have no obligation to make payments to the Settlement Class Member for expense reimbursement under ¶¶ 2.1 and 2.2 or any other type of monetary relief. The same provisions shall apply to any re-issued check. For any checks that are issued or re-issued for any reason more than one hundred eighty (180) days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

10.14   All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

/ / /

/ / /

/ / /

**Settlement Agreement**

**AGREED TO BY:**

Dated: March 12, 2024

Dated: March 12, 2024

_/s/ Mona Kaveh_____
J. Randall Jones, Esq. (#1927)
Michael J. Gayan, Esq. (#11135)
Mona Kaveh, Esq. (#11825)
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Phone: (702) 385-6000
Email: r.jones@kempjones.com
m.gayan@kempjones.com
m.kaveh@kempjones.com

*Attorneys for Defendant*
*Nevada Restaurant Services, Inc.*

_/s/ David Lietz_____
David K. Lietz, Esq.
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Email: dlietz@milberg.com

George Haines, Esq. (#9411)
Gerardo Avalos, Esq. (#15171)
FREEDOM LAW FIRM
8985 South Eastern Avenue, Suite 350
Las Vegas, Nevada 89123
Telephone: (702) 880-5554
Email: Ghaines@freedomlegalteam.com

David Hilton Wise, Esq.
Joseph M. Langone, Esq.
WISE LAW FIRM, PLC
421 Court Street
Reno, Nevada 89501

M. Anderson Berry, Esq.
Gregory Haroutunian, Esq.
CLAYEO C. ARNOLD
A PROFESSIONAL CORPORATION
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Email: aberry@justice4you.com
gharoutunian@justice4you.com

Gary M. Klinger
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
227 Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

Michael Kind, Esq. (#13903)
KIND LAW
8860 South Maryland Parkway, Suite 106
Las Vegas, Nevada 89123

Jean Martin, Esq.
MORGAN & MORGAN
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602

*Attorneys for Plaintiffs and the Class*

Settlement Agreement

## __INDEX OF EXHIBITS__

| Exhibit | Description |
|---------|-------------|
| A | Short Form Notice |
| B | Long Form Notice |
| C | Claim Form |

**Settlement Agreement**