George Haines, Esq.
Nevada Bar No. 9411
Gerardo Avalos, Esq.
Nevada Bar No. 15171
**FREEDOM LAW FIRM**
8985 S. Eastern Ave., Suite 100
Las Vegas, Nevada 89123
(702) 880-5554
(702) 385-5518 (fax)
Ghaines@freedomlegalteam.com

David K. Lietz, *pro hac vice*
*dlietz@milberg.com*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877

(additional counsel on signature page)

*Attorneys for Plaintiffs
and Proposed Class*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| SARA SANGUINETTI, RAYMOND D. SPEIGHT, DAVID DIETZEL, PATRICIA SAAVEDRA, AND NINA S. KUHLMANN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>NEVADA RESTAURANT SERVICES, INC.,<br><br>Defendant. | Case No. 2:21-cv-01768-RFB-DJA<br><br>Consolidated with: 2:21-cv-01780-RFB-EJY<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

i

TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs Sara Sanguinetti, Raymond D. Speight, David Dietzel, and Nina S. Kuhlmann ("Plaintiffs"), individually and on behalf of all others similarly situated, will and hereby do move this Court, under Federal Rul of Civil Procedure 23, for an order granting preliminary approval of the proposed class action settlement on the terms and conditions set forth in the Class Settlement Agreement and Release ("Agreement"), a copy of which was filed separately with this Court on March 12, 2024 as ECF 103.

Plaintiffs further move the Court for the following order:

1.      Certifying the Settlement Class for settlement purposes;

2.      Appointing Plaintiffs Sara Sanguinetti, Raymond D. Speight, David Dietzel, and Nina S. Kuhlmann as Class Representatives for the Settlement Class;

3.      Appointing David Lietz and Gary Klinger of Milberg Coleman Bryson Phillips Grossman PLLC; M. Anderson Berry and Gregory Haroutunian of Clayeo C. Arnold, A Professional Corp.; Jean Martin of Morgan & Morgan; Geroge Haines and Gerardo Avalos of Freedom Law Firm; Michael Kind of Kind Law, and; and David Wise and Joseph Langone of Wise Law Firm, PLC as Settlement Class Counsel;

4.      Appointing Kroll Settlement Administration LLC ("Kroll") as the Claims Administrator;

5.      Approving the proposed notice to the Settlement Class, including the Claim Form, Long Notice, and Short Notice, attached to the Settlement Agreement (ECF 103) as Exhibits A through C, respectively;

6.      Directing notice to be made to the Settlement Class as described in the Agreement;

7.      Preliminarily approving the settlement subject to final review by the Court;

8.      Establishing deadlines for Settlement Class Members to submit an exclusion request from the settlement and to submit objections to the settlement;

9.      Setting a Final Approval Hearing.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of David Lietz and all exhibits attached thereto, all other documents filed in support of this motion, the papers and pleadings on file in this action, and upon such other and further evidence as may be offered at the time of the hearing.

Dated: March 12, 2024                    Respectfully Submitted,

_/s/George Haines_
George Haines, Esq. (#9411)
Gerardo Avalos, Esq. (#15171)
FREEDOM LAW FIRM
8985 South Eastern Avenue, Suite 350
Las Vegas, Nevada 89123
Telephone: (702) 880-5554
Email: Ghaines@freedomlegalteam.com

David Hilton Wise, Esq.
Joseph M. Langone, Esq.
WISE LAW FIRM, PLC
421 Court Street
Reno, Nevada 89501

David K. Lietz
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Email: dlietz@milberg.com

Gary M. Klinger
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
227 Monroe Street, Suite 2100
Chicago, IL 60606

Telephone: (866) 252-0878
Email: gklinger@milberg.com

M. Anderson Berry, Esq.
Gregory Haroutunian, Esq.
CLAYEO C. ARNOLD
A PROFESSIONAL CORPORATION
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Email: aberry@justice4you.com
gharoutunian@justice4you.com

Michael Kind, Esq. (#13903)
KIND LAW
8860 South Maryland Parkway, Suite 106
Las Vegas, Nevada 89123

Jean Martin, Esq.
MORGAN & MORGAN
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602

*Attorneys for Plaintiffs and Proposed Class*

# TABLE OF CONTENTS

I.    *INTRODUCTION* ................................................................................................ *1*

II.   *FACTUAL BACKGROUND* ........................................................................... *1*

   A.   Plaintiffs' Claims ................................................................................ 1

   B.   Procedural History ............................................................................. 2

   C.   Plaintiffs' Claims ............................................................................... 2

   D.   Discovery and Investigation ............................................................. 3

   E.   Settlement Negotiations .................................................................... 3

III.  *THE SETTLEMENT* ......................................................................................... *4*

   A.   The Class ............................................................................................. 5

   B.   The Benefits to Settlement Class Members ..................................... 5

   C.   Proposed Notice Administration ...................................................... 7

   D.   Attorneys' Fees and Expenses .......................................................... 7

   E.   Service Awards to Named Plaintiffs ................................................ 7

   F.   Release ................................................................................................. 8

IV.   *ARGUMENT* ....................................................................................................... *8*

   A.   The Settlement Merits Preliminary Approval ................................ 8

      1.   Legal Standard ................................................................................. 8

      2.   The Strength of Plaintiffs' Case ................................................... 10

      3.   Risk, Expense, Complexity, and Likely Duration of Further Litigation ...... 11

      4.   Relief Offered in Settlement ......................................................... 11

      5.   Arm's Length, Non-Collusive, Negotiated Resolution ............... 12

      6.   Experience and Views of Counsel and Adequate Representation of the Settlement Class 13

      7.   The Settlement Has No Obvious Deficiencies ............................. 13

      8.   The Proposed Method of Distributing Relief and Processing Claims Is Adequate ...... 14

      9.   The Agreement Treats Settlement Class Members Equally ........ 14

   B.   The Settlement Class Should Be Certified ..................................... 15

      1.   Legal Standard ............................................................................... 15

      2.   Plaintiffs' Claims Satisfy the Rule 23 Requirements for Certification ......... 15

         a.   The Settlement Class Is Ascertainable .................................... 15

         b.   The Settlement Class Is Numerous .......................................... 15

         c.   There Are Common Questions of Law and Fact ..................... 16

         d.   Plaintiffs' Claims Are Typical ................................................. 16

         e.   Plaintiffs and Settlement Class Counsel Are Adequate Representatives ...... 17

         f.   The Settlement Class Also Meets the Rule 23(b)(3) Requirements .......... 18

            i.   Predominance Is Satisfied ................................................... 18

            ii.   Class Treatment Is Superior ............................................... 19

V.    *CONCLUSION* .................................................................................................. *19*

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adoma v. Univ. of Phoenix, Inc.*,
  913 F.Supp.2d 964 (E.D. Cal. 2012)...................................................................10, 11, 13
*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)........................................................................................................18
*Barbosa v. Cargill Meat Sols. Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) .............................................................................11, 12, 13
*Briseno v. ConAgra Foods, Inc.*,
  944 F.3d  (9th Cir. 2017) ...............................................................................................15
*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)........................................................................................................15
*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .....................................................................................16, 17
*Gamble v. Boyd Gaming Corp.*,
  No. 2:13-cv-01009-JCM-PAL, 2016 WL 3693743 (D. Nev. July 11, 2016) ...............9
*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................................................passim
*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) .........................................................................................16
*Harris v. Palm Springs Alpine Estates, Inc.*,
  329 F.2d 909 (9th Cir. 1964) .........................................................................................15
*Hester v. Vision Airlines, Inc.*,
  No. 2:09-cv-00117, 2009 WL 4893185 (D. Nev. Dec. 16, 2009) ...........................17
*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ...........................................................................................7
*In re Wal-Mart Wage & Hour Emp't Practices Litig.*,
  No. 2:06-cv-00225-PMP-PAL, 2008 WL 3179315 (D. Nev. June 20, 2008) ...........15
*In re Wells Fargo Home Mortg.*,
  571 F.3d 953 (9th Cir. 2009) .........................................................................................19
*Kristensen v. Credit Payment Servs.*,
  12 F. Supp. 3d 1292 (D. Nev. 2014)..............................................................................15
*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ..........................................................................9, 11, 12, 14
*Local Joint Executive Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) .......................................................................................18
*Mora v. Cal West Ag Services, Inc.*,
  No. 1:15-cv-01490-LJO-EPG, 2019 WL 2084725 (E.D. Cal. 2019) ........................13
*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004).............................................................................11, 13

*Officers for Justice v. Civil Service Comm'n,*
  688 F.2d 615 (9th Cir. 1982) ...................................................................9, 11, 12
*Pauley v. CF Entm't,*
  No. 2:13-CV-08011-RGK-CW, 2020 WL 5809953 (C.D. Cal. July 23, 2020) ....................7, 8
*Powers v. Eichen,*
  229 F.3d 1249 (9th Cir. 2000) ...................................................................7
*Rodriguez v. W. Publ'g Corp.,*
  563 F.3d 948 (9th Cir. 2009) ...................................................................12
*Santoro v. Aargon Agency, Inc.,*
  252 F.R.D. 675 (D. Nev. 2008) ...................................................................17
*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003) ...................................................................15, 17
*United States v. Armour & Co.,*
  402 U.S. 673 (1971) ...................................................................11
*Utility Reform Project v. Bonneville Power Admin.,*
  869 F.2d 437 (9th Cir. 1989) ...................................................................9
*Van Lith v. iHeartMedia + Entm't, Inc.,*
  No. 1:16-CV-00066-SKO, 2017 WL 1064662 (E.D. Cal. Mar. 20, 2017)....................10, 11, 13
*Yahoo Mail Litig.,*
  13-CV-4980, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ...................................................................8
*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ...................................................................16
*Wolin v. Jaguar Land Rover N. Am. LLC,*
  617 F.3d 1168 (9th Cir. 2010) ...................................................................19
*Wren v. RGIS Inventory Specialists,*
  No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .........................................12

Statutes

Cal. Bus. & Prof. Code §§ 17200 ...................................................................2
Nev. Rev. Stat. § 41.600 ...................................................................2

Rules

Fed. R. Civ. P. 23...................................................................5, 8
Fed. R. Civ. P. 23(a) ...................................................................5
Fed. R. Civ. P. 23(b)(3)...................................................................5, 18, 19
Fed. R. Civ. P. 23(e) ...................................................................1, 8

Other Authorities

4 Herbert B. Newberg, Newberg on Class Actions § 11.25 ...................................................................8
Manual for Complex Litigation (Fourth)
  (Fed. Judicial Center 2004)...................................................................8
Newberg on Class Actions § 13:13 (5th ed. 2014) ...................................................................13

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.       INTRODUCTION

Plaintiffs Sara Sanguinetti, Raymond D. Speight, David Dietzel, and Nina S. Kuhlmann ("Plaintiffs"), individually and on behalf of all others similarly situated, seek preliminary approval of a proposed class action data beach settlement with Defendant and Nevada Restaurant Services, Inc. ("NRS") that provides significant monetary relief. As will be shown, the settlement satisfies all criteria for preliminary approval per Federal Rule of Civil Procedure 23(e). The settlement was reached with the assistance of an experienced mediator, Bruce Friedman, Esq. of JAMS, after extensive investigation, motions practice, discovery, and arm's-length negotiations. Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the settlement, certify the Settlement Class, approve the proposed Claim Form and Notices, and set a final approval hearing.

## II.      FACTUAL BACKGROUND

### A.       Plaintiffs' Claims

Plaintiffs allege that on or about January 16, 2021, cybercriminals breached NRS's computer systems and networks ("Data Incident").  Plaintiffs further allege that, as a result of the Data Incident, the criminals gained access to Plaintiffs' and others' personal information, including but not limited to names, dates of birth, Social Security Numbers, driver's license numbers or state ID numbers, passport numbers, financial account and/or routing numbers, health insurance information, treatment information, biometric data, medical record, taxpayer identification numbers, and credit card numbers and/or expiration dates. (collectively, "PII").

After discovering the Data Incident, NRS notified approximately 227,903 individuals of the Data Incident. NRS offered individuals who were impacted by the Data Incident one or more years of free credit monitoring depending on his/her jurisdiction.

Individuals, including Plaintiffs, were mailed notices of the Data Incident on or around July 1, 2021.

1

### B.    Procedural History

On August 24, 2021, Plaintiff Sara Sanguinetti filed a lawsuit asserting claims against NRS relating to the Data Incident.  On September 27, 2021 Plaintiff Raymond D. Speight filed a separate lawsuit asserting claims against NRS relating to the Data Incident (Case No. 2:21-cv-01780-RFB-EJY). On November 4, 2021, the Court consolidated these matters, and on November 16, 2021, Plaintiffs filed the operative amended class-action complaint in the United States District Court for the District of Nevada. The case is titled *Sanguinetti, et al. v. Nevada Restaurant Services, Inc.*, Case No. 2:21-cv-01768-RFB-DJA (D. Nev.) (the "Litigation").

After substantial litigation including significant motion practice and discovery, and over the course of several months, the Parties engaged in settlement negotiations. The Parties participated in a formal mediation presided over by Bruce Friedman, Esq. on November 7, 2023. As a result of these negotiations and the mediation, and negotiations following the mediation which lead to a mediator's proposal by Mr. Friedman, the Parties accepted Mr. Friedman's mediator's proposal with some modification, and reached a settlement, which is memorialized in the settlement agreement ("Settlement Agreement"), filed with this Court on March 12, 2024 as ECF 103.

Pursuant to the terms set out below, this Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against NRS and the Released Persons (as defined below) relating to the Data Incident, by and on behalf of Representative Plaintiffs and the Settlement Class (as defined below).

### C.    Plaintiffs' Claims

In the Consolidated Complaint, Plaintiffs assert the following six claims: (1) Negligence; (2) Breach of Implied Contract; (3) Negligence Per Se; (4) Violation of the Nevada Consumer Fraud Act, Nev. Rev. Stat. § 41.600; (5) Unjust Enrichment; (6) Violation of the California Consumer Privacy Act ("CCPA"); and (7) Violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq. ECF No. 20 at ¶¶ 162–248.

### D.    Discovery and Investigation

After the filing of the Amended Consolidate Complaint, after resolution of Defendant's motion to dismiss and after considerable negotiations over a confidentiality agreement and ESI protocol, Plaintiffs and NRS (the "Parties") engaged in formal discovery and mutual exchange of information, which included information regarding NRS's PII storage systems, policies and procedures regarding the safeguarding of PII in NRS's possession, custody, or control, information regarding the Plaintiffs' information that was potentially affected by the cybersecurity incident, and knowledge of third party unauthorized access to PII in the Data Breach. The Parties also brought discovery disputes to the Court's attention via motions, and worked on scheduling and preparing for depositions. With a thorough understanding of each party's information and the strengths and weaknesses of the claims and defenses in this matter, Class Counsel was able to evaluate the probability of class certification, success on the merits, and NRS's monetary exposure for the claims, the Parties agreed to a formal mediation. Lietz Decl. ¶ 5.

### E.    Settlement Negotiations

On November 7, 2023, the Parties engaged in an arm's-length mediation before Bruce Friedman, Esq., currently employed by JAMS in Los Angeles, California. Mr. Friedman is a highly sought after and accomplished mediator with a plethora of experience mediating data breach cases. The mediation involved extensive negotiations, discussions and considerations of the case by each party. The Parties went into mediation willing to explore a potential settlement for the dispute, but each was prepared to litigate their claims and defenses through trial and appeal if no settlement could be reached. After an all-day, arm's-length mediation, the Parties were unable to reach an agreement to resolve all claims arising from or related to the Data Breach. Lietz Decl. at ¶ 6.  However, through the continued efforts of Mr. Friedman and the Parties to come to a mutually agreeable resolution, the Parties eventually reached agreement on the material terms of the Settlement. *Id*.

Class Counsel has conducted a thorough investigation into the facts of this case. Plaintiffs believe the claims asserted in the Litigation, as set forth in the Amended Consolidated Class Action Complaint,

have merit. Plaintiffs and Proposed Settlement Class Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against NRS through motion practice, trial, and potential appeals. They have also considered the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation, especially in complex class actions. Proposed Settlement Class Counsel are highly experienced in class action litigation and very knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and in this Litigation.  They have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class, in light of all known facts and circumstances, the risk of significant delay, the defenses that could be asserted by NRS both to certification and on the merits, trial risk, and appellate risk. *Id*. at  ¶ 7.

Plaintiffs and Class Counsel, considering the above factors, believe that the settlement confers substantial benefits upon the Settlement Class, and that it is an excellent result for the Class. *Id.* at ¶ 2, Ex. 1 (Agreement).

NRS denies each and all of the claims and contentions alleged against it in the Litigation. NRS denies all charges of wrongdoing or liability as alleged, or which could be alleged, in the Litigation. Nonetheless, NRS has concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. NRS has considered the uncertainty and risks inherent in any litigation. NRS has, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement.

Settlement here is both desirable and beneficial. Indeed, because of the settlement, Settlement Class Members will receive timely, guaranteed relief and will avoid the risk of an unfavorable judgment.

## III.    THE SETTLEMENT

The settlement's key terms are noted below.

4

### A. The Class

The Parties have agreed and stipulated that the following Class can be certified under Rule 23 for settlement purposes: all persons who were mailed notice by NRS that their personal and/or financial information was impacted in a data incident occurring on or before January 16, 2021. The Settlement Class specifically excludes: (i) NRS, any Related Entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

As described below, all requisite elements of Rule 23(a) and 23(b)(3) are satisfied, and provisional class certification (for settlement purposes only) should be granted.

### B. The Benefits to Settlement Class Members

The settlement provides for substantial monetary and credit monitoring relief to the Settlement Class, including the option to elect an alternative cash payment. The funds from this Settlement are to be paid to Settlement Class Members who submit timely and valid Claim Forms. Settlement Costs, any service awards to Plaintiffs as Class Representatives, and Class Counsel's Attorney's Fees and Costs, will be paid by Defendant separately from any monetary relief to the Settlement Class.

The Settlement provides for the following categories of relief to the Settlement Class:

1. <u>Expense Reimbursement</u>. All members of the Settlement Class who submit a Valid Claim using the Claim Form are eligible for the following documented out-of-pocket expenses, not to exceed $350 per member of the Settlement Class, that were incurred as a result of the Data Incident. To receive reimbursement for any of the above-referenced out-of-pocket expenses, Settlement Class Members must submit (i) their name and current address; (ii) supporting documentation of such out-of-pocket expenses; and (iii) a description of the loss, if not readily apparent from the documentation.

2. <u>Lost Time</u>.    Members of the Settlement Class are also eligible to receive up to four hours of lost time spent dealing with issues arising out of the Data Incident (calculated at the rate of $35

per hour).  Members of the Settlement Class must attest under penalty of perjury on the Claim Form as to the time spent by providing a written description. Claims made for lost time can be combined with claims made for out-of-pocket expenses and, together with the out-of-pocket expenses, are subject to the $350 cap for each member of the Settlement Class.

3.  <u>Extraordinary Expense Reimbursement:</u> All members of the Settlement Class who have suffered a proven monetary loss and who submit a Valid Claim using the Claim Form are eligible for up to $10,000 if: (1) the loss is an actual, documented, and unreimbursed monetary loss requiring the submission of a proof of loss under penalty of perjury; (2) the loss was caused by the Data Incident; (3) the loss occurred between January 16, 2021, and the Claims Deadline; and (4) the loss is not already covered by the Expense Reimbursement category above; and the member of the Settlement Class made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

4.  <u>Credit Monitoring and Identity-Theft Protection</u>.  All members of the Settlement Class who submit a Valid Claim using the Claim Form are eligible for 36 months of free one-bureau identity-theft protection through IDX or another equivalent provider selected by Defendant. For members of the Settlement Class who opted to receive the credit monitoring initially offered by NRS, the credit monitoring and identity theft protections shall be in addition to that year. The identity theft shall include, at least, the following, or similar, services:

- One bureau credit monitoring.
- $1M in fraud protection.

5.  <u>Alternative Cash Payment.</u> In place of the benefits contained in ¶¶ 1, 2, and 4 above, and not in addition to all other benefits, all Settlement Class Members are eligible to receive a payment of $50. The amount of Alternative Cash Payments shall not exceed $150,000 and, if the amounts claimed exceed that amount, they shall be reduced *pro-rata* so that the total amount to be paid is not more than $150,000.

### C.   Proposed Notice Administration

The settlement details a Notice Program that provides notice to Settlement Class through (1) direct notice sent via U.S. mail and (2) posted on the Settlement Website. Settlement Agreement § 3.2. Within 7 calendar days of entry of the Preliminary Approval Order, NRS will provide the Claims Administrator with a list of Settlement Class Members NRS has been able to identify in such format as requested by the Claims Administrator which will include, to the extent available, the name and physical mailing address of each Settlement Class Member. *Id.*

### D.   Attorneys' Fees and Expenses

Plaintiffs will also separately seek an award of attorneys' fees not to exceed $400,000.00, which includes reimbursement of their reasonable costs and litigation expenses incurred. Defendant has agreed to take no position with regard to the fees motion. The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or service award to Plaintiffs until after the substantive terms of the Settlement Class's relief had been agreed upon

Class Counsel's fee request is well within the range of reasonableness for Settlements of this nature and size. This Court recently stated that "25% [is] considered the benchmark" in the Ninth Circuit. *Pauley v. CF Entm't*, No. 2:13-CV-08011-RGK-CW, 2020 WL 5809953, at *3 (C.D. Cal. July 23, 2020), citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). In fact, the Ninth Circuit has found attorneys' fees awards of 1/3 to be reasonable. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of total recovery).

### E.   Service Awards to Named Plaintiffs

Plaintiffs in this case have been vital in litigating this matter, including providing their personal information to proposed Settlement Class Counsel. Plaintiffs have been personally involved in the case and support the Settlement. Lietz Decl., ¶ 18. Plaintiffs will separately petition the Court for awards of $2,500 for each of the four Class Representatives in recognition of the time, effort, and expense they incurred pursuing claims that benefited the Settlement Class. See S.A., § 7.3.

The amount requested here is presumptively reasonable and commonly awarded in settled class

action cases. *See, e.g., In re Pauley*, 2020 WL 5809953, at *4 (This Court granted "class representative enhancement fees in the amount of $5,000 each to Plaintiffs," finding that amount to be "presumptively reasonable"); *Yahoo Mail Litig.*, No. 13-CV-4980, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has established $5,000.00 as a reasonable benchmark [for service awards].").

**F.      Release**

Upon entry of the Final Approval Order and the running of any time for appeal, Plaintiffs and the Settlement Class will be deemed to have "fully, finally, and forever released, relinquished, and discharged all Released Claims." Settlement Agreement § 6.1.

**IV.      ARGUMENT**

**A.      The Settlement Merits Preliminary Approval**

**1.      Legal Standard**

A class action may not be dismissed, compromised or settled without the approval of the court. Fed. R. Civ. Proc. 23(e). Judicial proceedings under Rule 23 have led to a defined procedure and specific criteria for settlement approval in class action settlements, described in the Manual for Complex Litigation (Fourth) (Fed. Judicial Center 2004) ("Manual") § 21.63, et seq., including preliminary approval, dissemination of notice to class members, and a fairness hearing. Manual §§ 21.632, 21.633, 21.634. The purpose of the Court's preliminary evaluation of the settlement is to decide whether it is within the "range of reasonableness," and thus whether notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. See 4 Herbert B. Newberg, Newberg on Class Actions § 11.25, et seq., and § 13.64 (4th ed. 2002 and Supp. 2004) ("Newberg"). The Court does not have to undertake an in-depth consideration of the relevant factors for final approval. Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Manual, § 21.632; see 5 James Wm. Moore, Moore's Federal Practice—Civil § 23.165[3] (3d ed.).

The decision to approve or reject a proposed settlement "is committed to the sound discretion of

the trial judge[.]" *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted); *see Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).

Courts in this Circuit agree that the two-step process for class settlement approval begins with a low hurdle: "at the preliminary approval stage, court need only determine whether the proposed settlement is within the range of possible approval." *Gamble v. Boyd Gaming Corp.*, No. 2:13-cv-01009-JCM-PAL, 2016 WL 3693743, at *5 (D. Nev. July 11, 2016). To make the preliminary fairness determination, courts may consider several relevant factors, including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel." *See Hanlon*, 150 F.3d at 1026. Furthermore, courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id*. at 1027. Thus, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the merits. *Officers for Justice v. Civil Service Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982), cert. denied sub nom. *Byrd v. Civil Serv. Comm 'n,* 459 U.S. 1217 (1983)..

Preliminary approval of the settlement should be granted if, as here, there are no "reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive

compensation for attorneys." Manual § 21.632 at 321. Based on these standards, Plaintiffs respectfully submit that, for the reasons detailed below, the Court should preliminarily approve the proposed settlement as fair, reasonable and adequate.

The *Hanlon* factors weigh in favor of granting preliminary approval. First, the negotiations did in fact occur at arm's length, through a contested mediation, with the help of the a neutral third-party mediator, Mr. Friedman. Second, there was formal discovery in this case, and additional discovery for purposes of mediation that was sufficient to educate the parties as to the weaknesses and strengths of the case. As shown by the Declaration of David Lietz, filed concurrently herewith, Class Counsel is highly experienced in this area of the law, having acted as Class Counsel in numerous successful class actions, and having won commendation for their work. And finally, at this stage, no Settlement Class Member has objected, nor is it expected that there will be many objections. In addition, the following factors weigh in favor of preliminary approval of the settlement.

## 2.     The Strength of Plaintiffs' Case

"When assessing the strength of [the] plaintiff's case, the court does not reach 'any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation.'" *Van Lith v. iHeartMedia + Entm't, Inc.*, No. 1:16-CV-00066-SKO, 2017 WL 1064662, at *11 (E.D. Cal. Mar. 20, 2017) (*quoting Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d 964, 975 (E.D. Cal. 2012). The court must "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma*, 913 F.Supp.2d at 975.

While Plaintiffs and their counsel believe that there is evidence from which the Court could rule in favor of Plaintiffs' claims, there are mitigating factors and no guarantee. There is no evidence at present that the exposed data was ever obtained or used by hackers. Accordingly, there is a real issue as to whether Plaintiffs will ever be able to prove damages. Additionally, due to individualized issues related to harm resulting from the breach, there is a significant risk that a class would never be certified, were Plaintiffs' motion opposed. Lietz Decl. ¶ 8. Where a court determines that a claim may have "some measure of merit," but that it also faces inherent weaknesses, the court should find that the "strength of Plaintiff's

case" factor "weighs in favor" of approval of the settlement. *Van Lith*, 2017 WL 1064662, at *11.

### 3.      Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the degree of risk of continued litigation, "the court evaluates the time and cost required." *Adoma*, 913 F.Supp.2d at 976. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id*. (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004)). "The parties . . . save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something that they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624 (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971)).

The risk and expense of continued litigation is plain; absent settlement, the Parties would be required to continue litigation, which necessarily would involve significant discovery, a contested motion for certification, and other dispositive motions such as a motion for summary judgment and possible appeals. All told, the ultimate recovery might be of no greater value—or of lesser value—to that in the Agreement. Moreover, the process only becomes more complex over a longer time period, as new issues may emerge through discovery or simply determinations relating to case strategy. Accordingly, this factor clearly weighs in favor of approval. Lietz Decl. ¶ 9; *see, e.g., Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (concluding that this factor favored approval where "there remained significant procedural hurdles for the putative class to confront, including certification" and "there were significant risks in continued litigation and no guarantee of recovery").

### 4.      Relief Offered in Settlement

The relief offered in a settlement is assessed as a whole, "complete package" for overall fairness. *DIRECTV, Inc*., 221 F.R.D. at 527 (quoting *Officers for Justice*, 688 F.2d at 628). Indeed, it is "well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." Id. (citing Linney, 151 F.3d at 1242).

Here, the relief includes the ability of Settlement Class Members to claim substantial monetary benefits, including up $350 of Expense Reimbursement that includes up to 4 hours of lost time at $35 per hour, up to $10,000 for documented Extraordinary Losses incurred as a result of actual identity theft or fraud, a three-year subscription to Credit Monitoring Services and the option to elect a $50 pro rata cash payment, without any evidence of loss. Lietz Decl. ¶ 2, Ex. 1 (Agreement). While a larger award is "theoretically possible, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Barbosa*, 297 F.R.D. at 447 (quoting Linney, 151 F.3d at 1242*); see also Hanlon*, 150 F.3d at 1027 (the fact that "the settlement could have been better . . . does not mean the settlement presented was not fair, reasonable, or adequate."). Accordingly, this factor weighs in favor of approval of the settlement.

### 5.     Arm's Length, Non-Collusive, Negotiated Resolution

This Circuit has held that it puts "a good deal of stock in the product of arms-length, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing Hanlon, 150 F.3d at 1027; Officers for Justice, 688 F.2d at 625). Critically, there is "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011) (emphasis added), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

Here, counsel for the Parties have separately initiated preliminary review and investigation of the applicable law and facts pertaining to the alleged claims, potential defenses thereto, the damages claimed at issue, and potential exposure. The Parties engaged in vigorous, contested motions practice, and considerable formal discovery that included discovery disputes. Further, the Parties engaged in an arm's length mediation with Mr. Friedman, whose guidance and experience aided in reaching the settlement. The adversarial, non-collusive and arm's-length communications between the Parties' counsel considered issues including, but not limited to, the following: (1) certification of a settlement class; (2) monetary remuneration for Settlement Class Members; and (3) credit monitoring services to be purchased for the Settlement Class Members. The resulting Agreement is the product of hours of such arm's length

negotiations between the Parties, which allows for an initial presumption of fairness. Lietz Decl. ¶ 10.

**6.      Experience and Views of Counsel and Adequate Representation of the Settlement Class**

"In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties." *Van Lith*, 2017 WL 1064662, at *13 (citing *Barbosa*, 297 F.R.D. at 447. "Great weight is accorded to the recommendation of counsel, who are the most closely acquainted with the facts of the underlying litigation." *Id.* (quoting *Adoma*, 913 F.Supp.2d at 977 (internal citation omitted). Accordingly, "absent fraud, collusion, or the like," the Court "should be hesitant to substitute its own judgment for that of counsel." *Id*. (citing *DIRECTV, Inc*., 221 F.R.D. at 528).

Class Counsel has extensive experience in litigating consumer class actions, specifically data breach class actions. Lietz Decl. ¶ 11. They understood and appreciated the defenses and position of NRS but believed Plaintiffs would ultimately succeed. Considering the Parties' strongly divergent views, and their awareness of the burdens of proof necessary to establish liability for the claims and the potential challenges to bringing a class certification motion, the Parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation. The Parties have produced a result that they believe to be in their respective best interests. The Parties also have taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation. Plaintiffs also are aware of the burdens of proof necessary to establish liability for the claim asserted in the action, the defenses thereto, the difficulties in establishing damages for Plaintiffs, and the potential challenges to certifying a class where the motion disputed. Lietz Decl. ¶¶ 9–12.

**7.      The Settlement Has No Obvious Deficiencies**

Furthermore, because the Settlement Agreement has no obvious deficiencies, preliminary approval is proper. *See Mora v. Cal West Ag Services, Inc*., No. 1:15-cv-01490-LJO-EPG, 2019 WL 2084725, at *3 (E.D. Cal. 2019), report and recommendation adopted, 2019 WL 3760402 (E.D. Cal. 2019) (citing Newberg on Class Actions § 13:13 (5th ed. 2014)) ("The purpose of the initial review is to

ensure that an appropriate class exists and that the agreement is non-collusive, without obvious deficiencies, and within the range of possible approval as to that class.") (emphasis added). No such obvious deficiencies are present here. The settlement includes a sizeable amount of monetary relief for distribution to the Settlement Class Members who make claims, and the purchase of credit monitoring services which will remedy the harm suffered by Settlement Class Members. Lietz Decl. ¶ 13.

### 8.   The Proposed Method of Distributing Relief and Processing Claims Is Adequate

The distribution plan for the Settlement Fund, including plans to process claims, are also more than adequate. Plaintiffs have identified an experienced Claims Administrator who will handle claims processing and payment of the funds to the Settlement Class Members. The claims process is the most rational and reasonable means for distributing the funds to the Settlement Class Members. Lietz Decl. ¶ 2, Ex. 1 (Agreement).

Proposed settlements are not judged against a hypothetical or speculative measure of what might have been achieved, as litigation is, by its nature, uncertain, and "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney*, 151 F.3d at 1242. The settlement achieves a fundamentally fair, adequate, and reasonable resolution of all relevant claims.

### 9.   The Agreement Treats Settlement Class Members Equally

The Agreement provides that all Settlement Class Members are eligible to receive a three-year subscription to top-of-the-line credit monitoring software. This is a benefit offered equally to all Settlement Class Members. Additionally, all Settlement Class Members who do not opt out of the settlement may make a claim for expense reimbursement, including time lost, as a result of the Data Breach. Lietz Decl. ¶ 2, Ex. 1 (Agreement) § 2. All Settlement Class Members have an equal opportunity to make their case for reimbursement. All Settlement Class Members will also have the opportunity to make a claim for an alternative pro rata cash payment of up to $50. Accordingly, the settlement treats all Class Members equally.

**B.    The Settlement Class Should Be Certified**

**1.    Legal Standard**

In reviewing a class action settlement, a "district court must assess whether a class exists." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). The Settlement Class satisfies the Rule 23(a) and 23(b)(3) requirements for certification.

**2.    Plaintiffs' Claims Satisfy the Rule 23 Requirements for Certification**

For the purposes of the settlement, the Parties agree that these criteria are satisfied.

**a.    The Settlement Class Is Ascertainable**

Although not specified in Rule 23, courts imply a prerequisite that the proposed class be ascertainable. *See, e.g., Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014). "The definition must be precise, objective, and presently ascertainable." *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, No. 2:06-cv-00225-PMP-PAL, 2008 WL 3179315, at *20 (D. Nev. June 20, 2008) (citation omitted). Ascertainability may be satisfied if it is "administratively feasible" for the court to determine whether a particular individual is a member, though this is not a prerequisite to certification. *Briseno v. ConAgra Foods, Inc.*, 944 F.3d 1121 (9th Cir. 2017). Here, the Settlement Class is ascertainable. NRS has within its possession the identities of those individuals impacted by the Data Breach as it sent the notices of the Data Breach to them. Lietz Decl. ¶ 14. Therefore the ascertainability requirement is met.

**b.    The Settlement Class Is Numerous**

Rule 23(a)(1) requires that a class include so many members that joinder of all would be impracticable. "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.'" *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (citation omitted). Here, the Settlement Class is estimated to consist of 227,903 Settlement Class Members who were identified by NRS as among those individuals impacted by the Data Breach,

including all who were sent a notice of the Data Breach. Lietz Decl. ¶ 15. Thus, the Settlement Class is sufficiently numerous.

### c.   There Are Common Questions of Law and Fact

Rule 23(a)(2) requires a showing that there are questions of law or fact common to the class. This rule "has been construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "[A] common question must be of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Dukes*, 564 U.S. at 350 (quotation omitted). Commonality is a permissive requirement, and "not all questions of fact and law need be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. The "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* at 1019–20.

Commonality is satisfied here because the factual and legal issues are the same for the entire Settlement Class, including Plaintiffs. Plaintiffs' claims stem from a single course of conduct which NRS engaged in with respect to the PII of each and every one of the Settlement Class Members. Further, all Settlement Class Members suffered from, and seek redress for, the same alleged injuries in the form of time lost mitigating the resulting harm from the Incident, out-of-pocket costs mitigating the resulting harm from the Data Breach, the loss of value of their PII, and the deprivation of their benefit of the bargain with NRS. These key issues are entirely common to the Settlement Class and if the case proceeded, would be resolved based on common facts and evidence. Lietz Decl. ¶ 16.

### d.   Plaintiffs' Claims Are Typical

Rule 23(a)(3) requires that the class representatives' claims are typical of the class. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "Typicality refers to the

nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id*. "Under the 'permissive standards' of Rule 23(a)(3), 'representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Hanlon*, 150 F.3d at 1020. Plaintiffs provided their PII to NRS and their PII was affected by the Data Breach and, thus, they allege that they were subject to the same policies and practices as other similarly situated Settlement Class Members. Lietz Decl. ¶ 17. Accordingly, typicality is easily satisfied.

### e.   Plaintiffs and Settlement Class Counsel Are Adequate Representatives

Rule 23(a)(4) requires that the named plaintiffs be able fairly and adequately to protect the interests of the class. This determination turns on just two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co*., 327 F.3d 938, 957 (9th Cir. 2003); *Santoro v. Aargon Agency, Inc*., 252 F.R.D. 675, 682 (D. Nev. 2008). Both components are met here.

Plaintiffs are adequate class representatives because they have actively pursued this litigation on behalf of the Settlement Class Members and share an identical interest in establishing NRS's liability and obtaining a suitable remedy for the Data Breach. Plaintiffs have no conflicts, and Plaintiffs have, with counsel, litigated this case and diligently reviewed the settlement terms, showing their dedication. Plaintiffs' willingness to serve as representatives demonstrates their serious commitment to bringing about the best results possible for the Settlement Class. Lietz Decl. ¶ 18.

Settlement Class Counsel are adequate to represent the Settlement Class's interests and should be appointed Settlement Class Counsel. In retaining these firms Plaintiffs employed counsel who are "qualified, experienced and able to conduct the proposed litigation." *Hester v. Vision Airlines, Inc*., No. 2:09-cv-00117, 2009 WL 4893185, at *5 (D. Nev. Dec. 16, 2009) (internal quotation). With a litany of experience in class actions and other complex litigation, including data breach litigation, that proposed Settlement Class Counsel bring, there can be no doubt that they are adequate to represent the Settlement

Class here. Lietz Decl. ¶ 19; Lietz Resume and Milberg Firm Resume, attached as Exhibit 1 to the Lietz Declaration, and firm resumes of other Settlement Class Counsel, attached as Exhibit 2 to the Lietz Declaration.

**f.      The Settlement Class Also Meets the Rule 23(b)(3) Requirements**

This action is also well-suited for certification under Rule 23(b)(3) because questions common to the Settlement Class Members predominate over questions affecting only individual Class Members, and class action treatment provides the best method for the fair and efficient resolution of the Settlement Class's claims. Indeed, NRS does not oppose class certification for the purpose of effectuating the proposed settlement. When addressing the propriety of certification, the Court should note that, in light of the settlement, trial will now be unnecessary, and that the manageability of the Class for trial purposes and need to calculate damages is not relevant to the Court's inquiry. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon*, 150 F.3d at 1021–23.

**i.      Predominance Is Satisfied**

A class action is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," there is clear justification for class treatment. *Local Joint Executive Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem*, 521 U.S. at 622). If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the predominance test is satisfied. *Id*. at 1022. There is no definitive test for determining whether common issues predominate, however, in general, predominance is met when there exists generalized evidence which proves or disproves an [issue or]

element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position. The main concern is "the balance between individual and common issues." *In re Wells Fargo Home Mortg.*, 571 F.3d 953, 959 (9th Cir. 2009).

Common issues predominate here. As explained in the commonality section above, the evidence necessary to establish Plaintiffs' claims is common to both Plaintiffs and the Settlement Class Members—they would all seek to prove that NRS's liability for the improper and/or inadequate maintenance and safekeeping of the PII in its possession and control such that the data breach that resulted in the unauthorized disclosure of Plaintiffs' and Class Members' PII, and resulting injuries, is fairly traceable to NRS's uniform policies and procedures affecting Plaintiffs and Class Members' alike. Lietz Decl. ¶ 20.

### ii.    Class Treatment Is Superior

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am. LLC,* 617 F.3d 1168, 1175 (9th Cir. 2010). Rule 23(b)(3)'s non-exclusive factors are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action."

All of these factors are present here as it is clear that managing these disputes in a single class action before a single judge is preferable and more manageable than to require hundreds of thousands of consumers to each bring individual actions where the filing fees alone would likely exceed the value of any potential recovery. The more likely outcome in that situation would be the absence of any actions and no remedy being provided to any Class Members. Lietz Decl. ¶ 21.

### V.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court enter an order preliminarily approving the settlement and certifying the Settlement Class for settlement purposes.

Dated: March 12, 2024

Respectfully Submitted,

*/s/ George Haines*
George Haines, Esq. (#9411)
Gerardo Avalos, Esq. (#15171)
8985 South Eastern Avenue, Suite 350
Las Vegas, Nevada 89123
Telephone: (702) 880-5554
Email: Ghaines@freedomlegalteam.com

David Hilton Wise, Esq.
Joseph M. Langone, Esq.
WISE LAW FIRM, PLC
421 Court Street
Reno, Nevada 89501

M. Anderson Berry, Esq.
Gregory Haroutunian, Esq.
CLAYEO C. ARNOLD
A PROFESSIONAL CORPORATION
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Email: aberry@justice4you.com
gharoutunian@justice4you.com

David K. Lietz
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Email: dlietz@milberg.com

Gary M. Klinger
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
227 Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

Michael Kind, Esq. (#13903)
KIND LAW
8860 South Maryland Parkway, Suite 106
Las Vegas, Nevada 89123

Jean Martin, Esq.
MORGAN & MORGAN
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602

*Attorneys for Plaintiffs and Proposed Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1



## DAVID LIETZ BIOGRAPHY

1.      I am currently a partner of the law firm of Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg").

2.      I am a 1991 graduate of Georgetown University Law Center.  I have been licensed to practice law in the District of Columbia since 1991, am a member of the bars of numerous federal district and appellate courts, and have over three decades of litigation and class action experience.

3.      I have represented and am currently representing plaintiffs in more than 100  class action  lawsuits  in  state  and  federal courts throughout the United States. Both I and my firm carry on a national and international class action law practice. With respect to data privacy cases, I am currently litigating more than one-hundred cases across the country involving violations of privacy violations, data breaches, and ransomware attacks.

4.      Over the past four years, I (either individually or as a member of my law firm) have been appointed class counsel in a number of data breach or data privacy cases that have been either preliminarily or finally approved by federal and state courts across the country, including:

   a.      *Kenney et al. v. Centerstone of America, Inc*., Case No. 3:20-cv-01007 (M.D. Tenn.) (appointed co-class counsel in data breach class action settlement involving over 63,000 class members; final approval granted August 2021);

   b.      *Baksh v. Ivy Rehab Network, Inc*., Case No. 7:20-cv-01845-CS (S.D. N.Y.) (class counsel in a data breach class action settlement; final approval granted Feb. 2021);

   c.      *Mowery et al. v. Saint Francis Healthcare System*, Case No. 1:20-cv-00013-SRC (E.D. Mo.) (appointed class counsel; final approval granted Dec. 2020);

   d.      *Chatelain et al. v. C, L and W PLLC d/b/a Affordacare Urgent Care Clinics*, Case No. 50742-A (42nd District Court for Taylor County, Texas) (appointed class counsel; settlement valued at over $7 million; final approval granted Feb. 2021);

e.  *Jackson-Battle v. Navicent Health, Inc.,* Civil Action No. 2020-CV-072287 (Superior Court of Bibb County, Georgia) (appointed class counsel in data breach case involving 360,000 patients; final approval granted Aug. 2021);

f.  *Bailey v. Grays Harbor County Public Hospital District et al.*, Case No. 20-2-00217-14 (Grays Harbor County Superior Court, State of Washington) (appointed class counsel in hospital data breach class action involving approximately 88,000 people; final approval granted Sept. 2020);

g.  *Chacon v. Nebraska Medicine*, Case No. 8:21-cv-00070-RFR-CRZ (D. Neb.) (appointed class counsel in data breach settlement, final approval granted September 2021);

h.  *Richardson v. Overlake Hospital Medical Center et al.*, Case No. 20-2-07460-8 SEA (King County Superior Court, State of Washington (appointed class counsel in data breach case, final approval granted September 2021);

i.  *Martinez et al. v. NCH Healthcare System, Inc.*, Case No. 2020-CA-000996 (Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida) (Mr. Lietz appointed Settlement Class Counsel; final approval granted October 2021);

j.  *Carr et al. v. Beaumont Health et al.*, Case No. 2020-181002-NZ (Circuit Court for the County of Oakland, Michigan) (Mr. Lietz appointed co-class counsel in data breach case involving 112,000 people; final approval granted October 2021);

k.  *Klemm et al. v. Maryland Health Enterprises Inc.*, Case No. C-03-CV-20-022899 (Circuit Court for Baltimore County, Maryland) (appointed class counsel; final approval granted November 2021);

l.  *Cece et al. v. St. Mary's Health Care System, Inc. et al.*, Civil Action No. SU20CV0500 (Superior Court of Athens-Clarke County, Georgia) (appointed Settlement Class Counsel in data breach case involving 55,652 people; final approval granted April 2022);

m.  *Powers, Sanger et al v. Filters Fast LLC*, Case 3:20-cv-00982-jdp (appointed co-lead Settlement Class Counsel; final approval granted July 2022);

n.  *Garcia v. Home Medical Equipment Specialists, LLC*, Case No. D-202-cv-2021-06846 (appointed class counsel; final approval granted June 2022);

o.  *Baldwin et al. v. National Western life Insurance Company*, Case No. 2:21-cv-04066 (W.D. Mo.) (appointed co-class counsel; final approval granted June 2022);

p.  *Hashemi, et. al. v. Bosley, Inc*., Case No. 21-cv-00946-PSG (RAOx) (C.D. CA) (appointed co-class counsel; final approval granted November 2022);

q.  *Paras et al. v. Dental Care Alliance*, Civil Action No. 22EV000181 (State Court of Fulton County, Georgia (appointed co-class counsel; final approval granted September 2022);

r.  *James v. CohnReznick LLP*, Case No. 1:21-cv-06544 (S.D.N.Y.), (appointed as co-class counsel; final approval granted September 2022);

s.  *Purvis, et al v. Aveanna Healthcare, LLC*, Case No. 1:20-cv-02277-LMM (N.D. Ga.) (appointed class counsel; final approval granted October 2022);

t.  *Kolar v. CSI Financial Services LLC dba ClearBalance*, Case No. 37-2021-00030426-CU-NP-CTL (Superior Court of San Diego County, California) (appointed co-lead class counsel, final approval granted January 2023);

u.  *In re: California Pizza Kitchen Data Breach Litigation*, Master File No.: 8:21-cv-01928-DOC-KES (C.D. CA) (appointed settlement class counsel; final approval granted February 2023);

v.  *Snyder v. Urology Center of Colorado, P.C*., Case No. 2021CV33707 (2nd District Court, Denver County, Colorado) (appointed settlement class counsel; final approval granted October 2022);

w.  *Steen v. The New London Hospital Association, Inc*., Civil Action No. 217-2021-CV-00281 (Merrimack Superior Court, New Hampshire) (appointed class counsel; final approval granted January 2023);

x.  *Gonshorowski v. Spencer Gifts LLC*, Docket Number ATL-L-000311-22 (Superior Court of New Jersey, Law Division, Atlantic County (appointed Class Counsel; final approval granted September 12, 2022);

y.  *Nelson et. al v. Bansley & Kiener, LLP*, Civil Action No. 2021CH06274 (Ill. 1st Jud. Cir. Crt., Cook Cnty.) (appointed class counsel; final approval granted November, 2022);

z.  *Henderson et al. v. San Juan Regional Medical Center*, Case No. D-1116-CV-2021-01043 (11th Jud. Dist. Court, San Juan County, NM) (appointed class counsel; final approval granted March 2023);

aa.  *Cathy Shedd v. Sturdy Memorial Hospital, Inc.*, Civ. Action No: 2173 CV 00498 (Mass. Sup. Ct. Dept.) (appointed class counsel; final approval granted February 2023);

bb.  *Pagan et al. v. Faneuil, Inc.*, Civil Action No. 3:22-cv-297 (E.D. Va.)(appointed class counsel; final approval granted February 2023);

cc.  *Hawkins et al. v. Startek, Inc.*, Case No. 1:22-cv-00258-RMR-NRN (USDC CO)(appointed class counsel; final approval granted April 2023);

dd.  *McManus v. Gerald O. Dry*, P.A., Case No. 22 CVS 001776 (N.C. Superior Court for Cabarrus County) (appointed settlement class counsel; final approval granted March, 2023);

ee.  *McHenry v. Advent Health Partners, Inc.*, Case No. 3:22-cv-00287 (USDC MD TN)(appointed class counsel; final approval granted April 2023),

ff.  *Lopez v. San Andreas Regional Center*, Case N0. 21CV386748 (Sup. Ct. CA, Santa Clara County) (appointed settlement class counsel; final approval granted September 2023);

gg.  *Charlie, et al. v. Rehoboth McKinley Christian Health Care Services*, Civil No 21-652 SCY/KK (USDC NM) (appointed class counsel, final approval granted May 2023);

hh.  *Arbuthnot v. Acuity – CHS, LLC*, Case No. 6:22-cv-658-PGB-DCI (USDC MD FL, Orlando Division) (appointed Settlement Class Counsel; final approval granted August 2023);

ii.  *Bergeson v. Virginia Mason Medical Center*, Case No. 22-2-09089-8 SEA (Superior Court of Washington for King County) (appointed Settlement Class Counsel; final approval granted August 2023);

jj.  *Reynolds et al. v. Marymount Manhattan College*, Case No. 1:22-CV-06846-LGS (USDC SDNY) (appointed Settlement Class Counsel; final approval granted October 2023);

kk.  *Griffey et al. v. Magellan Health, Inc.*, Case No. CV-20-01282-PHX-MTL (USDC AZ)(appointed Settlement Class Counsel; final approval granted February 9, 2024);

ll.  *Connor Rowe v. Sterling Valley Systems, Inc. d/b/a/ Inntopia*, Docket No.: 22-CV-04081 (Superior Court, Civil Division, Lamoille Unit, State of Vermont)(appointed Settlement Class Counsel; final approval granted Jan. 9, 2024);

mm.  *Jones, et al v. P2ES Holdings, LLC*, Case No. 23-cv-00408-GPG-MEH (USDC D. Colo.) (Appointed co-class counsel; preliminary approval granted Oct. 12, 2023);

nn.  *Guarino v. Radius Financial Group, Inc.*, Civ. Action No: 2283 CV 00196 (Mass. Sup. Ct. Dept. Plymouth County) (appointed class counsel; final approval granted February 28, 2024);

oo.  *Foster et al. v. Lower, LLC*, Civil Action No. 1:22-CV-1581 (GLR) (USDC MD)(appointed Class Counsel; final approval granted Dec. 1, 2023), and;

pp.  *Lamie et. al v. LendingTree, LLC*, Case No. 3:22-cv-0037 (USDC WD NC)(appointed Class Counsel; final approval granted February 27, 2024).

qq.  *Kooner, et al v. Oral Surgeons of Virgnia, PLLC*, Case No. 1:23-cv-01199 (USDC E.D. Va.) (appointed Co-Lead Counsel December 1, 2023);

rr.  *Tarrant v. Southland Holdings LLC*, Cause No. 067-333679-22 (67th Judicial Dist. Ct. of Tex., Tarrant Cnty.) (appointed Class Counsel; preliminary approval granted December 22, 2023);

ss.  *May, et al v. Five Guys Enterprises, LLC*, Case No. 1:23-cv-00029 (USDC E.D. Virg.) (appointed Class Counsel; preliminary approval granted Jan.4, 2024);

tt.  *Martinez, et al v. Presbyterian Healthcare Services*, Case No. D-202-CV-2020-01578 (2d Jud. Ct. of N.M., Cty of Bernalillo) (appointed Class Counsel; preliminary approval granted January 19, 2024);

uu.  *Medina v. Albertsons Companies, Inc.*, Case No. 1:23-cv-00480-MN (USDC D. Del.) (appointed Class Counsel; preliminary approval granted Jan. 11, 2024);

vv.  *Prevost, et al v. Roper St. Francis Healthcare*, C.A. No. 2021-CP-10-01754 (9th Jud. Cir. Ct. of S.C., Court of Common Pleas) (Appointed co-class counsel; preliminary approval granted Jan. 18, 2024);

ww.  *Williams v. Monarch*, Case No. 23CVS-105, (N.C. Sup. Ct., Cty. of Stanly) (Appointed Class Counsel; preliminary approval granted Jan. 17, 2024);

xx.  *Viruet v. Comm. Surgical Supply, Inc.,* Case No. OCN L-001215-23 (N.J. Sup. Ct. of Ocean Cty.) (Appointed co-class counsel; final approval granted Nov. 17, 2023)

yy.  *Kondo, et al v. Creative Services, Inc.*, Case No. 1:22-cv-10438-DJC (USDC of D. Mass.) (Appointed class counsel; final approval granted Sept. 7, 2023);

zz.  *Stark, et al v. Acuity Brands, Inc.*, Case No. 23EV006179H (Fulton Cty State Court of Ga.) (appointed class counsel; preliminary approval granted Jan. 18, 2024);

aaa.  *Keown, et al v. Int'l Assoc. of Sheet Metal Air Rail Transportation Workers*, Case No. 1:23-cv-03570-CRC (USDC D.C.) (Appointed class counsel);

bbb.  *Mendoza, et al v. Crystal Bay Casino, LLC*, Case No. 3:23-cv-00092-MMD-CLB (D. Nev.) (Appointed class counsel) (preliminary approval granted Feb. 5, 2024);

ccc.  *Oche v. National Math & Science Initiative*, Index No. 510959/2023 (N.Y. Supr. Crt, Kings Cnty.) (Appointed class counsel; preliminary approval granted Jan. 31, 2024); and

ddd.   *Marshall v. Lamoille Health Partners, Inc.*, Case No. 2:22-cv-00166, (D. Vt.) (Appointed class counsel; preliminary approval granted Feb. 20, 2024.

5.     I am also lead or co-lead counsel on the following cases that are on the cutting edge of Article III federal court jurisdiction in data breach litigation. Most recently, I briefed and argued *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023), where the U.S. Court of Appeals for the First Circuit articulated important principles of Article III standing in data breach cases after the U.S. Supreme Court's decision in *Ramirez v. TransUnion*. Other noteworthy data breach decisions include *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360 (N.D. Ga. 2021); *Charlie v. Rehoboth McKinley Christian Healthcare Services*, Civ. No. 21-652 SCY/KK, 2022 WL 1078553 (D.N.M. April 11, 2022); *Baldwin v. Nat'l W. Life Ins. Co.*, No. 2:21-CV-04066-WJE, 2021 WL 4206736, at *1 (W.D. Mo. Sept. 15, 2021) and *McCreary v. Filters Fast LLC*, No. 3:20-CV-595-FDW-DCK, 2021 WL 3044228 (W.D.N.C. July 19, 2021).

6.     For my substantial efforts in advancing the state of the law in data breach and cyber-security litigation, in April 2022 I was named to Law360's 2022 Cybersecurity & Privacy Editorial Board. This 12-person editorial board includes some of the most accomplished attorneys in the country in the cybersecurity and data breach legal field, and it was a high honor for me to be included on this board.

7.     I give public presentations about data privacy and data breach litigation, including most recently at the Harris-Martin Publishing Conference in San Franciso in July 2023, a Strafford Publishing CLE panel discussion on my *Webb v. Injured Workers Pharmacy* case in October 2023, and a presentation at the North Carolina Bar Association 2023 Privacy & Data Security Section Annual Program in October 2023.

8.      I have been appointed as class counsel in other consumer class action cases and have tried consumer class action cases to verdict before a jury, most recently in *Baez v. LTD Financial Services*, Case No: 6:15–cv–1043–Orl–40TBS (MD Fla.).

9.      My experience with class actions also includes a leadership role in a Massachusetts Walmart wage abuse class action, national HMO litigation, the Buspirone MDL, and Louisiana Norplant litigation.

10.     In addition to my class action experience, I have substantial appellate experience, successfully briefing and arguing multiple cases before a number of federal appellate courts, including *Home Depot v. Jackson* at the U.S. Court of Appeals for the Fourth Circuit, and served as part of the successful brief-writing and oral advocacy team for *Home Depot v. Jackson*, 139 S. Ct. 1743, 1744, 204 L. Ed. 2d 34 (2019) at the United States Supreme Court.

11.     Prior to concentrating my practice on consumer class action litigation, I litigated critical injury and wrongful death actions arising from commercial incidents, such as tractor trailer incidents, industrial explosions, a subway collision, and commercial airplane crashes. A representative list of my critical injury and wrongful death cases include:

- Represented the family of the deceased conductor of the Washington Metropolitan Area Transit Authority subway train that collided with another Metro train in 2009.
- Represented the family of a fatality victim of the 2006 Greyhound bus crash near Elizabethtown, New York.
- Represented six victims (four deceased, two injured) of a massive fog related pileup on the Pennsylvania Turnpike in 2003.
- Represented three victims (two deceased, one injured) of the 2002 Interstate 40 Bridge Collapse, where a tugboat and barge hit an interstate highway bridge near Webbers Falls, Oklahoma and caused several vehicles to plunge into the Arkansas River.
- Represented the family of one victim of the 2000 Alaska Airlines Flight 261 crash, where an MD-83 with a cracked jackscrew nosedived into the water off Point Mugu, California.
- Represented the victims (one deceased, one critically injured) of a 2000 incident where a tractor trailer rear ended a line of stopped traffic near Hopkinsville, Kentucky.

- Represented a critically burned victim of the 1998 explosion at the State Line Energy plant in Hammond, Indiana, where a massive coal dust explosion ripped through the power plant, causing power shortages all over the city of Chicago, Illinois.
- Represented the families of four victims of the 1996 Valujet Flight 592 crash, where a DC-9 developed a cargo hold fire and crashed into the Everglades near Miami, Florida.
- Represented the family of a victim of a 1994 crane collapse in Laughlin, Nevada, when a mobile truck crane toppled across the parking lot of a casino.

12.     I negotiated several million+ dollar settlements, served as lead counsel in multiple civil actions, tried a number of cases to verdict in both jury and bench trials, and argued cases before federal district and appeals courts, and numerous state courts. I have lifetime verdicts and settlements in excess of $100 million, and consistently achieved settlements in the highest quartile of tort and mass tort cases. I have litigated against some of the largest transportation-related companies in the US, including Greyhound, Goodyear, Cessna, Textron, and the Washington Metropolitan Area Transit Authority (WMATA).

13.     I was first awarded the prestigious "AV" rating from Martindale-Hubbell in 1998, and have maintained that rating (and the concomitant listing in the Bar Register of Preeminent Lawyers) ever since.

14.     In addition to my personal qualifications, I bring the support and resources of Milberg to this case on behalf of the putative class. Milberg pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing, repeatedly taking the lead in landmark cases that have set groundbreaking legal precedents, prompting changes in corporate governance, and recovering over $50 billion in verdicts and settlements. A brief firm biography is attached to this declaration as **Exhibit 1**.

15.     Milberg is and has been one of the nation's most prominent class action law firms since its founding in 1965. Milberg continues to break new ground in cybersecurity and data privacy cases, including taking a co-lead counsel role in the high-profile *In re: Blaukbaud, Inc.*

*Customer Data Security Breach Litigation* (MDL 2972) that has established pleading standards and Art. III standing guidelines for data breach cases. Milberg has and is litigating multiple class actions against other companies within the same industry as Creative Services.

16.     My experience and Milberg's data breach experience compare favorably with that of any law firm in the country. The firm has ample resources (both financial and personnel, with over 100+ attorneys at the firm) to fully and adequately represent the interests of the proposed class here.

17.     I am, and my firm is, fully aware of the financial and human resources that will be required to bring this case to a successful conclusion and the Court should have no reservations that my firm has and is willing to commit those resources for the benefit of the Plaintiff's class. I personally have never used third-party funding on any data breach case, nor failed to meet my assessment obligations in any case. Neither I nor Milberg intends to use any third-party litigation funding for this case.

18.     My experience coupled with my firms' resources, will allow me to skillfully litigate this type of case in the best interests of Plaintiff and the putative class. Not only does my law firm have the resources to effectively prosecute this case, but it is also committed to utilizing them to do so.

19.     Milberg is a well-established law firm that employs numerous attorneys who represent plaintiffs in complex and class action litigation. Milberg can and will devote the necessary financial resources to this case.



# FIRM RESUME



Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg") is an AV-rated international law firm with more than 100 attorneys and offices across the United States, the European Union, and South America. Combining decades of experience, Milberg was established through the merger of Milberg Phillips Grossman LLP, Sanders Phillips Grossman LLC, Greg Coleman Law PC, and Whitfield Bryson LLP.

Milberg prides itself on providing thoughtful and knowledgeable legal services to clients worldwide across multiple practice areas. The firm represents plaintiffs in the areas of antitrust, securities, financial fraud, consumer protection, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, and cyber law and security.

For over 50 years, Milberg and its affiliates have been protecting victims' rights. We have recovered over $50 billion for our clients. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride ourselves on providing stellar service to our clients. We have repeatedly been recognized as leaders in the plaintiffs' bar and appointed to numerous leadership roles in prominent national mass torts and class actions.

> *Milberg challenges corporate wrongdoing through class action, mass tort, consumer and shareholder right services, both domestically and globally.*

In the United States, Milberg currently holds more than 100 court-appointed full- and co-leadership positions in state and federal courts across the country. Our firm has offices in California, Chicago, Florida, Georgia, Illinois, Kentucky, Louisiana, Mississippi, New Jersey, New York, North Carolina, South Carolina, Tennessee, Washington, Washington D.C., and Puerto Rico. Milberg's commitment to its clients reaches beyond the United States, litigating antitrust, securities, and consumer fraud actions in Europe and South America, with offices located in the United Kingdom, and the Netherlands. Milberg prides itself on providing excellent service worldwide.

The firm's lawyers have been regularly recognized as leaders in the plaintiffs' bar by the National Law Journal, Legal 500, Chambers USA, Time Magazine, and Super Lawyers, among others.

> *"A powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."*
> **- THE NEW YORK TIMES**

# PRACTICE AREAS

Milberg maintains a robust practice, representing plaintiffs across numerous areas of law. Milberg attorneys have amassed a wealth of experience in the areas of antitrust and competition law, securities litigation, defective consumer product and automobile litigation, consumer services litigation, dangerous drugs and devices litigation, data breach and biometric data litigation, environmental and toxic tort litigation, finance and insurance litigation, state and local government litigation, and whistleblower and qui tam lawsuits. Milberg attorneys focus their practice among these groups to provide their clients with the best representation possible. Over decades, Milberg attorneys have developed expertise in handling class action lawsuits, leading and overseeing multidistrict litigation, and representing municipalities and other public and governmental clients. Based on their reputation and experience, Milberg attorneys have been assigned to leadership roles in class actions, mass torts litigation, and multidistrict litigation nationwide, across all of these practice areas.

## SECURITIES FRAUD

Milberg pioneered the use of class action lawsuits to litigate claims involving investment products, securities, and the banking industry. Fifty years ago, the firm set the standard for case theories, organization, discovery, methods of settlement, and amounts recovered for clients. Milberg remains among the most influential securities litigators in the United States and internationally.

Milberg and its attorneys were appointed Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases throughout its history.

**EXEMPLAR CASES**

**In re: Nortel Networks Corp. Securities Litigation**
**U.S. District Court for the Southern District of New York**
Milberg attorneys served as Lead Counsel for the class and the court-appointed lead plaintiff, the Trustees of the Ontario Public Service Employees' Union Pension Plan Trust Fund, in this federal securities class action. The court approved a settlement valued at more than $1.14 billion.

**In re: Initial Public Offering Securities Litigation**
**U.S. District Court for the Southern District of New York**
Milberg represented investors in 310 securities class actions alleging a market manipulation scheme involving hundreds of initial public offerings and approximately 55 defendant investment banks. Plaintiffs alleged this scheme significantly contributed to the high-tech "bubble" of the late 1990s and early 2000s. In approving a $586 million settlement, the court described the law firms on the Plaintiffs' Executive Committee as the "cream of the crop."

### In re: Zynga Inc. Sec. Litigation
**U.S. District Court for the Northern District of California**
A class action in which Zynga misled investors by portraying the online gaming company as financially strong and withholding non-public information, which in turn allowed a select few within the company to reap the benefits from the company's IPO, before the stock's value eventually collapsed.

### In re: Merck & Co., Inc. Sec. Litigation
**U.S. District Court for the District of New Jersey**
Milberg served as Co-Lead Counsel in this federal securities fraud class action, and after more than 12 years of hard-fought litigation, ultimately obtained a combined settlement totaling $1.062 billion, the largest securities class action settlement ever against a pharmaceutical company. The court described the settlement as "a settlement which is fair and just and which, in fact, is the best settlement which possibly could have been achieved in this case."

### In re: Deutsche Telekom AG Sec. Litigation
**U.S. District Court for the Southern District of New York**
Milberg attorneys served as Co-Lead Counsel in this class action on behalf of purchasers of American Depository Receipts. The plaintiffs alleged that Deutsche Telekom improperly failed to disclose plans to make a major corporate acquisition and overstated the value of real estate assets. Milberg attorneys played a pivotal role in achieving a $120 million settlement.

### In re: Tyco Int'l Ltd., Sec. Litigation
**U.S. District Court for the District of New Hampshire**
Milberg attorneys served as Co-Lead Counsel in this litigation, which involved federal securities claims against Tyco and its former CEO, CFO, general counsel, and certain former directors for insider trading and the overstatement of billions of dollars in income. Milberg attorneys played a crucial role in achieving a $3.2 billion settlement.

### In re: Vivendi Universal, S.A. Securities Litigation
**U.S. District Court for the Southern District of New York**
Milberg was one of two Lead Trial Counsel in this securities fraud case tried to a jury over four months. The jury found Vivendi liable for dozens of false or misleading statements and awarded damages valued at well over a billion dollars. Six months later, in an unrelated case, the Supreme Court ruled that purchasers on foreign securities exchanges could not recover under U.S. law. Milberg's case against Vivendi continued with post-verdict proceedings under the new standard, and damages have been distributed to U.S. class members totaling over $100 million.

### In re: Washington Public Power Supply System Securities Litigation
**U.S. District Court for the District of Arizona**
In this massive securities fraud litigation, Milberg served as Co-Lead Counsel for a class that obtained, after several months of trial, settlements totaling $775 million, the largest securities fraud settlement at that time.

### In re: Lucent Technologies, Inc. Securities Litigation
**U.S. District Court for the District of New Jersey**
Milberg served as Co-Lead Counsel in this securities action, which alleged that Lucent and its senior officers misrepresented the demand for Lucent products and improperly recognized hundreds of millions of dollars in revenues. The case settled for $600 million.

### In re: Biovail Corp. Securities Litigation
**U.S. District Court for the Southern District of New York**
Milberg, representing Local 282 Welfare Trust Fund and serving as Co-Lead Counsel, litigated this securities action alleging that defendants made misleading statements concerning Biovail's financial results and its drug, Cardizem LA. Following substantial discovery, including depositions across the U.S. and Canada, Milberg obtained a $138 million settlement for the class, and Biovail agreed to institute significant corporate governance changes.

### In re: CVS Corp. Securities Litigation
**U.S. District Court for the District of Massachusetts**
Milberg served as Co-Lead Counsel in this securities action on behalf of a class of purchasers of American Depository Receipts. The plaintiffs alleged that Deutsche Telekom improperly failed to disclose plans to make a major corporate acquisition and overstated the value of real estate assets. In 2005, following extensive discovery, including depositions in Germany, the court approved a $120 million cash settlement.

### In re: CVS Corp. Securities Litigation
**U.S. District Court for the District of Massachusetts**
Milberg served as Co-Lead Counsel in this securities class action alleging that defendants issued false and misleading statements, which artificially inflated the price of CVS stock.
The court approved a $110 million settlement.

### In re: American Express Financial Advisors Securities Litigation
**U.S. District Court for the Southern District of New York**
This case involved allegations that American Express Financial Advisors violated securities laws by representing to class members that the company would provide tailored financial advice when the company actually provided "canned" financial plans and advice designed to steer clients into American Express and certain non-proprietary mutual funds. The case settled for $100 million and required the company to adopt various remedial measures.

### Irvine v. ImClone Systems, Inc.
**U.S. District Court for the Southern District of New York**
Milberg served as Co-Lead Counsel in this case, in which the court approved a $75 million cash settlement. The plaintiffs alleged that ImClone misrepresented the likelihood that its drug, Erbitux, would be approved, thereby artificially inflating the price of ImClone stock.

## ANTITRUST

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

**EXEMPLAR CASES**

**In re: Dealer Management Systems Antitrust Litigation**
**U.S. District Court for the Northern District of Illinois**
Milberg is appointed Lead Counsel in this nationwide class action representing car dealerships. Plaintiffs allege that leading software providers entered into an unlawful agreement, monopolizing access to auto sales and service data in dealer management software used by dealers, thereby reducing competition and increasing prices. Milberg attorneys achieved a $29.5 million settlement against one defendant and the case is proceeding against the remaining defendant.

**In re: ACTOS Antitrust Litigation**
**U.S. District Court for the Southern District of New York**
Milberg attorneys played a significant role in this litigation, including appointment to the MDL Discovery Committee, which accused Takeda Pharmaceuticals of failing to warn patients of the risks of bladder cancer, heart failure and other side effects associated with the Type 2 diabetes drug. In 2015, roughly 9,000 claims were settled for $2.4 billion and significant injunctive relief.

**In re: Cathode Ray Tube (CRT) Antitrust Litigation**
**U.S. District Court for the Northern District of California**
Milberg represented indirect purchaser plaintiffs in this class action alleging an international conspiracy among defendants to keep prices for cathode ray tube (CRT) displays artificially high. Milberg had a significant discovery role in the prosecution of this class action with settlements exceeding $580 million.

**Blessing v. Sirius XM Radio Inc.**
**U.S. District Court for the Southern District of New York**
Milberg served as Co-Lead Counsel in this case alleging that the merger of two U.S. satellite radio providers led to the monopolization of the satellite radio market and the elimination of competition.

**In re: Disposable Contact Lens Antitrust Litigation**
**U.S. District Court for the Middle District of Florida**
Milberg represented indirect purchasers in a class action alleging that defendants conspired to maintain artificially high prices for disposable contact lenses through policies that prevented resale of the subject contact lenses below a minimum price. Settlements exceeded $118 million.

**In re: Liquid Aluminum Sulfate Antitrust Litigation**
**U.S. District Court for the District of New Jersey**
Milberg was appointed to the Plaintiffs Steering Committee in this class action alleging that manufacturers of a chemical essential to municipal water treatment engaged in price-fixing, bid-rigging and market allocation in violation of federal antitrust laws. Settlements were valued at $92.5 million.

### Sandhaus v. Bayer AG
**Kansas State Court**
Milberg served as Co-Lead Counsel in this case alleging that Bayer and several generic drug manufacturers entered into pay-for-delay agreements concerning an antibiotic marketed by Bayer, which caused the plaintiffs to continue paying supracompetitive prices for the drug throughout the class period. The case settled for $9 million.

### In re: Fresh Process Potatoes Antitrust Litigation
**United States District Court, District of Idaho**
Milberg served as Co-Lead Counsel for indirect purchaser plaintiffs in this class action alleging that potato growers, their cooperatives, processors, and packers violated federal antitrust laws by conspiring to manipulate the price and supply of potatoes. Milberg achieved a settlement for $5.5 million and meaningful injunctive relief.

### In re: Google Play Consumer Antitrust Litigation
**U.S. District Court for the Northern District of California**
Milberg is appointed part of a three-member Steering Committee in this consolidated class action alleging Google engaged in anticompetitive behavior through the Google Play Store, seeking injunctive relief and monetary damages on behalf of consumers forced to pay inflated prices for Play Store purchases.

### Series 17-03-615, a series of MSP Recovery Claims, Series LLC. v. Express Scripts, Inc.
**U.S. District Court for the Northern District of Illinois**
Milberg represents third-party payers in this class action alleging that defendants participated in a vertical price-fixing scheme and their monopolistic, anticompetitive behavior caused plaintiffs and the class to pay inflated prices for the drug, H.P. Acthar Gel.

### In re: Hard Disk Drive Assemblies Antitrust Litigation
**U.S. District Court for the Northern District of California**
Milberg represents a class of indirect purchaser end user plaintiffs in a class action alleging that the two largest manufacturers of hard disk drive (HDD) suspension assemblies illegally conspired to fix prices of these component parts, thereby raising prices of products purchased by plaintiffs and the class.

### In re: Deere & Co. Repair Services Antitrust Litigation
**U.S. District Court for the Northern District of Illinois**
Milberg is appointed to the Plaintiffs Steering Committee in this class action alleging that John Deere illegally monopolized the repair and diagnostic services market for Deere brand agricultural equipment with onboard central computers known as engine control units, thereby inflating the prices of these services.

### Harley-Davidson Aftermarket Parts Marketing, Sales Practices and Antitrust Litigation
**U.S. District Court for the Eastern District of Wisconsin**
Milberg represents a class of Harley-Davison motorcycle owners in a case alleging that Harley-Davidson uses its monopoly power to force motorcycle owners to use its compatible branded parts for repairs or risk losing warranty coverage.

In re: California Gasoline Spot Market Antitrust Litigation
U.S. District Court for the Northern District of California
Milberg represents California consumers who were forced to pay supracompetitive prices for gasoline due to the manipulation of the California gasoline spot market.

## FINANCIAL LITIGATION

For over five decades, Milberg has spearheaded litigation challenging unethical practices by some of the biggest financial and insurance institutions in the world and has been at the cutting edge of cases that directly impacted large banks, lenders, and insurers.

**EXEMPLAR CASES**

In re: Prudential Insurance Co. Sales Practice Litigation
U.S. District Court for the Northern District of California
Milberg attorneys were appointed Lead Counsel and recovered more than $4 billion for certain policyholders in this landmark case challenging Prudential's insurance sales practices.

In re: Raytheon Co. Securities Litigation
U.S. District Court for the District of Massachusetts
Milberg served as Lead Counsel in this case, which alleged that a major defense contractor failed to properly write down assets on construction contracts. Raytheon and its auditor, PricewaterhouseCoopers LLP, settled for a total of $460 million.

In re: Chase Bank USA, N.A. "Check Loan" Contract Litigation
U.S. District for the Northern District of California
Milberg served on the Executive Committee representing the class in this action against JP Morgan Chase & Co. The complaint alleged that Chase improperly increased the minimum monthly payment by 150% required for customers who entered into balance transfer loans with "fixed" interest rates that were guaranteed to remain so for the "life of the loan." Milberg and its Co-Counsel achieved a $100 million settlement for the class.

In re: General Electric Co. ERISA Litigation
U.S. District Court for the Northern District of New York
Milberg, serving as Co-Lead Counsel, achieved a $40 million settlement on behalf of current and former G.E. employees who claimed that G.E.'s 401(k) Plan fiduciaries imprudently invested more than two-thirds of the Plan's assets in company stock. The settlement included important structural changes to G.E.'s 401(k) plan valued at more than $100 million.

In re: Royal Dutch/Shell Transport ERISA Litigation
U.S. District Court for the District of New Jersey
Milberg attorneys led this ERISA breach of fiduciary duty class action against the Royal Dutch/Shell Oil Group of Companies on behalf of certain of the companies' U.S. employee investment plan participants. The $90 million settlement included important provisions regarding the monitoring and training of individuals appointed to be ERISA fiduciaries.

### Mason v. Medline

**U.S. District Court for the Northern District of Illinois**

Milberg successfully represented a healthcare worker in a False Claims Act case against his former employer, Medline Industries, Inc., one of the nation's largest suppliers of medical and surgical products, along with its charitable arm, The Medline Foundation. The suit alleged that Medline engaged in a widespread illegal kickback scheme targeting hospitals and other healthcare providers that purchase medical products paid for by federal healthcare programs. Milberg pursued the case on a non-intervened basis and recovered $85 million on behalf of the federal government — one of the largest settlements of a False Claims Act case in which the government declined to intervene.

### In re: Comverse Technology, Inc. Derivative Litigation

**U.S. Supreme Court for the State of New York, New York County**

As Co-Lead Counsel, Milberg negotiated a $62 settlement which was approved by the court. The settlement also resulted in significant corporate governance reforms, including the replacement of various directors and officers; the amendment of the company's bylaws to permit certain shareholders to propose in the company's proxy materials nominees for election as directors; and the requirement that all equity grants be approved by both the compensation committee and a majority of the non-employee directors.

## CONSUMER PROTECTION

Milberg's Consumer Protection Practice Group focuses on improving product safety and protecting those who have fallen victim to deceptive marketing and advertising of goods and services and/or purchased defective products. Milberg attorneys have served as Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases alleging the sale of defective products, improper marketing of products, and violations of consumer protection statutes.

**EXEMPLAR CASES**

### Cleveland v. Whirlpool Corp.

**U.S. District Court for the District of Minnesota**

Milberg attorneys led this class action involving leaking and defective washing machines. Milberg attorneys were pivotal in achieving a settlement valued at approximately $21 million, which included meaningful service plan benefits and reimbursement for out-of-pocket repair expenses.

### Berman et al. v. General Motors LLC

**U.S. District Court for the Southern District of Florida**

Milberg attorneys held leadership roles in this class action involving excessive oil consumption in Chevrolet and GMC vehicles. Milberg attorneys played a pivotal role in achieving a nationwide settlement valued at over $40 million, securing vehicle repairs and reimbursement for out-of-pocket repair costs.

### Chess v. Volkswagen Group of America, Inc.

**U.S. District Court for the Central District of California**

Milberg attorneys were named Co-Lead Counsel in this class action involving Volkswagen vehicles with defective transmissions. Milberg attorneys secured a settlement that included up to full reimbursement for out-of-pocket repair expenses and significant injunctive relief.

### Hamm v. Sharp Electronics Corporation
**U.S. District Court for the Southern District of Florida**
Milberg attorneys served as Co-Class Counsel in this class action involving defectively designed microwave drawers. Milberg attorneys were instrumental in achieving a settlement valued at more than $100 million, which included meaningful extended service plan benefits and reimbursement for out-of-pocket repair expenses.

### In re: Allura Fiber Cement Siding Products Liability Litigation
**U.S. District Court for the District of South Carolina**
Milberg attorneys were appointed Co-Lead Counsel and Steering Committee members by the court in this class action alleging defective fiber cement board siding. Milberg attorneys helped to secure a nationwide settlement for repair and replacement of homeowners' siding.

### In re: MI Windows and Doors, Inc., Products Liability Litigation
**U.S. District Court for the District of South Carolina**
Milberg attorneys served as Co-Lead Counsel in this multidistrict class action litigation and helped to secure a nationwide class settlement for homeowners who purchased defectively designed windows.

### In re: Zurn Pex Plumbing Products Liability Litigation
**U.S. District Court for the District of Minnesota**
Milberg attorneys served on the Executive Committee in this multidistrict class action involving leaking and defective plumbing systems. Milberg attorneys secured monetary benefits valued at $100,000 per class settlement member, and plumbing repairs in value up to $7,000 per class settlement member.

### Hobbie, et al. v. RCR Holdings II, LLC, et al.
**U.S. District Court for the District of Louisiana**
Milberg attorneys served as Co-Lead Counsel in a multidistrict class action alleging improper usage of toxic and defective Chinese drywall. Milberg attorneys played an important role in securing a $30 million settlement for remediation of 364-unit residential high-rise buildings constructed with the toxic drywall.

### In re: Chinese Manufactured Drywall Products Liability Litigation
**U.S. District Court for the Eastern District of Louisiana**
Milberg attorneys served on the Executive Committee in a multidistrict class action involving defective and toxic drywall.

### In re: Synthetic Stucco Litigation
**U.S. District Court for the Eastern District of North Carolina**
Milberg attorneys were appointed to the Steering Committee and played a pivotal role in securing settlements with four exterior insulation finishing system manufacturers for homeowners valued at over $50 million.

### Bridget Smith v. Floor and Decor Outlets of America, Inc.
**U.S. District Court for the Northern District of Georgia**
Milberg attorneys were appointed Co-Lead Counsel in this class action alleging undisclosed formaldehyde exposure from wood and laminate flooring. Milberg attorneys achieved a national class action settlement for homeowners who purchased unsafe laminate wood flooring.

### In re: Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices and Products Liability Litigation

**U.S. District Court for the Eastern District of Virginia**

Milberg attorneys were appointed Co-Lead Counsel in this class action alleging formaldehyde exposure and secured a $36 million national class action settlement for members who purchased a certain type of laminate flooring.

### In re: Windsor Wood Clad Window Products Liability Litigation

**U.S. District Court for the Eastern District of Wisconsin**

Milberg attorneys were appointed Lead Counsel in this class action alleging window defects. Milberg attorneys helped to secure a nationwide settlement for customers providing repairs, replacements, and compensation for out-of-pocket expenses.

### In re: Allura Fiber Cement Siding Products Liability Litigation

**U.S. District Court for the District of South Carolina**

Milberg attorneys were appointed Co-Lead Counsel in this class action alleging defective cement board siding. Milberg attorneys helped to secure a nationwide settlement for customers providing repairs, replacements, and compensation for out-of-pocket expenses.

### Norman et al. v. Nissan North America

**U.S. District Court for the Middle District of Tennessee**

Milberg attorneys were appointed Co-Lead Counsel in this class action alleging CVT transmission defects in Nissan vehicles. Milberg attorneys played a pivotal role in securing a nationwide settlement valued at approximately $17 million for repairs, replacements, extended warranty, and cash benefits.

### In re: Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practice Litigation

**U.S. District Court for the Southern District of Florida**

Milberg attorneys were appointed Co-Lead Counsel in this class action alleging falsely advertised brain health benefits. Milberg attorneys were essential in securing a settlement valued at $1.3 million for consumers.

### In re: Deva Concepts Products Liability Litigation

**U.S. District Court for the Southern District of New York**

Milberg attorneys were appointed Co-Lead Counsel in this multidistrict class action alleging hair loss and scalp irritation caused by Deva's products. Milberg attorneys secured a nationwide settlement valued at $5.2 million, including up to $19,000 per class member.

### In re: All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practices Litigation

**U.S. District Court for the Western District of Pennsylvania**

Milberg attorneys were appointed to leadership positions in this multidistrict class action involving All-Clad's false advertising that its stainless-steel cookware was dishwasher safe. Milberg attorneys secured a nationwide settlement valued at $4 million, including replacement products, monetary benefits, partial reimbursements for purchases of the defective products, and discounts on future product purchases.

### Julian, et al., v. TTE Technology, Inc.

**U.S. District Court for the Northern District of California**

Milberg attorneys were appointed Co-Lead Counsel in this litigation involving the false advertising of TCL televisions' refresh rates. Milberg attorneys played an important role in securing a class settlement valued at $2.5 million in cash benefits to class members.

### Roberts et al. v. Electrolux Home Products Inc.

**U.S. District Court for the Central District of California**

Milberg attorneys were named Co-Lead Counsel in this class action involving defective dryers manufactured by Electrolux. Milberg attorneys helped to obtain a settlement on behalf of more than one million class members, valued at over $35 million.

### Tabak v. Apple Inc.

**U.S. District Court for the Northern District of California**

Milberg attorneys brought this class action against Apple for a defect in the iPhone 7 and iPhone 7 Plus, which negatively impacted the audio quality of the phones. Milberg attorneys played a pivotal role in bringing the case, briefing, and discovery. The parties have agreed to a class settlement in principle, valued at $35 million.

### Koenig v. VIZIO, Inc.

**Superior Court of Los Angeles County, California**

Milberg attorneys litigated this class action involving the false advertising of Vizio televisions' refresh rates. Milberg attorneys played a pivotal role, including briefing, discovery, and handling all trial responsibilities. The parties have agreed to a class settlement in principle, valued at over $40 million.

### In re: Outer Banks Power Outage Litigation

**U.S. District Court for the Eastern District of North Carolina**

Milberg attorneys served as Co-Lead Counsel and secured a $10.35 million settlement in a class action in which residents, businesses, and vacationers on Hatteras and Ocracoke Islands in North Carolina were impacted by a 9-day power outage.

### Elliott et al v. KB Home North Carolina Inc.

**North Carolina Superior Court**

In this class action involving homeowners who purchased homes that were improperly built without weather-resistant barriers, Milberg attorneys played an essential role in securing a settlement valued at approximately $6,500 to $17,000 for each class member.

### In re: Allergan Biocell Textured Breast Implant Product Liability Litigation

**U.S. District Court for the District of New Jersey**

Milberg attorneys were appointed to the Plaintiffs Steering Committee in this multidistrict class action against Allergan for breast implants that caused cancer. Milberg attorneys continue to play a pivotal role in this ongoing case.

### In re: Evenflo Co., Inc. Marketing, Sales Practices and Products Liability Litigation

**U.S. District Court for the District of Massachusetts**

Milberg attorneys were appointed Co-Lead Counsel in this multidistrict litigation against Evenflo for deceptively marketing its child booster seats.

### Carder v. Graco Children's Safety products, Inc.
**U.S. District Court for the Northern District of Georgia**
Milberg attorneys were appointed to multiple leadership positions in this class action involving the deceptive marketing of child car seats.

### Coleman, et al, v. Britax Child Safety, Inc.
**U.S. District Court for the District of South Carolina**
Milberg attorneys were appointed Co-Lead Counsel in this class action involving the deceptive marketing of child car seats.

### Yamasaki v. Zicam LLC
**U.S. District Court for the Northern District of California**
Milberg attorneys brought claims against Zicam for false advertising of its cold medicine, which failed to warn consumers that the medicine could cause permanent loss of smell.

### In re: Seresto Flea and Tick Collar Marketing, Sales Practices And Products Liability Litigation
**U.S. District Court for the Northern District of Illinois**
Milberg attorneys were appointed Co-Lead Counsel in this multidistrict class action against the manufacturers of Seresto flea and tick collars, which were linked to numerous pet deaths. The litigation is ongoing.

## DANGEROUS DRUGS & DEVICES

Milberg is a nationally renowned firm in mass torts, fighting some of the largest, wealthiest, and most influential pharmaceutical and device companies and corporate entities in the world. Our experienced team of attorneys has led or co-led numerous multidistrict litigations of defective drugs and medical devices.

**EXEMPLAR CASES**

### In re: Avandia Marketing, Sales Practices, and Products Liability Litigation
**U.S. District Court for the Eastern District of Pennsylvania**
Milberg attorneys were appointed to the Plaintiffs Steering Committee and served on the Discovery and Media Sub-Committees on behalf of thousands of patients who took the Type 2 diabetes drug Avandia, alleging the manufacturer failed to disclose the known and increased risk of heart attack and cardiac death. GlaxoSmithKline set aside $3.4 billion in 2011 to settle lawsuits.

### In re: Benicar (Olmesartan) Products Liability Litigation
**U.S. District Court for the District of New Jersey**
Milberg attorneys were appointed to the Plaintiffs Steering Committee and Common Benefit Fee Committee in this multidistrict litigation which alleged that Benicar manufacturer Daiichi Sankyo and co-promoter Forest Laboratories were responsible for serious gastrointestinal injuries. In 2017, the defendants agreed to a $300 million settlement.

### In re: Chantix (Varenicline) Products Liability Litigation
**U.S. District Court for the Northern District of Alabama, Southern Division**
Milberg attorneys served as Co-Lead Counsel in the Chantix Coordination in New York State Court and court-appointed member of the Plaintiffs Steering Committee in the MDL in Alabama.

### In re: Fluoroquinolone Products Liability Litigation
**U.S. District Court for the District of Minnesota**
Milberg attorneys were appointed to the Plaintiffs Steering Committee in the MDL in Minnesota litigating the broad-spectrum antibiotic that resulted in severe tendon damage, particularly debilitating Achilles tendon ruptures.

### Fosamax Litigation (I & II)
**U.S. District Court for the District of New Jersey**
Fosamax I: Milberg was appointed Lead Counsel in this New York MDL for ONJ cases and served on the Discovery Team in the Superior Court of New Jersey. Fosamax II: Milberg was appointed to Fosamax Femur MDL Plaintiffs Steering Committee for MDL in the District of New Jersey.

### In re: Fresenius Granuflo/NaturaLyte Dialysate Products Liability Litigation
**U.S. District Court for the District of Massachusetts**
Milberg attorneys served on the Plaintiffs Steering Committee in the MDL. Granuflo and NaturaLyte were manufactured and marketed by Fresenius Medical for use in dialysis treatment to address kidney failure both chronic and acute, but also caused increased heart complications.

### In re: Incretin Mimetics Products Liability Litigation
**U.S. District Court for the Southern District of California (San Diego)**
Milberg attorneys were appointed to the MDL Plaintiffs Steering Committee in California. Incretins are a class of Type 2 Diabetes drugs which result in a significant increase in gastric side effects.

### In re: Infusion Pump Cases (JCCP 4615)
**U.S. Nineth Circuit Court, Eastern District of California**
Milberg attorneys were appointed Plaintiffs Liaison Counsel. Studies showed that pain pumps were associated with high failure rates when used appropriately and often mis-used leading to increased failure rates and resultant complications.

### Risperdal and Invega Product Liability Litigation (JCCP 4775)
**California Second District Court of Appeal, Division Three**
Milberg attorneys were appointed Co-Lead Counsel in Risperdal/Invega Product Liability Litigation against Johnson & Johnson/Janssen regarding these anti-psychotic dopamine receptor blockers that cause hormonal changes in male users that can result in breast tissue growth.

### In re: Mirena IUD Levonorgestrel-Related Products Liability Litigation
**U.S. District Court for the Southern District of New York**
Milberg attorneys were appointed to the Plaintiffs Steering Committee. Mirena, a hormone releasing IUD for contraception was intended for longer term placement, are prone to failure and breakage and resultant injuries.

### Propecia Finasteride Product Liability Litigation
**U.S. District Court for the Eastern District of New York**
Milberg attorneys were appointed to the Plaintiffs Steering Committee. Another Milberg attorney was appointed Lead Counsel in the New Jersey Multi County Litigation in Middlesex County, New Jersey.  These litigations centered on sexual dysfunction resulting from use of Merck's male pattern hair loss product, Propecia.

### In re: Reglan Litigation
**U.S. Superior Court of New Jersey, Law Division Atlantic County**
Milberg attorneys were appointed Co-Lead Counsel in the Multi County Litigation in New Jersey State Court, Atlantic County. Reglan is often used for longer terms to address symptoms of GERD resulting in neurological injuries including Tardive Dyskinesia.

### Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation (MDL 2738)
**U.S. District Court for the District of New Jersey**
Milberg attorneys were appointed to the Plaintiffs Steering Committee in the Johnson & Johnson Talcum Powder Litigation and served on the Science Committee and Bellwether Committee in the MDL in District Court New Jersey, as well as on the Science and Experts Committee of the PSC.

### In re: American Medical Systems, Inc., Pelvic Repair System Products Liability Litigation
**U.S. District Court for the Southern District of West Virginia**
Milberg attorneys were appointed to the Plaintiffs Steering Committee in the AMS, Bard, Boston Scientific and Ethicon MDLs.

### In re: Vioxx Products Liability Litigation
**U.S. District Court for the Eastern District of Louisiana**
Milberg attorneys served as Liaison to the media for Vioxx Plaintiffs Steering Committee and Public Relations Committee in Louisiana and on the New Jersey Multi County Litigation Vioxx discovery team.

### In re: Zicam Cold Remedy Marketing, Sales Practices and Products Liability Litigation
**U.S. District Court for the District of Arizona**
Milberg attorneys were appointed to the MDL Plaintiffs Steering Committee in Arizona in this case involving a homeopathic, over the counter common cold and allergy symptom product that left many with impaired ability to smell.

### In re: Zimmer Nexgen Knee, Implant Products Liability Litigation
**U.S. District Court for the Northern District of Illinois, Eastern Division**
Milberg attorneys were appointed to the MDL Plaintiff's Steering Committee in Illinois as well as the Electronic Storage Information Committee. Zimmer manufactures multiple devices including knee devices which resulted in premature failure necessitating additional, painful, and costly surgeries.

### In re: Crestor Products Liability Cases (JCCP 4713)
**California Superior Court**
Milberg attorneys served as Co-Lead Counsel in the JCCP in State Court California on this highly potent AstraZeneca "me too" cholesterol managing statin litigation where serious side effects included newly onset diabetes and liver damage as well as reactions with Coumadin.

# EMPLOYMENT & CIVIL RIGHTS

Milberg's Employment & Civil Rights attorneys focus on class actions and individual cases nationwide arising from discriminatory banking and housing practices, unpaid wages and sales commissions, improperly managed retirement benefits, workplace discrimination, and wrongful termination.

**EXEMPLAR CASES**

**In re: Black Farmers Discrimination Litigation**
U.S. District Court for the District of Columbia
Milberg attorneys were appointed Lead Counsel and secured a $1.25 billion settlement fund for black farmers who alleged the U.S. Department of Agriculture discriminated against them by denying farm loans.

**Kingston v. IBM**
U.S. District Court for the Western District of Washington
Milberg attorneys spearheaded a series of landmark cases against IBM alleging wrongful termination of software sales managers through a pattern of fraudulent conduct.

**Parry et al. v. Farmers Insurance Exchange, et al.**
Superior Court of Los Angeles County, California
Milberg attorneys were named Class Counsel and secured a $75 million class-action settlement with Farmers Insurance on behalf of its agents alleging that Farmers Insurance misclassified its agents as independent contractors.

**Meek v. SkyWest, Inc.**
U.S. District Court for the Northern District of California
Milberg attorneys were Lead Counsel and secured a $4.2 million class action settlement against SkyWest Airlines for allegedly failing to provide proper rest and meal breaks to its employees.

**Craig v. Rite Aid Corporation**
U.S. District Court for the Middle District of Pennsylvania
This FLSA collective action and class action settled for $20.9 million.

**Stillman v. Staples, Inc.**
U.S. District Court for the District of New Jersey
This FLSA collective action had a Plaintiffs' trial verdict for $2.5 million and a national settlement approved for $42 million.

**Lew v. Pizza Hut of Maryland, Inc.**
U.S. District Court for the District of New Jersey
This FLSA collective action had a statewide settlement for managers-in-training and assistant managers, providing recompense of 100% of lost wages.

# ENVIRONMENTAL LITIGATION & TOXIC TORTS

Milberg's Environmental Litigation & Toxic Torts Practice Group focuses on representing clients in mass torts, class actions, multi-district litigation, regulatory enforcement, citizen suits, and other complex environmental and toxic tort matters. Milberg and its attorneys have held leadership roles in all facets of litigation in coordinated proceedings, with a particular focus on developing the building blocks to establish general causation, which is often the most difficult obstacle in an environmental or toxic tort case.

## EXEMPLAR CASES

### Nnadili, et al. v. Chevron U.S.A., Inc,

**U.S. District Court for the District of Columbia**

Milberg attorneys were Lead Counsel in a $6.2 million settlement for owners and residents of 200 properties located above underground plume of petroleum from former Chevron gas station.

### In re: Swanson Creek Oil Spill Litigation

**U.S. District Court for the District of Maryland**

Milberg attorneys served as Lead Counsel and achieved a $2.25 million settlement arising from the largest oil spill in history of State of Maryland.

### In re: Exxon Valdez

**U.S. District Court for the District of Alaska**

Milberg was a member of the Plaintiffs' Coordinating Committee and co-chair of the Plaintiffs' Law Committee in this massive litigation resulting from the Exxon Valdez oil spill in Alaska. The plaintiffs obtained a jury verdict of $5 billion, which, after years of appeals by Exxon, was reduced to approximately $500 million by the United States Supreme Court. The United States Court of Appeals for the Ninth Circuit has since held that plaintiffs are entitled to post-judgment interest on the award in the amount of approximately $470 million.

### Municipality of Bayamon, et al., v. Exxon Mobil Corp., et al.

**United States District Court for the District of Puerto Rico**

More than a dozen municipalities of Puerto Rico have filed a class action lawsuit against fossil fuel companies for their alleged role in the deadly 2017 hurricane season that devastated the Commonwealth, causing billions in damages and leaving thousands of people dead. The first-of-its-kind lawsuit seeks financial compensation from oil and coal companies for marketing and selling carbon-based products that they intentionally misrepresented to the public and worked together to publicly conceal the climate risk changes of their products while internally acting on climate science to safeguard their own assets.

### Sharon Weatherly v. Eastman Chemical Co.

**Circuit Court of Sullivan County, Tennessee Second Judicial District**

Milberg attorneys led the effort to bring justice for hundreds of injured workers and their families resulting from a steam explosion at the Eastman Chemical Company which released asbestos and other toxic materials. Milberg filed a class-action lawsuit, pursuing claims for public and private nuisance, trespass, negligence, and strict liability for ultra-hazardous activity.

# STATE & LOCAL GOVERNMENTS

Milberg attorneys are dedicated to defending the Constitutional and statutory rights of individuals and businesses that are subjected to unlawful government exactions and fees by state and local governments or bodies.

## EXEMPLAR CASES

### Daedalus, LLC, et al. v. City of Charlotte
North Carolina Superior Court, Mecklenburg County
Milberg attorneys recovered a $106 million class action settlement for property owners for unlawful water and sewer capacity fees and system development fees charged by the City of Charlotte, North Carolina as a condition of providing water and sewer service to property owners.

### Upright Builders, Inc., et al. v. Town of Apex
North Carolina Superior Court, Wake County
Milberg attorneys recovered a $15.3 million class action settlement for property owners for unlawful water and sewer capacity replacement fees and transportation impact fees charged by the Town of Apex, North Carolina as a condition of providing water and sewer service to property owners.

### Plantation Builders of Wilmington, Inc., et al. v. County of Brunswick
North Carolina Superior Court, Brunswick County
Milberg attorneys recovered a $15.25 million class action settlement for property owners for unlawful water and sewer capacity fees charged by Brunswick County, North Carolina as a condition of providing water and sewer service to property owners.

### Gerald Currin Builders, Inc. v. Town of Holly Springs
North Carolina Superior Court, Wake County
Milberg attorneys recovered a $7.9 million class action settlement for property owners for unlawful water and sewer capacity replacement fees charged by the Town of Holly Springs, North Carolina as a condition of providing water and sewer service to property owners.

### Meritage Homes of the Carolinas, Inc. v. Town of Holly Springs
North Carolina Superior Court, Wake County
Milberg attorneys recovered a $7.5 million class action settlement for property owners for unlawful parks and recreation fees in-lieu of land dedication charged by the Town of Holly Springs, North Carolina as a condition of granting development approval to residential subdivision developers.

### Plantation Building of Wilmington, Inc. v. Town of Leland
North Carolina Superior Court, Brunswick County
Milberg attorneys recovered a $6.2 million class action settlement for property owners for unlawful water and sewer impact fees charged by the Town of Leland, North Carolina as a condition of providing water and sewer service to property owners.

### Shenandoah Homes, LLC v. Town of Clayton
**North Carolina Superior Court, Johnston County**
Milberg attorneys recovered a $2.7 million class action settlement for property owners for unlawful water and sewer impact fees charged by the Town of Clayton, North Carolina as a condition of providing water and sewer service to property owners.

### Granite Land and Timber, LLC v. Town of Clayton
**North Carolina Superior Court, Johnston County**
Milberg attorneys recovered a $2.45 million class action settlement for property owners for unlawful parks and recreation fees in-lieu of land dedication charged by the Town of Clayton, North Carolina as a condition of granting development approval to residential subdivision developers.

### Mayfair Partners, LLC et al. v. City of Asheville
**North Carolina Superior Court, Buncombe County**
Milberg attorneys recovered a $1.85 million class action settlement for property owners for unlawful water and sewer impact fees charged by the City of Asheville, North Carolina as a condition of providing water and sewer service to property owners.

### Eastwood Construction, LLC, et. al v. City of Monroe
**North Carolina Superior Court, Union County**
Milberg attorneys recovered a $1.75 million class action settlement for property owners for unlawful water and sewer impact fees charged by the City of Monroe, North Carolina as a condition of providing water and sewer service to property owners.

### Larry Shaheen v. City of Belmont
**North Carolina Superior Court, Gaston County**
Milberg attorneys recovered a $1.65 million class action settlement for property owners for unlawful water and sewer impact fees charged by the City of Belmont, North Carolina as a condition of providing water and sewer service to property owners.

### Brookline Homes, LLC v. City of Mount Holly
**North Carolina Superior Court, Gaston County**
Milberg attorneys recovered a $483,468 class action settlement for property owners for unlawful water and sewer impact fees charged by the City of Mount Holly, North Carolina as a condition of providing water and sewer service to property owners.

## INFORMATION TECHNOLOGY

Milberg is a leader in the fields of cyber security, data breach litigation, and biometric data collection, litigating on behalf of clients – both large and small – to change data security practices so that large corporations respect and safeguard consumers' personal data.

**EXEMPLAR CASES**

In re: Google Buzz Privacy Litigation
**U.S. District Court for the Northern District of California**
Milberg attorneys were appointed Lead Class Counsel and secured a $8.5 million cy pres settlement.

In re: Dept. of Veterans Affairs (VA) Data Theft Litigation
**U.S. District Court for the District of Columbia**
Milberg attorneys were appointed Co-Lead Counsel representing veterans whose privacy rights were compromised by the theft of an external hard drive containing personal information of approximately 26.6 million veterans and their spouses; creation of a $20 million fund for affected veterans and a cy pres award for two non-profit organizations.

In re: Target Corporation Customer Data Security Breach Litigation
**U.S. District Court for the District of Minnesota**
Milberg represented as many as 110 million Target customers whose personal information was compromised in this landmark data breach case. Milberg, together with Co-Counsel, achieved compensation of $10 million, entitling individual consumers to recover losses of up to $10,000. An appeal of the settlement has been remanded to the District Court of Minnesota and remains pending.

## APPELLATE

Consisting of former appellate judges, experienced appellate advocates, and former law clerks who understand how best to present compelling arguments to judges on appeal and secure justice for our clients beyond the trial courts, Milberg's Appellate Practice Group boasts an impressive record of success on appeal in both state and federal courts.

### EXEMPLAR CASES

#### Home Depot, U.S.A., Inc. v. Jackson
United States Supreme Court

Milberg attorneys represented a consumer who was originally sued in a state court debt collection action. In response, Milberg attorneys filed third-party class action claims against Home Depot for deceptive trade practices regarding its store credit cards marketed to customers. Home Depot sought to remove the class action counterclaims, which were filed in the existing state court action, to federal court. Lengthy appeals followed, in which Milberg attorneys worked cooperatively with attorneys at Public Justice to represent the original consumer and class of consumers. Ultimately, the Supreme Court agreed with the consumers' position and held that a third-party counterclaim defendant may not remove state court claims either under the removal statute or under the Class Action Fairness Act. This decision represents a significant victory for consumer plaintiffs.

#### Webb v. Injured Workers Pharmacy, LLC
First Circuit Court of Appeals

Milberg attorneys scored a significant victory for plaintiffs in data breach and other federal tort cases. The decision animated the Supreme Court's decision in TransUnion v. Ramirez, by applying its standing analysis in a common sense and logically consistent manner to the real-world fact patterns posed by data breach cases. The decision demonstrates that federal court is still a viable forum for data breach cases based upon the material risk of future misuse, as well as actual misuse of data.

#### Kingston v. Int'l Bus. Machines Corp.
Ninth Circuit Court of Appeals

Milberg attorneys represented an IBM software sales manager who was fired for reporting racial discrimination and the unlawful capping of sales commissions. A jury awarded the plaintiff almost $15 million. The Ninth Circuit affirmed the jury's finding of liability and most of the damages award, over a dissent.

#### Fessler v. Int'l Bus. Machines Corp.
Fourth Circuit Court of Appeals

Milberg attorneys represented an IBM software salesman whose sales commissions IBM had wrongly capped. The district court dismissed the salesman's claims. The Fourth Circuit reversed the dismissal, distinguishing a long line of older cases in which IBM had prevailed on the grounds that the new case was factually distinct and presented novel legal theories. The case was later resolved.

### Lytle v. Nutramax Labs., Inc.
**Ninth Circuit Court of Appeals**
Milberg attorneys represented a class of consumers who purchased pet joint health supplements, which they claimed were deceptively marketed and labeled. The trial court granted class certification, and the defendant sought to appeal to the Ninth Circuit, which agreed to hear the appeal. Milberg attorneys argued that class certification was proper, and that the plaintiffs' proposed damages model—a conjoint analysis that surveyed consumers to determine the value of the product's deceptive statements—was valid for calculating classwide damages. The Ninth Circuit heard the parties' arguments in 2023, but has not yet ruled.

### Adkisson v. Jacobs Engineering Grp., Inc.
**Sixth Circuit Court of Appeals**
Milberg attorneys represented a group of hundreds of workers and their families who were injured when cleaning up a large coal ash spill in Kingston, Tennessee. The workers alleged, among other things, that the defendant had denied them essential personal protection equipment. Following years of litigation and a trial on certain issues, the defendant raised a new defense based on a recent Supreme Court case, Thacker v. Tennessee Valley Authority. The defendant argued that it should be immune because it was acting as an agent of the federal government. The Sixth Circuit rejected this defense, finding that based upon the facts, the Tennessee Valley Authority—and, by extension, the defendant—were not immune, paving the way for future litigants to bring claims against the TVA and its agents. Following this ruling, the parties reached a settlement.

### Chisum v. Campagna
**North Carolina Supreme Court**
Milberg attorneys represented a contractor who was wrongfully kicked out of several valuable real estate companies by his partners. The jury awarded the plaintiff millions of dollars, but the trial court granted judgment to the defendants on some of the claims. The North Carolina Supreme Court affirmed the jury's verdict while reversing the trial court's grant of judgment to the defendants. Following the reversal, the parties reached settlement, which was more lucrative for plaintiff than the original jury verdict.

### Plantation Bldg. of Wilmington, Inc. v. Town of Leland
**North Carolina Supreme Court**
Milberg attorneys represented a class of contractors who sued a local government for charging illegal fees. The trial court certified the class, but the government appealed, raising a dangerous new legal theory that would have prevented class certification. The North Carolina Supreme Court rejected that new theory, after which the case settled for even more than the class had demanded before the appeal.

### Adkisson v. Jacobs Engineering Grp., Inc.
**Tennessee Supreme Court**
Milberg attorneys represented a group of hundreds of workers and their families who were injured when cleaning up a large coal ash spill in Kingston, Tennessee. The workers alleged, among other things, that the defendant had denied them essential personal protection equipment. Following years of litigation and a trial on certain issues, the defendant argued that the plaintiffs' claims must be dismissed under the Tennessee Silica Claims Protection Act, and the trial court certified the question to the Tennessee Supreme Court. Milberg attorneys briefed the issues and argued on the workers' behalf that the TSCPA did not cover or require dismissal of their claims. Before the Tennessee Supreme Court could rule, the parties settled their claims.

# LOCATIONS

### PUERTO RICO
1311 Avenida Juan Ponce de León
San Juan, Puerto Rico 00907

### CALIFORNIA
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212

402 West Broadway, Suite 1760
San Diego, California 92101

### FLORIDA
2701 South Le Jeune Road
Coral Gables, Florida 33134

### ILLINOIS
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606

### KENTUCKY
19 North Main Street
Madisonville, Kentucky 42431

### LOUISIANA
5301 Canal Boulevard
New Orleans, Louisiana 70124

### MICHIGAN
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301

### NEW JERSEY
1 Bridge Plaza North, Suite 675
Fort Lee, New Jersey 07024

### NEW YORK
100 Garden City Plaza, Suite 500
Garden City, New York 11530

405 E 50th Street
New York, New York 10022

### NORTH CAROLINA
900 West Morgan Street
Raleigh, North Carolina 27603

### SOUTH CAROLINA
825 Lowcountry Blvd, Suite 101
Mount Pleasant, South Carolina 29464

### TENNESSEE
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

518 Monroe Street
Nashville, Tennessee 37208

### WASHINGTON
1420 Fifth Ave, Suite 2200
Seattle, Washington 98101

17410 133rd Avenue, Suite 301
Woodinville, Washington 98072

### WASHINGTON, D.C.
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052

### NETHERLANDS

### UNITED KINGDOM



# <u>EXHIBIT 2-1</u>





**Arnold Law Firm
Biography**

**Sacramento Office**
865 Howe Avenue
Sacramento, CA 95825
916-777-7777
916.239.4778 (d)
415.595.3302 (c)

**Los Angeles Office**
12100 Wilshire Blvd., Ste 800
Los Angeles, CA 90025
Phone: 747.777.7748

justice4you.com
databreachattorneys.com

Founded in 1975 by Clayeo C. Arnold, the Arnold Law Firm is a litigation-oriented practice with locations in Sacramento and Los Angeles, California. In keeping with its founding principles, our firm consciously works for the interests of individual people and small businesses — not for large corporations or insurance companies.

The Arnold Law Firm prosecutes class action, mass tort, *qui tam*, product defect, employment, and personal injury cases. We pride ourselves on being a practice of trial lawyers, typically trying a minimum of ten cases per year to verdict. In addition to our practice throughout the state of California in both state and federal courts, we also pursue class action, *qui tam* and multi-district litigation claims on a nationwide basis.

Our team of twelve attorneys collectively encompass a broad and diverse professional background, including plaintiff contingency work, public entity representation, criminal defense, and civil defense. We have current and past board members of Capital City Trial Lawyers Association, as well as members of numerous prestigious professional organizations, including the American Board of Trial Advocates, American Association for Justice, Association of Trial Lawyers of America, Sacramento County Bar Association, and Consumer Attorneys of California.

Our firm's operating structure is comprised of multiple teams directed towards specific practice areas. These teams regularly and intentionally collaborate and exchange information between their practice areas to improve the quality of representation for all of our clients.



**Arnold Law Firm
Biography**

(continued)

For over four decades the Arnold Law Firm has developed a respected and extensive network of co-counsel and experienced contract counsel to rapidly expand our capabilities as necessary on an *ad hoc* basis (e.g., document review). We employ a robust staff of highly qualified and experienced legal staff including assistants and paralegals to ensure that attorney time is spent in the most efficient manner possible.

The Arnold Law Firm employs technology to increase productivity thereby resulting in more efficient and effective legal representation and driving excellent results on behalf of its clients. Specifically, the firm increases its efficiency by using numerous forms of legal and practice management software including template software, client management software, and secure internet-based client management for mass tort or multi-plaintiff litigation. We also invest in appropriate billing and tracking software for contemporaneous hourly record keeping.

The Arnold Law Firm places substantial value on representing clients in a manner that is both effective and courteous. Integrity with clients, the courts, and adverse counsel are all considered to be as indispensable as successful results.

Our highly accomplished counsel has a long history of successfully handling class actions across a range of industries, including data breach cases.



## M. Anderson Berry Biography



The Arnold Law Firm has a proven track record of success and the ability to work efficiently and cooperatively with others.  In addition, our firm has the availability and resources necessary to litigate complex class actions.

### M. Anderson Berry

M. Anderson Berry heads the data breach complex litigation and *qui tam* practices for the Arnold Law Firm. He brings substantial experience in complex litigation matters with a history of litigating in an efficient and practical manner, including as Lead Class Counsel, Co-Lead Class Counsel, and as a member of numerous Plaintiffs' Executive Committees.

Mr. Berry has an extensive background in privacy and consumer/government fraud litigation, actively participating in a currently sealed False Claims Act case involving widespread cybersecurity fraud upon the United States, and the class action litigations filed in federal and state courts across the nation, set out below.

Before joining the Arnold Law Firm in 2017, Mr. Berry worked as an Assistant United States Attorney for the Eastern District of California. As part of the Affirmative Civil Enforcement unit, Mr. Berry handled a wide variety of complex cases and recovered millions of dollars for the United States.

Before working for the Department of Justice, Mr. Berry practiced at one of the world's largest law firms, Jones Day, where he represented clients in international arbitration and complex commercial litigation, including defending class action allegations.

Mr. Berry was first selected as the Northern California Super Lawyers Rising Star in 2015 in the field of complex civil litigation.



**M. Anderson Berry Biography**

(continued)

Mr. Berry attended the University of California, Berkeley, where he majored in English and graduated with highest honors. Mr. Berry was inducted into the Phi Beta Kappa Honor Society and served as President of the English Undergraduate Associate.

After working as a private investigator for both criminal and civil investigations in the San Francisco Bay Area, Anderson graduated from U.C. Berkeley School of Law, where he was a Senior Editor for both the *Berkeley Journal of Criminal Law* and *Berkeley Journal of International Law*.

He was admitted to the California Bar in 2009 and is admitted to practice in the Northern, Eastern, Southern and Central Districts of California. Mr. Berry is also admitted to practice in the Northern District of Illinois, the Eastern District of Michigan, the Northern and Southern Districts of Indiana, the Districts of Colorado and Nebraska, and the Fourth and Ninth Circuit Courts of Appeals.

Mr. Berry was raised in Moraga, California and now lives in Fair Oaks, California, with his wife and three young sons.

<u>**Select Data Breach Cases**</u>
*John Doe, et al. v. Fred Hutchinson Cancer Center, et al.,* 2:23-cv-01893-JHC (W.D. Wa.) (**Co-Lead Counsel**);
*In Re: Entertainment Partners Data Breach Litigation,* 2:23-cv-06546-CAS (C.D. Ca.) (**Co-Lead Counsel**)
*In Re: Snap Finance Data Breach*, 2:22-cv-00761-TS-JCB (D.UT.) (**Co-Lead Counsel**) (settled)
*Ware v. San Gorgonio Memorial Hosp.,* CVRI2301216 (Sup. Crt of CA, Riverside) (**Co-Lead Counsel**)
*In Re:  Overby-Seawell Co. Customer Data Security Breach Lit.,* 1:23-md-03056-SDG (N.D. Ga.) (**Co-Lead Counsel**);
*Holmes v. Elephant Insurance Company, et al*., 3:22-cv-00487-JAG (E.D. VA.) (**Co-Lead Counsel**);
*In Re: Arthur J. Gallagher Data Breach Litigation,* 1:21-cv-04056 (N.D.Ill.) (**Co-Lead Counsel**);

— page 4—



**M. Anderson Berry
Biography**

(continued)

Petimat Dudurkaewa et al. v. Midfirst Back et al.,  5:23-cv-00817-R (W.D. Ok.) (**Executive Comm**.);

*In Re: CaptureRx Data Breach Litigation*, 5:21-cv-00523 (W.D.TX.)(**Co-Lead Counsel**) (settled);

*Rossi v. Claire's Stores, 1:*20-cv-05090 (N.D. Il.) (**Co-Lead Counsel**) (settled);

*Desue v. 20/20 Eye Care Network, Inc. et al.,* 0:21-cv-61275 (S.D. Fla.) (**Executive Comm**.);

*In re: Mednax Services, Inc. Customer Data Security Breach Litigation,* 21-MD-02994 (S.D. Fl.) (**Executive Comm.**);

*Bowdle v. King's Seafood Co. LLC,*  8:21-cv-01784-CJC-JDE, (CD. Cal.) (Class Counsel) (settled);

*Hashemi et al. v. Bosley, Inc.* 2:21-cv-00946 (CD. Cal.) (Class Counsel) (settled);

*Heath et al. v. Insurance Technologies Corp et al.,* 3:21-cv-01444 (N.D. Tex.) (Class Counsel) (settled);

*Carrera Aguallo et al. v. Kemper Corporation et al.,* 1:21-cv-01883 (N.D. Ill.) (Class Counsel) (settled);

*Ahn et al. v. Herff Jones, LLC,* 1:21-cv-01381 (S.D. Ind.) (settled);

*Bitmouni v. Paysafe Limited*, 3:21-cv-00641-JCS (N.D. Cal.) (Class Counsel) (settled);

*Gaston v. FabFitFun, Inc.*, 2:20-cv-09534 (C.D. Cal.) (Class Counsel) (settled);

*In Re: Ambry Genetics Data Breach Litigation*, 8:20-cv-00791 (C.D. Cal.) (settled);

*In Re: Morgan Stanley Data Security Litigation*, 1:20-cv-05914 (S.D.N.Y.) (settled);

*Pfeiffer et al. v. RadNet, Inc.*, 2:20-cv-09553-RGK-SK (C.D. Cal.)(Class Counsel) (settled);

*Thomsen v. Morley Companies, Inc.*, 1:22-cv-10271-TLL (E.D. Mi.) (settled);

*In re Lakeview Loan Servicing Data Breach Litigation*, 1:22-cv-20955-DPG (S.D. Fl.);



**Gregory Haroutunian
Biography**



<u>**Gregory Haroutunian**</u>

Gregory Haroutunian is the Senior Associate and of the data breach complex litigation and *qui tam* practices for the Arnold Law Firm. He brings substantial experience in complex litigation matters with a history of litigating in an efficient and practical manner.

Mr. Haroutunian has an extensive background in complex litigation, privacy and consumer/government fraud litigation, actively participating in a currently sealed False Claims Act case involving widespread cybersecurity fraud upon the United States, and the class action litigations filed in federal courts across the nation, set out below.

Before joining the Arnold Law Firm in 2021, Mr. Haroutunian worked in diverse practices across the nation including litigating dozens of products liability medical device cases in state and federal courts throughout the country and employment and construction related complex class-action and surety bond litigations involving multi-million dollar settlements throughout New York and New Jersey.

Mr. Haroutunian attended Columbia College, Columbia University, where he majored in Political Science and served with the New York State Senate Minority Leader's Office.

After working as a paralegal for a small general litigation and elder law firm in New York City, Gregory attended the Georgetown University Law Center where he graduated *cum laude*. While at Georgetown Gregory held a year-long judicial internship under Chief Administrative Law Judge Ronnie A. Yoder of the United States Department of Transportation and served as a legal intern at the National Whistleblowers' Center and the firm Kohn, Kohn, & Colapinto where he had his first experiences in *qui tam* and fraud cases.

Work that Mr. Haroutunian did at Georgetown comparing and analyzing aviation regulations was subsequently published in the Law Journal of the Pacific.



**Gregory Haroutunian
Biography (cont.)**

He was admitted to the New Jersey and New York Bars in 2013 and the California Bar in 2020 and is admitted to practice in the Northern, Eastern, Southern, and Central Districts of California, the Southern and Northern Districts of New York, and the District of New Jersey. Mr. Haroutunian is also admitted to practice in the Southern and Northern Districts of Indiana and the District of Colorado.

Mr. Haroutunian has been separately appointed Class Counsel in the following matters:

*Bitmouni v. Paysafe Payment Processing Solutions*, LLC, No. 3:21-cv-00641-JCS (N.D. Cal.) (Class Counsel);

*In re: Ethos Technologies Inc. Data Breach Litig.*, No. 3:22-cv-09203-SK (N.D. Cal.) (Class Counsel);

*In re: Blackhawk Network Data Breach Litig.,* No. 3:22-cv-07084-CRB (N.D. Cal.) (Class Counsel);

*Franchi v. Barlow Respiratory Hospital*, No. 22STCV09016 (Cal. Super.) (Class Counsel);

*Parker v. Metromile, LLC,* No. 27-2022-000-49770-CU-BT-CTL (Cal. Super. San Diego) (Class Counsel).

*Gilbert et al. v. BioPlus Specialty Pharmacy Services, LLC*, Case No. 6:21-cv-02158-RBD-DCI (M.D. Fla.) (Class Counsel)

Mr. Haroutunian was raised in Montvale, New Jersey.

# EXHIBIT 2-2

# EXHIBIT 2-3



George Haines is the owner and founder of Freedom Law Firm (f/k/a as Haines & Krieger).  Haines & Krieger, LLC was started in 2005 and changed its name to Freedom Law Firm ("FLF") in 2020.  FLF is considered one of the preeminent consumer bankruptcy and litigation firms in Nevada having successfully represented over twenty-four thousand consumers in either chapter 7 or chapter 13 bankruptcies. FLF has litigated hundreds of adversaries and motions for sanction cases in bankruptcy court.   In addition, FLF has successfully litigated EFTA, FDCPA, FCRA, TCPA, NRS 598, and NRS 604A, cases as well as class action litigation. FLF has an excellent reputation in the Southern Nevada bankruptcy community and has reputation for successful prosecution of consumer actions.

Mr. Haines received his law degree from Seton Hall Law School in New Jersey in 1999 and is admitted to practice law before the courts of the State of Nevada and the United States District Court for the District of Nevada. Mr. Haines is also admitted to practice law in New Jersey and New York and has litigated consumer cases in New Jersey, New York and California (on a pro hac vice). Mr. Haines has handled numerous consumer-related issues, including taking cases through Legal Aid of Southern Nevada.

Gerardo Avalos is a senior associate with FLF. Gerardo started his undergrad with Strayer University in Washington DC, while proudly serving in the United States Marine Corps and majored in Homeland Security and Emergency Management. He left active service with an honorable discharge as a combat veteran and turned his sights on Law School after completing his undergrad. Gerardo graduated from William S. Boyd Law School

with his J.D. in 2019. During his time as a law student he was a member of multiple student organizations including the student chapter of the Animal Legal Defense Fund and the Latin/Hispanic Law Student Association. He was also an officer and student representative for the student chapter of the Federalist Society.

While in Law School, Gerardo volunteered his time at the Legal Aid Center of Southern Nevada as a Criminal Record Sealing Class instructor and at the UNLV Immigration Clinic including travel to the USCIS Asylum Office in Anaheim California to assist low income immigrants to Nevada with their asylum applications and interviews. Currently, Gerardo is a volunteer attorney for Legal Aid Center's Children's Attorney Project where he represents children in abuse and neglect cases. He is also a member of the National Association of Consumer Advocates and an Advocate Attorneys Consumer Protection Fellow.

As a senior associate at FLF, Gerardo Focuses on bankruptcy and consumer protection litigation as well as consumer class action and mass arbitration cases.  He manages a caseload involving consumer statutes such as the Fair Debt Collection Practices Act, the Telephone Consumer Protection Act, the Fair Credit Reporting Act, the Real Estate Settlement Procedures Act, the Truth in Lending Act, the Equal Credit Opportunity Act, the Electronic Funds Transfer Act, and relevant state consumer protection statutes.

### **Case Profiles**

FLF has served as counsel in the following actions in which individual sought or are seeking to certify class actions claims:

    a.  Sanford Buckles v. Walter Investment Management, 2:15-cv-01581-GMN-CWH (class action complaint regarding violations of Nevada's "wiretapping" statute);

    b.  Patricia Nave v, Select Portfolio Servicing, Inc., 2:15-cv-01317-JCM-VCF (TCPA Class action);

    c.  Ronald Grider v. Clark County Collection Service, LLC, et. Al., Case No.2:13-cv-1731-KJD-CWH (class action settlement regarding TCPA);

d.  Juan Rodriguez v. AT&T Wireless, 2:14-cv-01537-GMN-GWF (Fair Credit Reporting Act Class action regarding "impermissible" credit pulls);

e.  Greg Urgin v. HP Located and Service One, U.S. District Court, Nevada, 2:13-cv-01506-JCM-VCF (TCPA claims, case is subject to confidential settlement agreement);

f.  Tim Toth v. Steller Recovery, Inc., U.S. District Court, Nevada, 2:13-cv-01276-LDG-GWF (TCPA claims; case is subjection to a confidential settlement agreement)

g.  Christina Fennell v. Navient, 2:22-cv-01013-CDS-NJK (pending 11 U.S.C. 524 and FCRA class action);

h.  Amanda Davis v. KeyBank Trust et al., 2:22001645-JAD-EJY (pending 11 U.S.C. 524 and FCRA class action); and

i.  Marina Cardenas, et al. v. Super Care, Inc. Case No. 22STCV16267 (Superior Court of the State of California for the County of Los Angeles – data breach class pending final settlement).

# EXHIBIT 2-4

**MORGAN & MORGAN**®

Morgan & Morgan is a leading civil trial law firm representing consumers and commercial clients nationwide. With over 900 lawyers, and more than 3,000 non-lawyer employees, Morgan & Morgan is the largest plaintiffs' firm in the nation.  The class action lawyers at Morgan & Morgan have been involved in some of the largest data breach cases to date including: *In re: Capital One Consumer Data Security Breach Litigation*, No. 1:19-MD-2915-AJT (E.D. Va.); *In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 5:16-MD-02752-LHK (N.D. Cal.); *In re The Home Depot, Inc. Consumer Data Sec. Data Breach Litig.*, No. 1:14-md-02583-TWT (N.D. Ga.); and, *In Re: Equifax, Inc. Customer Data Security Breach Litigation*, 1:17-md-2800-TWT (N.D. Ga.).

**Jean Sutton Martin** is one of the lead attorneys in the Class Action Department of Morgan & Morgan, devoting her practice to data privacy, consumer protection, and defective products class actions. In addition to consumer class actions, Ms. Martin has practiced in the areas of mass tort and catastrophic personal injury, starting mass torts practice groups at two plaintiffs' firms. Prior to joining Morgan and Morgan, Ms. Martin ran her own law firm in North Carolina concentrating on consumer class actions and mass tort litigation.

Ms. Martin received her Juris Doctor degree from Wake Forest University School of Law, where she served as Editor-in-Chief of the *Wake Forest Law Review*. Ms. Martin graduated from Wake Forest University with a Bachelor of Science in Mathematical Economics and earned a Master of International Business from the University of South Carolina. She also has served as an adjunct professor at her alma mater, Wake Forest University School of Law. She obtained eDiscovery certification from the eDiscovery Training Academy at Georgetown Law Center in 2017.

Ms. Martin has been honored with the prestigious "AV" rating by Martindale-Hubbell. In 2016, Ms. Martin was selected by her peers as the foremost Litigation attorney in the State of North Carolina for *Business North Carolina Magazine's Legal Elite*, gaining membership in the *Legal Elite* Hall of Fame. In 2022, she was recognized by Law360 as an MVP in the area of cybersecurity and data privacy. She was recently named as one of National Law Journal's Class Action/ Mass Tort Litigation Trailblazers of 2023.

Ms. Martin concentrates her practice on complex litigation, including consumer protection, data privacy, and defective products class action. She presently serves by appointment as interim co-lead counsel in, *Combs, et al. v. Warner Music Group*, Case No. 1:20-cv-07473-

PGG (S.D.N.Y.) and *Johnson, et al. v. Yuma Regional Medical Center*, 2:22-cv-01061-SMB (D. Ariz.). She also serves as a member of the Plaintiffs' Steering Committee for the cases proceeding against LabCorp, Inc. in *In re: American Medical Collection Agency Data Breach Litigation*, 19-md-2904 (D. N.J.) and a steering committee member *In re: Allergan Biocell Textured Breast Implant Products Liability Litigation,* No. 19-md-2921 (D. N.J).

In a case in which she serves as interim co-lead counsel, Ms. Martin argued a motion for class certification which resulted in the first order in the country granting Rule 23(b)(3) certification in a consumer payment card data breach.  *In re Brinker Data Incident Litig.,* No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021).

She has served in leadership positions in many consumer class actions and consolidated proceedings in federal courts around the country, including *inter alia*: *In re Morgan Stanley Data Security Litigation*, 1:20-cv-05914 (S.D.N.Y.)($68 million settlement for 15 million class members); *Aguallo, et al. v. Kemper Corp., et al.,* Case No.: 1:21-cv-01883 (N.D. Ill.) (data breach settlement valued at over $17.5 million) (co-lead counsel); *Gordon, et al. v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415 (D. Colo.) (data breach) (co-lead counsel); *In Re: Outer Banks Power Outage Litigation*, No. 4:17-cv-141 (E.D.N.C.) (extended island power outage due to defective construction practices) (class counsel); and, *McCoy v. North State Aviation, LLC, et al.*, No. 17-cv-346 (M.D.N.C.) (WARN Act violations) (class counsel).

Ms. Martin has been a presenter on a variety of topics related to class actions including: *Fantasy Gaming Webinar: FanDuel and DraftKings Litigation*, AAJ (December 2015); *Thinking Outside the Black Box: Drug Cases in the Class Context*, Mass Torts Made Perfect (October 2019); *Mass Torts and MDLs*, Western Alliance Class Action Forum (March 2020); *Consumer Class Actions*, Western Alliance Class Action Forum (March 2022); *How to Maximize Efficiency in Document Production and Review*, Mass Torts Made Perfect (April 2022); *Class Action Takeover: The Rise of Class Actions within MDLs*, HarrisMartin (July 2023).

Ms. Martin is a member of the North Carolina bar. She is also admitted to practice before the United States Supreme Court, the United States Court of Federal Claims, the United States Court of Appeals for the Fourth Circuit, the Western, Middle, and Eastern Districts of North Carolina, and the United States District Court of Colorado.

Beyond her legal work, Ms. Martin organized the first Class of Our Own women's summit which was held in Nashville, Tennessee in May 2023. The invitation-only summit for female class action attorneys featured two days of legal panels while also promoting female empowerment. More than 100 women from multiple disciplines from across the country attended the event. Plans are underway for 2024 with the goal to make this summit an annual event.

**Ms. Martin has the assistance of the following talented associates:**

**Kenya Reddy.** Ms. Reddy represents consumers in class action litigation. She graduated from Duke University in 1997 with a degree in political science. In 2000, she received her law degree from the University of Virginia School of Law.  Prior to joining Morgan & Morgan, Ms. Reddy was a shareholder at Carlton Fields, P.A., where her primary areas of practice were antitrust, complex civil litigation, class action defense, and business litigation. She also has experience in including labor and employment, products litigation, ERISA and employee benefits law, insurance, healthcare, and securities litigation.

Ms. Reddy has served as a law clerk for the Honorable Charles R. Wilson, United States Circuit Court Judge, Court of Appeals for the Eleventh Circuit, the Honorable Anne C. Conway, former Chief Judge of the United States District Court for the Middle District of Florida, the Honorable Mary S. Scriven, United States District Judge, Middle District of Florida, and the Honorable Karla R. Spaulding, United States Magistrate Judge, Middle District of Florida.

**Ryan J. McGee.** Mr. McGee was born and raised in Tampa, Florida. He studied business economics and history at the University of Florida, where he was a teaching assistant for technology classes in the business school, and received his law degree from Stetson University College of Law, where he was an editor on the *Stetson Law Review*, a research assistant for antitrust and consumer protection laws, and a teaching assistant for Stetson's trial advocacy program.

Ryan began his legal career as a state-appointed prosecutor, where he tried over 50 jury trials to verdict, mostly felonies, as well as a special prosecutor appointed to investigate police officers' deadly use-of-force and corruption within various law enforcement agencies. Ryan also served as a law clerk for two years for the Honorable Elizabeth A. Kovachevich, the former Chief United States District Judge, Middle District of Florida. Before joining Morgan & Morgan, Ryan's practice involved complex business disputes, antitrust, trade secret, data security, and class action investigations and defense-side litigation in state and federal courts across the country.

Since shifting his focus entirely to consumer class action representation, Ryan has been selected as a Florida Super Lawyer Rising Star in 2018 and 2019 in the field of Class Actions and this summer was named a Rising Star in Cybersecurity/Privacy by Law360.

Ryan was admitted to the Florida Bar in 2009 and is also admitted to practice in the Northern, Middle, and Southern Districts of Florida.

**Patrick Barthle.**  Mr. Barthle was born and raised in Dade City, Florida. He attended the

University of Florida where he was admitted to the Honors Program and graduated, *cum laude*, with a double major in History and Criminology in 2009. While at UF, Patrick was inducted into the Phi Beta Kappa Honor Society and served as President of the Catholic Student Center. Patrick attended Washington and Lee University School of Law, graduating *summa cum laude* in 2012; where he was a Lead Articles Editor for the Wash. & Lee Law Review, a member of the Order of the Coif and the Phi Delta Phi Legal Honor Society, and President of the W&L Law Families organization.

Before joining Morgan & Morgan in 2015, Mr. Barthle worked at one of the country's largest law firms, Greenberg Traurig, LLP, and then served as a judicial law clerk for two years to the Honorable Mary S. Scriven, United States District Judge, Middle District of Florida.

Mr. Barthle was selected as a Florida Super Lawyer Rising Star in 2019 in the field of Class Actions.  He is also active in speaking on privacy and class action topics, having spoken in June 2018, at the NetDiligence Cyber Risk Summit on the topic of Unauthorized Use of Personal Data; in November 2018 at the American Association for Justice's Advanced 30(b)(6) Seminar, on the topic of 30(b)(6) Depositions in in Data Breach Cases; and in January 2019 at HarrisMartin's Marriott Data Breach Litigation Conference on that topics of damage models and settlements in data breach cases; and Rule 23(c)(4) classes at the Mass Torts Made Perfect conference.

Mr. Barthle was admitted to the Florida Bar in 2012 and is also admitted to practice in the Middle District of Florida, the Southern District of Florida, and the District of Colorado.

**Francesca Kester Burne**. Ms. Burne was born and raised in Scranton, Pennsylvania. She attended Marywood University, where she graduated with a major in English Literature, and The Pennsylvania State University's Dickinson School of Law, where she received her Juris Doctor degree in 2017. While at Dickinson, Ms. Burne competed in the American Bar Association's National Appellate Advocacy Competition, where she was awarded the highest honor for her legal brief writing, and the Texas Young Lawyer's National Trial Competition, where she finished as a regional finalist. Ms. Burne also served as Executive Chair of the Dickinson Law Moot Court Board, Founder of the Dickinson Law partnership with Big Brothers Big Sisters, and Student Director of the Bethesda Mission Men's Shelter legal clinic. At graduation, she was honored with the D. Arthur Magaziner Human Services Award for outstanding academic achievement and service to others, the Joseph T. McDonald Memorial Scholarship for excellence in trial advocacy, and the peer-selected Lee Popp Award for her devotion to the legal field.

Ms. Burne completed an externship with United States Magistrate Judge Martin C. Carlson while in law school. After graduation, she served for two years as a law clerk to the Honorable James M. Munley in the United States District Court for the Middle District of

Pennsylvania. Ms. Burne now focuses her class action practice on data privacy and products liability.

Ms. Burne is admitted to practice law in both Pennsylvania and Florida as well as various federal courts throughout the country.

**Ra O. Amen.** Mr. Amen graduated from Stanford University with a B.A. in Economics. After graduating, he worked as a Peace Corps volunteer in Morocco teaching English as a second language and business skills to local artisans. Before entering law school, Mr. Amen worked for several years in education and in business development for a mobile technology startup. In 2017, he obtained his Juris Doctor degree with Honors from Emory University School of Law. While at Emory Law, he was a Managing Editor of the Bankruptcy Developments Journal, interned at a consumer fraud law practice, and worked in-house with one of the globe's leading metals companies assisting in a diverse array of legal issues ranging from corporate restructuring to international tax and contract disputes. Before joining Morgan & Morgan in 2020, Mr. Amen worked at one of the nation's largest defense law firms in the nation where he specialized in representing clients in complex commercial, administrative, and ecclesiastical disputes.

Mr. Amen speaks both English and Spanish, and is an avid guitar player. Mr. Amen was admitted to the Georgia Bar in 2017.

**Additional Support.** The class action attorneys at Morgan & Morgan can call upon a team of more than 80 attorneys for support, including 8 focused on legal research, and 75 dedicated to document review, deposition support, and trial preparation and support, 5 of which have dedicated priority for class action cases.

# **<u>EXHIBIT 2-5</u>**



**www.wiselaw.pro**
(703) 934-6377

# <u>Class Action Firm Resume</u>

| *VIRGINIA OFFICE* | *NEVADA OFFICE* |
|:---:|:---:|
| 10640 Page Avenue, Suite 320 | 421 Court Street |
| Fairfax, VA 22030 | Reno, Nevada 89501 |

     Wise Law Firm, PLC, is a leading law firm in the Washington D. C. metropolitan area and has its main office located in Fairfax, Virginia.  It also has a branch office in Reno, Nevada.  The Firm handles complex civil cases in state and federal courts throughout the nation. Wise Law Firm has a reputation for excellence and has an AV Martindale-Hubble rating for legal services, which is the highest rating granted to attorneys under the Martindale-Hubbell system.

     David Hilton Wise, as founder member of the Wise Law Firm, PLC, has been engaged in complex construction defect, government contract, consumer protection, class actions, toxic mold, and construction contract litigation for over 35 years.  The Wise Law Firm is currently actively litigating multiple class action cases in the Federal Court system across the county, some of which have been transferred to MDL cases. David Wise is also a certified Professional Civil Engineer in the state of California, which allows him an edge in evaluating and handling construction, science, and engineering related matters.

     A sampling of some of the class actions cases in which Wise Law Firm, PLC has helped to successfully resolve or which are currently being actively litigated in the Federal Court system across the county include the following

       a.   *Alverez v. Estes Express Lines*, E.D. Virginia, Richmond Division, Case No. 3:24-cv-01.

       b.   *Darrin v. Huntington Ingalls Industries*, E.D. Virginia, Newport News Division, Case No. 4:23-cv-53.

       c.   *Soles v. Huntington Ingalls Industries*, E.D. Virginia, Newport News Division, Case No. 4:23-cv-59.



Wise Law Firm PLC
Attorney Profile and Firm Resume
Page 2

    d.   *Beadle v. Huntington Ingalls Industries*, E.D. Virginia, Newport News Division, Case No. 4:23-cv-65.

    e.   *Huamani v. R&N Corporation of Virginia d/b/a Credit Control Corporation,* E.D. Virginia, Newport News Division, Case No. 4:23-cv-67.

    f.   *Houghton v. Rancho Mesquite Casino, Inc., dba Eureka Casino Hotel*, D. Nevada, Case No. 2:23-cv-00276.

    g.   *Oldham v. Rancho Mesquite Casino, Inc., dba Eureka Casino Hotel*, D. Nevada, Case No. 2:23-cv-00304.

    h.   *Andrew v. Rancho Mesquite Casino, Inc., dba Eureka Casino Hotel*, D. Nevada, Case No. 2:23-cv-00333.

    i.   *Nguyen v. Crystal Bay Casino, LLC*, D. Nevada, Case No. 3:23-cv-00092.

    j.   *Fisher v. Fort Belvoir Residential Communities LLC*, E.D. Virginia, Alexandria Division, Case No. 1:22-cv-RDA-JFA.

    k.   *In Re: AME Church Employee Retirement Fund Litigation*, MDL No. 3035, W.D. Tennessee (*Wade v. Newport Group, Inc*., E.D. Virginia, 3:22-cv-00179).

    l.   *MSP Recovery Claims, Series LLC v. Lundbeck, LLC*, E.D. Virginia, Richmond Division, Case No. 3:22-cv-422.

    m.   *In Re: Family Dollar Stores, Inc., Pest Infestation Litigation*, MDL No. 3032, W.D. Tennessee (*Smith v. Family Dollar Services, LLC*, E.D. Virginia, Case No. 1:22-cv-00208).

    n.   *Sanguinetti v. Nevada Restaurant Services, Inc*., D. Nevada, Case No. 2:21-cv-01768-RFB-DJA.

    o.   *Burn v Lendlease (US) Public Partnership LLC*, E.D. North Carolina 7:20-cv-00174D.

    p.   *In Re: Blackbaud Inc. Customer Data Security Breach Litigation*, MDL No. 2972, D. South Carolina, Case 3:20-mn-02972-JFA (*Atwood v. Blackbaud, Inc*., E.D. Virginia, Case No. 3:20-cv-04516-JFA)

    q.   *Glasscock v. Serco, Inc. ,* E.D. Virginia, Alexandria Division, Case No. 1:20-cv-00092.

    r.   *Bell v. Westrock CP, LLC,* E.D. Virginia, Richmond Division, Case No. 3:17-cv-829.



Wise Law Firm PLC
Attorney Profile and Firm Resume
Page 3

s.  *IN RE: Lumber Liquidators Chinese-Manufactured Laminate Flooring Durability Marketing and Sales Practices Litigation*, E.D. Virginia, Alexandria Division, Case No. 1:16-md-2743.

t.  *Walters v. Pella Corp.*, D. South Carolina, Case No. 2:14-cv-00544, originally filed in D. Nevada, Case No 3:13-CV-0055344.



Wise Law Firm PLC
Attorney Profile and Firm Resume
Page 4

# Attorney Profiles

## David Hilton Wise

Partner
dwise@wiselaw.pro
(703) 934-6377

David Hilton Wise is the firm's founder.  As a licensed professional engineer and trial lawyer, Mr. Wise concentrates his practice in the areas of construction law, construction defects, and toxic tort litigation.  As a construction lawyer, he has successfully handled complex, construction disputes throughout the United States in both state and federal courts, on both private and public construction projects as well as residential construction projects.  He had successfully tried cases involving construction defects, toxic mold, sick building claims, defective design, impact and delay claims, performance and payment bond claims, and other construction contract disputes for the past 34 years. Utilizing his background as a professional civil engineer, Mr. Wise is able to quickly evaluate and address the many technical and complex issues that arise in construction disputes.  Mr. Wise has also been involved in multiple class actions and MDL cases over the past two decades involving defective construction products and other consumer related claims.  He has represented homeowners, condominium associations, general contractors, construction managers, subcontractors, suppliers, sureties, and indemnitors in a wide variety of construction-related disputes.

PRACTICE AREAS:  Construction and Design Law, Construction Claims and Litigation, Construction Defects, Defective Design, Toxic Mold, Sick Buildings, Class Actions, and Trial Practice.

EDUCATION:
- University of San Diego School of Law, Juris Doctor, 1989
- University of Nevada, Reno, B.S. in Civil Engineering, 1985 (member - Tau Beta Pi)

ADMITTED TO BARS:
- Virginia (1989), California (1990), District of Columbia (1991), Maryland (2003), and Nevada (2008)
- U.S. Court of Appeals for the Fourth Circuit (1990), Federal Circuit (1990), and District of Columbia Circuit (2000)
- U.S. District Court for the Eastern District of Virginia (1990), Western District of Virginia (2002), District of Columbia (1991), Central District of California (1998), and District of Maryland (2005)
- U.S. Bankruptcy Court for the Eastern District of Virginia (1990)
- U.S. Court of Federal Claims (1994)

PROFESSIONAL LICENSE:  Professional Civil Engineer, California (1989)

PROFESSIONAL ASSOCIATIONS AND MEMBERSHIPS:
- District of Columbia Bar



Wise Law Firm PLC
Attorney Profile and Firm Resume
Page 5

- California State Bar
- Maryland State Bar
- Virginia State Bar (member, Construction Law Section)
- Nevada State Bar (member, Construction Law Section)
- American Bar Association (member, Forum Committee on Construction Industry, and Litigation Section)
- Virginia Trial Lawyers Association
- American Association of Justice

**AUTHOR:**
- "Construction Defects, Sick Building and Toxic Mold Claims," Virginia Construction Law Handbook, Chapter 25, Virginia CLE (2019)
- "Economic Loss Rule," Construction Briefings, 2nd Series No. 95-7, Federal Publications

**SEMINARS AND RELATED PUBLICATIONS:**
- Speaker, EIFS Litigation, (VSB Construction Law and Public Contracts Conference, Charlottesville. Va., Nov 3, 2001)
- Speaker, Advances in Environment Mold Issues in Virginia (Arlington, Va.,  June 25, 2003)
- Speaker, Toxic Mold & Synthetic Stucco (EIFS) (VTLA Product Liability Conference, Williamsburg, Va., Oct. 16, 2003)
- Speaker, Advances in Environment Mold Issues in Virginia (Fairfax County, Va.,  Feb. 19, 2004)
- Speaker, Best Practices for Construction Defect Litigation, (VSB Construction Law and Public Contracts Conference, Charlottesville, Va., Nov 7, 2014)
- Speaker, State of the Art in Mold, Wet Buildings & CIRS, "I want you to be a Dynamic Expert" and "Cross Examination of a Hostile Expert" (Phoenix, AZ, November 14, 2015)

**REPORTED CASES:**
- <u>Solomon Forex, Inc. v. Tauber</u>, 795 F.Supp. 768 (E.D.Va. 1992).
- <u>United States v. Wills</u>, 99 F.3d 1132 (4th Cir. 1996)
- <u>Unistrut Space Frame System, Inc. v. Atlantic Plate & Window Glass Co., Inc.</u>  16 F.Supp.2d (D.D.C. 1996)
- <u>Beta Construction Co. v United States</u>, 39 Fed. Cl. 722 (1997), *rev'd*, 185 F.3d 884 (Fed. Cir. 1999)
- <u>Moskowitz v. Renaissance at Windsong Creek, Inc.,</u>  52 Va. Cir. 459 (Fairfax County 2000)
- <u>Berger v. Pulte Home Corporation</u>, 55 Va. Cir.  36 (Fairfax County 2001)
- <u>Jazayerli v. Renaissance Housing Corp</u>. 55 Va. Cir. 49 (Fairfax County 2001)
- <u>Speier v. Renaissance at Victoria Farms, LLC</u>, 58 Va. Cir. 90 (Fairfax County 2001)
- <u>Glass v. Trafalgar House Property, Inc.,</u> 58 Va. Cir. 437 (Loudoun County 2002)
- <u>Hansen v. Stanley Martin Companies, Inc.,</u> 266 Va. 345, 585 S.E.2d 567 (2003)
- <u>Anderson v. USAA Casualty Insurance Co.,</u> 218 F.R.D. 307 (D.D.C. 2003)
- <u>Anderson v. USAA Casualty Insurance Co.,</u> 221 F.R.D. 250 (D.D.C. 2004)



Wise Law Firm PLC
Attorney Profile and Firm Resume
Page 6

- <u>LBL Skysystems (USA), Inc. v. APG America, Inc.,</u> 319 F.Supp.2d 515 (E.D.Pa. 2004)
- <u>Davis v. Holsten</u>, 270 Va. 389, 621 S.E.2d 101 (2005)
- <u>French v. Assurance Company of America</u>, 448 F.3d 693 (4th Cir. 2006)
- <u>LBL Skysystems (USA), Inc. v. APG America, Inc.</u>, 514 F.Supp.2d 704 (E.D.Pa. 2007)
- <u>Costello Construction of Maryland, Inc. v. J. D. Long Masonry, Inc.</u>, 236 Fed. Appx. 877 (4th Cir. 2007)
- <u>2200 M Street, LLC v. Mackell,</u>  940 A.2d 143 (D.C. 2007)
- <u>Meng v. The Drees Company,</u> 77 Va. Cir. 442 (Loudoun County 2009)
- <u>Zellars v. NexTech Northeast, LLC,</u> 895 F.Supp.2d 734 (E.D.Va. 2012)
- <u>ADC Builders v. Seabright Condominium Association</u>, 213 Md. App. 717 (unreported opinion*), cert. denied*, 436 Md. 327 (2013)
- <u>Spencer v. Islamic Republic of Iran</u>, 71 F.Supp.3d 23 (D.D.C. 2014)
- <u>Federico v. Lincoln Military Housing, LLC</u>, 127 Fed.Supp.3d 623 (E.D.Va. 2015)
- <u>Day v. Robbins</u>, 179 Fed.Supp.3d 538 (D.Md. 2016)
- <u>Tingler v. Graystone Homes, Inc.</u>, 298 Va. 63, 834 S.E.2d 244 (2019)

**LEGAL RATING:**  A-V Martindale-Hubbell rating

**ADDITIONAL HONORS:**
Selected as one of Washington's Top Lawyers by the *Washingtonian* Magazine (Dec. 2004)

**ADDITIONAL INFORMATION:** Eagle Scout



Wise Law Firm PLC
Attorney Profile and Firm Resume
Page 7

## Joseph M. Langone

Partner
jlangone@wiselaw.pro
(703) 934-6377

Joseph Langone is a partner at the firm. Mr. Langone has been practicing law for twenty-six years and has been in the Northern Virginia Area since 1999. Mr. Langone was employed in the financial service and insurance industries before his legal career. After graduation from law school, Mr. Langone had a successful career as a prosecutor in the state of Florida and the Commonwealth of Virginia. Mr. Langone's areas of practice have included contract and insurance disputes, business and construction law, commercial litigation, bankruptcy law, and personal injury including toxic mold, and wrongful death. Mr. Langone has extensive civil litigation and trial experience in state and federal courts in VA, DC and MD and has performed a broad spectrum of litigation including intense document review for legal sufficiency, discovery, and depositions and trial. Mr. Langone has provided legal support to many businesses in the area and acted as their general counsel in managing litigation. Mr. Langone has served in the United States Coast Guard, Auxiliary as a legal assistance attorney and as a Staff Judge Advocate in the Virginia State Guard, commonly known as the Virginia Defense Force.

**Professional Activities**
- District of Columbia Bar
- Florida State Bar
- Maryland State Bar
- Virginia State Bar
- Massachusetts State Bar

**Education**
- Nova Southeastern University, Juris Doctor, 1994
- Northeastern University, 1989, cum laude
- Nova Southeastern University, 2018, Graduate Certificate, Halmos College Oceanography
- United States Coast Guard Academy, 2011 (1-11), Direct Commission Officer School

**Publications**
- "When a Tenant Files for Bankruptcy: How to Limit Your Losses", Condo Media, The Official Publication of CAI-New England, 1999

**Areas of Practice**
- Contract and Insurance Disputes
- Business and Commercial Litigation
- Civil Litigation
- Personal Injury
- Financial Disputes
- Construction Litigation
- Toxic Mold
- Bankruptcy

 Wise Law Firm PLC
Attorney Profile and Firm Resume
Page 8

**Bar & Court Admissions**

- Virginia, 1999
- Florida, 1995
- District of Columbia, 1997
- Maryland, 2002
- Massachusetts, 1995
- U.S. Court of Appeals for the Fourth Circuit, 2010
- U.S. District Court, Eastern District of Virginia, 2001
- U.S. District Court, Western District of Virginia, 2005
- U.S. District Court, District of Columbia, 2002
- U.S. District Court, District of Maryland, 2002
- U.S. Bankruptcy Court for the Eastern District of Virginia, 2001