George Haines, Esq.
Nevada Bar No. 9411
Gerardo Avalos, Esq.
Nevada Bar No. 15171
**FREEDOM LAW FIRM**
8985 S. Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Tel: (702) 880-5554
Fax: (702) 385-5518
Email: *Ghaines@freedomlegalteam.com*

David K. Lietz, *pro hac vice*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Tel: (866) 252-0878
Fax: (202) 686-2877
Email: *dlietz@milberg.com*

[additional counsel on signature page]

*Attorneys for Plaintiffs and the Settlement Class*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SARA SANGUINETTI, RAYMOND D. SPEIGHT, DAVID DIETZEL, PATRICIA SAAVEDRA, AND NINA S. KUHLMANN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> NEVADA RESTAURANT SERVICES, INC., <br><br> Defendant. | CASE NO. 2:21-CV-01768-RFB-DJA <br> Consolidated with: 2:21-cv-01780-RFB-EJY <br><br> **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiffs Sara Sanguinetti, Raymond D. Speight, David Dietzel, and Nina S. Kuhlmann ("Plaintiffs"), individually and on behalf of all others similarly situated, will and hereby do move this Court for an order granting Plaintiffs' request for combined attorneys' fees and reasonable case expenses in the amount of $346,442, and service awards in the amount of $2,500 to each of the Class Representatives.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities; the concurrently filed Declaration of David Lietz in Support of Motion for Attorneys' Fees, Expenses, and Service Awards; all other documents filed in support of this motion, the papers and pleadings on file in this action, and upon such other and further evidence as may be offered at the time of the hearing.

Dated: October 25, 2024                              Respectfully Submitted,

                                                     *s/David K. Lietz*
                                                     _____
                                                     David K. Lietz
                                                     *pro hac vice*
                                                     **MILBERG COLEMAN BRYSON
                                                     PHILLIPS GROSSMAN, PLLC**


                                                     *s/George Haines, Esq.*
                                                     _____
                                                     George Haines
                                                     **FREEDOM LAW FIRM**

                                                     *Attorneys for Plaintiffs and the Settlement
                                                     Class*

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION…………………………………………………………… 1

II. BACKGROUND OF THE LITIGATION ………………………………… 2

III. PROCEDURAL HISTORY……………………………………………… 2

IV. THE SETTLEMENT TERMS…………………………………………… 3

    A. The Class……………………………………………………….. 3

    B. The Benefits to Settlement Class Members………………………… 4

V. ARGUMENT…………………………………………………………… 5

    A. Legal Standard………………………………………………... 5

    B. Claims-Made Settlements and Attorneys' Fees are Regularly Approved in Data Breach Class Action Litigation………………………………… 6

    C. Class Counsel's Lodestar is Reasonable……………………………… 8

        1. The Number of Hours Class Counsel Billed are Reasonable……… 8

        2. Class Counsel's Hourly Rates are Reasonable …………………….. 10

    D. Class Counsel's Lodestar is Reasonable and Requires No Adjustment……… 12

        1. Class Counsel Achieved a Favorable Result For the Class ……….. 14

        2. Class Counsel Performed Superior Quality Work to Achieve the Settlement………………………………………………………… 15

        3. The Litigation was Risky, Complex and Expensive………………… 17

        4. Class Counsel Worked on a Contingent Basis……………………… 19

        5. The Reaction of the Class Supports the Fee Request………………. 20

## TABLE OF CONTENTS

**Page**

6.    Although Unnecessary, a Percentage Crosscheck confirms the

Reasonableness of the Fee Request………………………………  20

VI.    THE REQUESTED SERVICE AWARDS ARE WARRANTED…………………… 23

VII.    CONCLUSION……………………………………………………………….. 24

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

## <u>TABLE OF AUTHORITIES</u>

**<u>U.S. Supreme Court Cases</u>**                                                                    **Page**

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)……………………………………………… 14

*Boeing Co. v. Van Gemert*, 444 U.S. 47 (1980)………………………………………… 21

*Blum v. Stenson*, 465 U.S. 886 (1984)…………………………………………………… 10

**<u>Federal Cases</u>**

*Abubaker v. Dominion Dental USA, Inc.*, No. 119CV01050LMBMSN, 2021 WL 6750844
    (E.D. Va. Nov. 19, 2021)……………………………………………………….. 6

*Adkins v. Facebook, Inc.,* 424 F. Supp. 3d 686 (N.D. Cal. 2019)……………………… 18

*Aguallo v. Kemper Corp.*, No. 1:21-cv-01883 (N.D. Ill. Oct. 14, 2021)……………… 7, 21

*Allagas v. BP Solar Int'l, Inc.*, No. 314CV00560SIEDL, 2016 WL 9114162
    (N.D. Cal. Dec. 22, 2016)……………………………………………………… 16

*Alikhan v. Goodrich Corp.*, No. CV 17-6756 JGB (RAOx), 2020 WL 4919382
    (C.D. Cal. June 25, 2020)……………………………………………………… 11

*Antman v. Uber Techs., Inc.,* No. 3:15-CV-01175-LB, 2015 WL 6123054
    (N.D. Cal. Oct. 19, 2015)……………………………………………………… 17

*Arnold v. DMG Mori USA, Inc.*, No. 18-cv-02373, 2022 WL 18027883
    (N.D. Cal. Dec. 20, 2022)……………………………………………………… 10

*Bahnmaier v. Wichita State Univ.*, No. 2:20-CV-02246-JAR-TJJ, 2021 WL 3662875
    (D. Kan. Aug. 18, 2021)……………………………………………………… 6

*Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013)………………… 22

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015)……………… 19

*Bowdle v. King's Seafood Company, LLC,* No. SACV 21-01784-CJC (JDEx)
    (C.D. Cal. Feb. 13, 2023)……………………………………………………… 7

*Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369-DMR, 2020 WL 3414653
    (N.D. Cal. 2020)……………………………………………………………… 10

*Cheryl Gaston v. FabFitFun, Inc.,* No. 2:20-CV-09534-RGK-E, 2021 WL 6496734
    (C.D. Cal. Dec. 9, 2021)……………………………………………………… 18

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

*Ching v. Siemens Indus., Inc.,* No. 11-CV-04838-MEJ, 2014 WL 2926210
    (N.D. Cal. June 27, 2014)…………………………………………………… 19

4

*Cunningham v. Leslie's Poolmart, Inc.*, No. CV 13-02122-CAS (CWx), 2016 WL 7173806
    (C.D Cal. Apr. 18, 2016)……………………………………………………… 24

5

6

*Edwards v. First Am. Corp.*, No.CV 07-03796 SJO (FFMx) 2016
    WL 8999934 (C.D. Cal. Oct. 4, 2016)………………………………………… 11

7

*Estrada v. iYogi, Inc.,* No. CV21301989WBSCKD, 2016 WL 310279
    (E.D. Cal. Jan. 26, 2016)……………………………………………………... 21

8

9

*Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115 (9th Cir. 2000)………………………………… 13

10

*Ford v. [24]7.AI, Inc.*, No. 5:18-cv-02770-BLF, 2022 U.S. Dist. LEXIS 16072
    (N.D. Cal. Jan. 28, 2022)……………………………………………………… 7

11

*Fulford v. Logitech, Inc.*, No. 08-CV-02041 MMC, 2010 WL 807448
    (N.D. Cal. Mar. 5, 2010)……………………………………………………… 24

12

13

*Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 4677954
    (E.D. Pa. Sept. 24, 2019)……………………………………………………… 6

14

*G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415
    (S.D.N.Y. 2012)……………………………………………………………… 12

15

16

*Giroux v. Essex Prop. Tr., Inc.*, No. 16-CV-01722-HSG, 2019 WL 1207301
    (N.D. Cal. May. 14, 2019) …………………………………………………… 5

17

18

*Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862
    (N.D. Cal. Jan. 26, 2007)……………………………………………………... 21

19

*Gonzales v. City of Maywood*, 729 F.3d 1196 (9th Cir. 2013)………………………… 10

20

*Green-Cooper v. Brinker Int'l, Inc.,* 73 F.4th 883 (11th Cir. 2023)…………………… 18

21

*Gutierrez v. Wells Fargo Bank,* N.A., No. C 07-05923 WHA, 2015 WL 2438274
    (N.D. Cal. May 21, 2015)……………………………………………………… 11

22

23

*Hammond v. The Bank of New York Mellon Corp.*, No. 08 CIV. 6060 RMB RLE
    2010 WL 2643307 (S.D.N.Y. June 25, 2010)………………………………… 17

24

25

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)…………………………… 5,8, 15

26

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994)……………………………………… 12

27

28

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

1

## TABLE OF AUTHORITIES

2

**Page**

3

4

*Hashemi v. Bosley, Inc*., No. CV 21-946 PSG (RAOX), 2022 WL 18278431
    (C.D. Cal. Nov. 21, 2022)……………………………………………………… 6

5

*Hicks v. Toys 'R' Us-Del., Inc.*, No. CV13-1302 DSF (JCGx), 2014 WL 4670896
    (C.D. Cal. Sept. 2, 2014)…………………………………………………….. 12

6

7

*In re Am. Apparel, Inc. S'holder Litig.,* No. CV 10–06352 MMM (JCGX), 2014
    WL 10212865 (C.D. Cal. July 28, 2014)…………………………………… 16

8

*In re Anthem, Inc. Data Breach Litig.,* No. 15-MD-02617-LHK, 2018 WL 3960068
    (N.D. Cal. Aug. 17, 2018)……………………………………………………… 18

9

10

*In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935, 947 (9th Cir. 2011)…………….. 7, 14

11

*In re Brinker Data Incident Litig.,* No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508
    (M.D. Fla. Apr. 14, 2021)……………………………………………………… 18

12

13

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig*., No. 3:08-MD-01998
    2010 WL 3341200 (W.D. Ky. Aug. 23, 2010)…………………………………… 17

14

*In re Equifax Inc. Customer Data Sec. Breach Litig.,* No. 1:17-MD-2800-TWT,
    2020 WL 256132 (N.D. Ga. Mar. 17, 2020)…………………………………… 18

15

16

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21
    (D. Me. 2013)…………………………………………………………… 18

17

*In re Heritage Bond Litig*., No. 02-ML-1475-DT(RCX), 2005 WL 1594389…………….. 15, 20

18

*In re Hyundai & Kia Fuel Econ. Litig*., 926 F.3d 539 (9th Cir. 2019)………………………… 5

19

20

*In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105
    (N.D. Cal. Jan 30, 2015)……………………………………………………… 11

21

22

*In re Omnivision Tech*s., 559 F. Supp. 2d 1036 (N.D. Cal. 2008)…………………………….. 19

23

*In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, Nos. 11-md-02208-MAP
    2014 WL 6968424 (D. Mass. Dec. 9, 2014)……………………………………… 23, 24

24

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig*., 903 F. Supp. 2d 942
    (S.D. Cal. 2012)………………………………………………………… 17

25

26

*In re TJX Cos. Retail Sec. Breach Litig*., 246 F.R.D. 389 (D. Mass. 2007)………………… 18

27

28

---

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

## TABLE OF AUTHORITIES

**Page**

*In re Toyota Motor Corp. Unintended Acceleration Mktg.,*
    *Sales Practices, & Prods. Liab. Litig.* 2013 WL 12327929 (C.D. Cal. July 24, 2013).. 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.,*
    2017 WL 1352859 (N.D. Cal. Apr. 12, 2017)…………………………………… 9, 10

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994)………...……… 10

*Jarrell v. Amerigas Propane, Inc.,* No. 16-CV-01481-JST, 2018 WL 1640055
    (N.D. Cal. Apr. 5, 2018)………………………………………………… 20

*Johnson v. Powers,* No. 215CV0245WBSACPS, 2019 WL 2080173
    (E.D. Cal. May 10, 2019)…………………………………………………….. 13

*Kissel v. Code 42 Software Inc.*, 2018 WL 6113078 (C.D. Cal. Feb. 20, 2018)……………… 14

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009)………………… 15

*Lee v. Enter. Leasing Co.-W.*, No. 3:10-CV-00326-LRH, 2015 WL 2345540
    (D. Nev. May 15, 2015)……………………………………………………….. 13

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)…………………………… 17

*Lymburner v. U.S. Fin. Funding, Inc.*, No. C-08-00325 EDL, 2012 WL 398816
    (N.D. Cal. Feb. 7, 2012)…………………………………………………… 13

*Marshall v. Northrup Grumman Corp.*, No. 16-cv-6794, 2020 WL 5668935
    (C.D. Cal. Sept. 18, 2020))……………………………………………......….. 11

*Negrete v. Allianz Life Ins. Co. of North America*, 2015 WL 12592726
    (C.D. Cal. Mar. 17, 2015)…………………………………………………… 24

*Pfeiffer v. RadNet, Inc.,* No. 2:20-CV-09553-RGK-SK, 2022 WL 2189533
    (C.D. Cal. Feb. 15, 2022)…………………………………………………… 17

*Pitarro v. DSV Air & Sea, Inc.*, No. 19-cv-00849-SK, 2021 WL 649973
    (N.D. Cal. Jan. 28, 2021)………………………………………………….. 14

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000)…………………………………………… 22

*Prison Legal News v. Schwarzenegger*, 608 F.3d 446 (9th Cir. 2010)………………………… 11

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

# TABLE OF AUTHORITIES

**Page**

*Quezada v. Schneider Logistics Transloading & Distrib., Inc*., No. CV 12-2188 CAS (DTBx)
    2014 WL 12584436 (C.D. Cal. May 12, 2014)…………………………………… 24

*Rodriguez v. West Publ'g Corp*., 563 F.3d 948 (9th Cir. 2009)………………………………... 23

*Schellhorn v. Timios, Inc.*, No. 2:21-cv-08661-VAP-(JCx) (C.D. Cal. Nov. 9, 2022)…….……. 6

*Scovil v. FedEx Ground Package Sys., Inc*., No. 1:10-CV-515-DBH, 2014 WL 1057079
    (D. Me. Mar. 14, 2014)………………………………………………………….…… 23

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990)………… 20, 21

*Small v. Univ. Med. Ctr. of S. Nevada*, No. 213CV00298APGPAL, 2019 WL 3063509
    (D. Nev. May 29, 2019)……………………………………………………………… 22

*Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249 (D. Nev. 2014))……………………... 12

*Velez v. Wynne*, 220 F. Appx. 512 (9th Cir. 2007)………………………………...…………… 12

*Vizcaino v. Microsoft Corp*., 290 F.3d 1043 (9th Cir. 2002)……………….………….13, 14, 16, 19

*Warshawsky v. CBDMD, Inc.*, No. 20-cv-00562 (W.D. N. C. Aug. 9, 2022)…….…………….. 8

*Williams v. MGM-Pathe Commc'ns Co*., 129 F.3d 1026 (9th Cir. 1997)………...…………….. 20

*Wilson v. Metals USA, Inc.,* No. 2:12-CV-00568-KJM-DB, 2019 WL 1129117
    (E.D. Cal. Mar. 12, 2019)…………………………………………………………….. 5

*Wing v. Asarco Inc*., 114 F.3d 986 (9th Cir. 1997)……………………………………………… 16

*Wunderlich v. State Farm Mut. Auto. Ins. Co.,* No. 221CV00486JADEJY,
    2021 WL 6138236 (D. Nev. Dec. 28, 2021)…………………….…………………… 13, 14

*Zepeda v. PayPal, Inc*., 2017 WL 1113293 (N.D. Cal. Mar. 24, 2017)..................................... 16

**State Cases**                                                  **Page**

*Horsford v. Board of Trustees*, 132 Cal. App. 4th 359 (2005)…………………………………… 9

*Lealao v. Beneficial Cal., Inc*., 82 Cal. App. 4th 19 (2000) …………………...………………… 20

**Statutes**                                                     **Page**

Fed. R. Civ. P. 23(h)…………………………………………………………………………….. 5

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

## I.    __INTRODUCTION__

Plaintiffs and Class Counsel zealously litigated the instant action and achieved a favorable settlement providing real and substantial benefits for the approximately 227,903 Settlement Class Members. Before the filing of the operative Amended Consolidated Complaint (ECF 20) ("Complaint"), Class Counsel conducted a thorough investigation though informal and formal discovery and mutual exchange of information, which included information regarding Defendant Nevada Restaurant Services, Inc.'s ("NRS") PII storage systems, policies and procedures regarding the safeguarding of PII in NRS's possession, custody, or control, information regarding the Plaintiffs' information that was potentially affected by the cybersecurity incident, and knowledge of third party unauthorized access to PII in the data breach. With a thorough understanding of each party's information and the strengths and weaknesses of the claims and defenses in this matter, Class Counsel was able to evaluate the probability of class certification, success on the merits, and NRS's monetary exposure for the claims. After carefully analyzing the merits of Plaintiffs' claims and NRS's defenses, Class Counsel successfully negotiated the proposed class settlement with the involvement of a highly-regarded and experienced mediator, Bruce Friedman, Esq. of JAMS, but also with their own formidable negotiating skills. The resulting Settlement Agreement provides a claims-made settlement structure that will be used to provide significant benefits to the Settlement Class. Among other benefits, Settlement Class Members may choose real, tangible benefits including cash and credit monitoring.

Class Counsel prosecuted the class claims and generated the Settlement benefits on an entirely contingent basis, with no guarantee of recovering their fees and expenses. They now seek

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

a reduced $346,442[1] in fees which includes reimbursement of their reasonable costs and litigation expenses incurred to secure a favorable result for the Settlement Class Members. Based on the results obtained for the Settlement Class in this complex litigation, the time and effort devoted by Plaintiffs' counsel, the skill and expertise required to litigate these cases, and the risks shouldered by Plaintiffs' counsel, the requested fee and expense award is fair and reasonable.

Finally, the Court should approve modest service awards of $2,500.00 to each Class Representative to compensate them for their efforts on behalf of the Settlement Class.

## II.    BACKGROUND OF THE LITIGATION

As this Court is aware, this class action litigation arose from a data breach that occurred on or about January 16, 2021, wherein cybercriminals breached NRS's computer systems and networks (the "Data Incident"). Complaint, at ¶¶ 1, 32-46. Defendant NRS owns and operates a chain of slot machine parlors referred to as "Dotty's" with about 175 locations in Nevada, Oregon, and Montana that offer food and beverage choices with a heavy focus on gambling. *Id.*, at ¶¶ 27-28. As a result of the Data Incident, the criminals gained access to Settlement Class Members' personal information. Discovery in this case revealed that for the majority of the Class Members, the information compromised consisted primarily of names and gaming records.

## III.    PROCEDURAL HISTORY

On August 24, 2021, Plaintiff Sara Sanguinetti filed a lawsuit asserting claims against

---

[1] The Parties have agreed to pay, separately from any funds made available to the Settlement Class, for a supplemental reminder notice of settlement with a tear-off claim form ("Reminder Notice") to be sent to each member of the Settlement Class. Specifically, to encourage the Settlement Class to submit as many claims as possible, the Parties agreed to pay separately for a Reminder Notice to be sent to each member of the Settlement Class at a total cost to the Parties of $107,116. The Parties agreed to split this cost evenly. As such Class Counsel now seeks a reduced amount of $346,442 in attorneys' fees and costs and Defendant will pay an extra $53,558 in order to provide the Settlement Class with the Reminder Notice.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

NRS relating to the Data Incident. On September 27, 2021, Plaintiff Raymond D. Speight filed a separate lawsuit asserting claims against NRS relating to the Data Incident (Case No. 2:21-cv-01780-RFB-EJY). On November 4, 2021, the Court consolidated these matters, and on November 16, 2021, Plaintiffs filed the operative Amended Class Action Complaint in the United States District Court for the District of Nevada. ECF 20. The case is titled *Sanguinetti, et al. v. Nevada Restaurant Services, Inc.*, Case No. 2:21-cv-01768-RFB-DJA (D. Nev.) (the "Litigation").

This case involved substantial litigation, including vast amounts of motion practice and discovery, including two motions to dismiss and two motions to stay. After heavily litigating the case, and over the course of several months, Plaintiffs and Defendant (collectively, the "Parties") engaged in settlement negotiations. The Parties participated in a formal mediation presided over by Bruce Friedman, Esq. on November 7, 2023. As a result of these negotiations and the mediation, and negotiations following the mediation that led to a mediator's proposal by Mr. Friedman, the Parties accepted a mediator's proposal with some modification, and reached a settlement in principle, which was then memorialized in the settlement agreement ("Settlement Agreement"), filed with this Court on March 12, 2024 ("Settlement Agreement" or "S.A."). ECF 103. Plaintiffs' counsel spent considerable time and effort drafting the Settlement Agreement and the exhibits to the Settlement Agreement, which included well-crafted class notices and a simple, easy to understand claim form. Plaintiffs' counsel also drafted and subsequently filed their Motion for Preliminary Approval for the Court's consideration on March 12, 2024. ECF No. 104. The Court granted preliminary approval on May 28, 2024. ECF No. 114.

## IV.    THE SETTLEMENT TERMS

### A. The Class

The Parties have agreed and stipulated that the following Class can be certified under Rule

---

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

23 for settlement purposes: all persons who were mailed notice by NRS that their personal and/or financial information was impacted in a data incident occurring on or before January 16, 2021. S.A., § 1.28. Excluded from the Settlement Class are (i) NRS, any Related Entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge. *Id*.

**B. The Benefits to Settlement Class Members**

The settlement provides for substantial monetary and credit monitoring relief to the Settlement Class, including the option to elect an alternative cash payment. *Id*., at §§ 2.1-2.5. The funds from this Settlement are to be paid to Settlement Class Members who submit timely and valid Claim Forms. *Id*., at §§ 1.35, 2.1-2.5. Settlement Costs, any service awards to Plaintiffs as Class Representatives, and Class Counsel's Attorney's Fees and Costs, will be paid by Defendant separately from any monetary relief to the Settlement Class. *Id*., at §§ 2.9, 7.1-7.4.

As part of the monetary relief offered to Settlement Class Members, each Settlement Class Member may make a Settlement Claim for reimbursement of documented ordinary expenses, including lost time, and/or reimbursement for extraordinary losses. *Id*., at §§ 2.1-2.2. In addition to the monetary benefits offered to Settlement Class Members, the settlement provides that all Settlement Class Members will be eligible to claim an extra three years of one bureau identity theft protection with up to $1,000,000 in fraud protection through IDX regardless of whether they submit any claim for monetary relief. *Id*., at § 2.4. In the alternative to these benefits, Settlement Class Members may submit a claim to receive an Alternative Cash Payment. *Id*., at § 2.5.

---

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

## V.    ARGUMENT

### A.    Legal Standard

Under Rule 23(h) of the Federal Rules of Civil Procedure the Court may award reasonable attorneys' fees and nontaxable costs in a certified class action based as permitted either by law or by the parties' agreement. Fed. R. Civ. P. 23(h). "Courts in this circuit determine attorney's fees in class actions using either the lodestar method or the percentage-of recovery method." *In re Hyundai & Kia Fuel Econ. Litig*., 926 F.3d 539, 570 (9th Cir. 2019) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). The lodestar method "may prove more convenient" in a case where "valuing the settlement is difficult or impossible." *Id*. at 570 (citations omitted).

"Because this is not a common fund case and attorney's fees will be assessed against defendant without reducing the relief available to the class, it appears the lodestar method is the appropriate method for determining whether the attorney's fees provision at issue is reasonable at this stage." *Wilson v. Metals USA, Inc.,* No. 2:12-CV-00568-KJM-DB, 2019 WL 1129117, at *8 (E.D. Cal. Mar. 12, 2019)) (collecting cases); *see also*, *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016) (finding lodestar method appropriate "where the relief sought and obtained is not easily monetized, ensuring compensation for counsel who undertake socially beneficial litigation").

In data breach cases involving claims-made settlements like this one, courts usually award fees using the lodestar method and consider the value of the proposed settlement only for purposes of conducting a (optional) crosscheck. *See, e.g., Giroux v. Essex Prop. Tr., Inc*., No. 16-CV-01722-HSG, 2019 WL 1207301, at *5 (N.D. Cal. May. 14, 2019) (awarding $140,000 in attorneys' fees using lodestar method (negative multiplier) because data breach settlement provided a "hybrid" of monetary and non-monetary relief (including credit monitoring) whose

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

value was not "self-evident"); *Bahnmaier v. Wichita State Univ.*, No. 2:20-CV-02246-JAR-TJJ, 2021 WL 3662875, at *1 (D. Kan. Aug. 18, 2021) (similar); *Abubaker v. Dominion Dental USA, Inc.*, No. 119CV01050LMBMSN, 2021 WL 6750844, at *6 (E.D. Va. Nov. 19, 2021) (approving $1 million fee request using lodestar method (negative multiplier) with percentage crosscheck using the total settlement benefits (monetary and non-monetary)); *Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 4677954, at *11 (E.D. Pa. Sept. 24, 2019) (approving $300,000.00 in fees using lodestar method (negative multiplier) with percentage cross check (21%) using total value of monetary and non-monetary benefits (including credit monitoring)).

### B.    Claims-Made Settlements and Attorneys' Fees are Regularly Approved in Data Breach Class Action Litigation

In *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 18278431 (C.D. Cal. Nov. 21, 2022), the court approved a claims made settlement with a very similar structure to the instant settlement, providing up to $300 per class member in ordinary expense reimbursement and lost time compensation, up to $5,000 per class member in extraordinary expense reimbursement, and two years of Pango's identity and fraud protection services, with an aggregate cap of $500,000 for the monetary relief. *Id.* at *4. Notably, here the settlement provides greater benefits for the Settlement Class than in the case of *Bosley*. *See* S.A. §§ 2.1-2.5 (The Settlement provides for up to $350 per Settlement Class Member in ordinary expense reimbursement and lost time compensation, up to $10,000 per Settlement Class Member in extraordinary expense reimbursement; 3 years of IDX's credit monitoring and identity theft protection services, and an Alternative Cash Payment of $50 for each Settlement Class Member.) In *Bosley* the Court approved not just the claims-made settlement but also the $262,505 attorneys' fees request. *Id.* at *38. Similarly, in *Schellhorn v. Timios, Inc.*, No. 2:21-cv-08661-VAP-(JCx) (C.D. Cal. Nov. 9, 2022), the court approved a claims-made settlement with very similar terms, but with less

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

compensation to the Class when compared to the instant settlement except for not having any alternative cash payment available and with a cash payment for California class members based on statutory rights not at issue here. *See generally*, S.A. In *Timios*, the court found the fact that attorneys' fees were not negotiated until after the substantive benefits to the class were agreed upon, which is also the case here, to be persuasive evidence that there was no collusion and therefore supported awarding reasonable attorneys' fees and approving the settlement. *See Timios, Inc.,* No. 2:21-cv-08661-VAP-(JCx) at 7 ("Additionally, because the parties 'did not negotiate attorneys' fees until agreement on all substantive portions of the class resolution had been reached,' … there is little risk that Defendant agreed to 'excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class.'") (internal citations removed) (quoting *In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935, 947 (9th Cir. 2011)).

In *Ford v. [24]7.AI, Inc.*, No. 5:18-cv-02770-BLF, 2022 U.S. Dist. LEXIS 16072 (N.D. Cal. Jan. 28, 2022), the consideration paid by [24]7.AI, Inc. to settle a data breach class action was up to $2,000 per class member in reimbursement for out-of-pocket expenses, including up to 5 hours at $20 per hour for lost time. *See id.* at *3-*5. There was no provision for any form of credit monitoring or identity theft insurance for the class members, or any Alternative Cash Payment. Despite providing fewer benefits for the class than the settlement in this case, the court in *[24]7.AI* approved that claims-made settlement and awarded the requested $450,000 in attorneys' fees without expressing any concern over the structure of the settlement. *Id.* at *20.

Other courts across the country have approved similar claims-made settlements in data breach class actions and awarded reasonable attorneys' fees without finding any evidence of collusion between the parties. *See, e.g., Bowdle v. King's Seafood Company, LLC,* No. SACV 21-01784-CJC (JDEx) (C.D. Cal. Feb. 13, 2023); *Aguallo v. Kemper Corp.*, No. 1:21-cv-01883 (N.D.

Ill. Oct. 14, 2021), ECF No. 53 (order approving settlement); *Warshawsky v. CBDMD, Inc.*, No. 20-cv-00562 (W.D. N. C. Aug. 9, 2022), ECF No. 21 (order approving settlement).

### C.    Class Counsel's Lodestar is Reasonable

"The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." *In re Hyundai*, 926 F.3d at 570 (quoting *Hanlon*, 150 F.3d at 1029).

### 1.    The Number of Hours Class Counsel Billed are Reasonable

The current billing rates for each attorney or staff who contributed to this case, along with the hours billed and resulting lodestar as of August 9, 2024, are set forth in the Declaration of David Lietz in Support of Motion for Attorneys' Fees, Expenses, and Service Awards ("Lietz Decl.") at ¶ 18. Class Counsel maintained contemporaneous and detailed time records, which include a description of all work performed and expenses incurred, available for the Court to review *in camera*. *Id.*, ¶ 22. The time committed by each firm was necessary to the successful resolution of this litigation, and all attorneys made sure to efficiently allocate work, coordinate assignments, and prevent the unnecessary duplication of work. *Id.*, ¶¶ 3-4. The 885.2 hours billed by Class Counsel were reasonable, appropriate, and necessary for the effective prosecution of this case especially considering the vast amounts of motion practice and various discovery hurdles present throughout the three years of litigation on this matter. *Id.*, ¶ 16. Specifically, this time included investigating the cause and effects of the Data Incident, interviewing potential clients, evaluating the potential class representatives, contributing to the evaluation of the merits of the case before filing the initial Complaint; conducting legal research; conducting extensive research into data security incidents and their causes and effects, conducting further extensive research into data security practices and standards across industries; drafting and filing the initial

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

complaints; communicating with co-counsel and consolidating all related matters; drafting and filing the Consolidated Compliant; drafting and filing an Amended Consolidated Complaint; overseeing substantial law and motion efforts including drafting oppositions to Defendant's Motion to Dismiss Amended Consolidated Class Action Complaint (ECF 30), Motion to Stay Discovery (ECF 34), Objection to Order and/or Motion to Stay Class Discovery in the Alternative (ECF 56), Motion to Dismiss for Lack of Subject Matter jurisdiction (ECF 73), Motion to Stay Discovery (ECF 79), and Defendant's Motion for Protective Order (ECF 85); coordinating extensively with Defendant regarding a joint discovery plan and drafting a discovery plan; conducting informal discovery regarding the Data Incident; drafting a detailed mediation summary, preparing for and participating in a formal mediation presided over by Bruce Friedman, Esq. of JAMS; drafting the settlement term sheet, the settlement agreement, well-crafted notices of settlement and an easy to understand claim form, the Motion for Preliminary Approval, and this instant motion for attorneys' fees; communicating with defense counsel; updating and handling questions from our class representatives; overseeing the launching of the notice program with substantial interaction between Class Counsel and the Settlement Administrator; and overseeing the claims process. *Id.*, ¶ 3.

Because complex litigation often requires a team structure, courts have compensated time spent in collaborative efforts. *See Horsford v. Board of Trustees*, 132 Cal. App. 4th 359, 397 (2005) (finding time reasonable where multiple attorneys represented plaintiffs to prepare notes, attend conferences to discuss strategies, and assign tasks, as part of a "supervision structure within the plaintiffs' litigation team"). Although Plaintiffs were able to resolve the action before trial, courts recognize that Class Counsel "should not be 'punished' for efficiently litigating[.]" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 1352859, at

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

*6 (N.D. Cal. Apr. 12, 2017). Moreover, Class Counsel's responsibility for this case is far from over. Class Counsel must continue to work with the Claims Administrator, review and respond to questions from Settlement Class Members about the settlement and the claims adjudication process, and oversee the final administration of benefits to Settlement Class Members. Lietz Decl., ¶ 5. Class Counsel will likely spend dozens of additional hours in this regard. *Id.*

### 2.    Class Counsel's Hourly Rates are Reasonable

"[P]revailing market rates in the relevant community set the reasonable hourly rate for purposes of computing the lodestar amount." *Gonzales v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). In general, "the relevant community is the forum in which the district court sits," *id.*, and because counsel should be compensated for the delay in payment, it is appropriate to apply each biller's current rates for all hours. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994). Counsel's rates are reasonable if they are within the range charged by and awarded to attorneys of comparable experience, reputation, and ability for similar work, *i.e.*, complex class action litigation. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

The hourly rates sought by Class Counsel range from $130 to $350 for paralegals and from $400 to $1,150 for attorneys up to senior partners. Lietz Decl., ¶ 18. These rates are consistent with the prevailing market rates in data breach class action litigation for attorneys of comparable experience, reputation, and ability and have been approved by the Ninth Circuit, this District, and judges in California federal courts. *See, e.g., Bosley, Inc.*, 2022 WL 18278431, at *9-10; *Arnold v. DMG Mori USA, Inc.*, No. 18-cv-02373, 2022 WL 18027883, at *4 (N.D. Cal. Dec. 20, 2022) ("The claimed 2021 billing rates of $950 and $550 are in line with prevailing market rates in this District, and so are reasonable."); *Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369-DMR, 2020 WL 3414653, at *5 (N.D. Cal. 2020) (approving hourly rates from $950

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

to $1,025 for partners in a consumer class action settlement and listing cases approving similar rates); *Gutierrez v. Wells Fargo Bank,* N.A., No. C 07-05923 WHA, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (rates ranging $475-$975 for partners, $300-$490 for associates, $150-$430 for paralegals and $250-$340 for litigation support staff); *In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at *12 (N.D. Cal. Jan 30, 2015) (approving fees over eight years ago because "[i]n the Bay Area, reasonable hourly rates for partners ranged from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support from $150 to $240."); *Marshall v. Northrup Grumman Corp*., No. 16-cv-6794, 2020 WL 5668935, at *7 (C.D. Cal. Sept. 18, 2020) (approving attorney rates between $490 and $1,060 per hour); *Alikhan v. Goodrich Corp*., No. CV 17-6756 JGB (RAOx), 2020 WL 4919382, at *8 (C.D. Cal. June 25, 2020) (approving rates of up to $950 per hour); *Edwards v. First Am. Corp*., No. No.CV 07-03796 SJO (FFMx) 2016 WL 8999934, at *5 (C.D. Cal. Oct. 4, 2016) (rates of up to $990 found reasonable); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (2008 hourly rates of up to $875 for a partner, and $700 for an attorney with 23 years of experience). Further, Class Counsel's hourly rates sought here have been previously approved by other federal courts. *See* Lietz Decl., ¶¶ 29-30. Moreover, here, the majority of the work on this matter was performed by partner level attorneys with considerable experience in data breach litigation further establishing that the rates are reasonable here. *See* Lietz Decl., ¶ 32.

Additionally, the *Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* ("Real Rate Report") has often been consulted by courts as a useful guidepost to determine the reasonableness of hourly rates, including recently in the Central District of California in a very similar data breach case. *See, e.g., Bosley, Inc.*, 2022 WL 18278431, at *9-10. The Real Rate Report identifies attorney rates by location, experience, firm

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

size, areas of expertise, and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices. *See Hicks v. Toys 'R' Us-Del., Inc.*, No. CV13-1302 DSF (JCGx), 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014). The Real Rate Report has been found to be "a much better reflection of true market rates than self-reported rates in all practice areas." *Id.*; *see also Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249, 1258 (D. Nev. 2014) (considering the Real Rate Report); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 433 (S.D.N.Y. 2012) (same).

The Real Rate Report provides that partner, associate, and paralegal rates have continued to climb. Specifically, the report provides that "[a] high-level overview of the 2023 findings shows a continuation of a multi-year trend that sees average rates continue to rise across timekeeper roles. The mean rate for partners saw the most significant increase, growing from $768 in 2022 to $784 in 2023. Paralegals experienced the second-largest bump, with an average rate of $263 in 2023, up from $252 in 2022."[2] Based on these numbers and considering the complexity of this matter and the experience of Class Counsel, the range of $130 to $350 for paralegals and from $400 to $1,150 for attorneys up to senior partners requested here is reasonable. Lietz Decl., ¶¶ 18, 25.

**D.    Class Counsel's Lodestar is Reasonable and Requires No Adjustment**

As the Ninth Circuit has held, the lodestar "presumptively provides an accurate measure of reasonable attorney's fees." *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994). Once calculated, the lodestar should be adjusted only in rare or exceptional cases. *See, e.g., Velez v. Wynne*, 220 F. App'x 512 (9th Cir. 2007) (district court abused its discretion by reducing the

---

[2] *See* Frank Ready, "Wolter Kluwer's Real Rate Report shows legal rates continue to grow" *available at* https://www.wolterskluwer.com/en/news/wolters-kluwers-real-rate-report-shows-legal-rates-continue-to-grow (last visited August 5, 2024).

presumptively reasonable lodestar without an explanation of the exceptional circumstances supporting such reduction). There is a "strong presumption… that the lodestar figure represents a reasonable fee…" *Johnson v. Powers,* No. 215CV0245WBSACPS, 2019 WL 2080173, at *3 (E.D. Cal. May 10, 2019), report and recommendation adopted, No. 215CV00245WBSACPS, 2019 WL 2386063 (E.D. Cal. June 6, 2019) (quoting *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000)).

Here, the total lodestar accrued by Class Counsel thus far totaling $602,700.95 is far above the fee request meaning that Class Counsel's fee request of $346,442 will result in a *negative* multiplier of -1.74 (Class Counsel's total lodestar of $602,700.95 divided by Class Counsel's reduced fee request of $346,442) on counsel's lodestar, not even considering the additional work that remains to be done. This strongly suggests that Class Counsel's requested fee is reasonable. *See, e.g., Lymburner v. U.S. Fin. Funding, Inc*., No. C-08-00325 EDL, 2012 WL 398816, at *6 (N.D. Cal. Feb. 7, 2012) (negative multiplier supports reasonableness of the fee request). Moreover, courts in this District have held that even positive multipliers are reasonable. *See Vizcaino II*, 290 F.3d at 1047-48 (collecting sampling of published, common fund settlements, with multipliers spanning from 0.6 to 8.5); *see also Lee v. Enter. Leasing Co.-W*., No. 3:10-CV-00326-LRH, 2015 WL 2345540, at *8 (D. Nev. May 15, 2015) (approving a 2.07 multiplier and noting with favor the *Vizcaino* multiplier of 3.65).

However, even if the Court were to adjust Class Counsel's lodestar downwards to 65% of the current lodestar to bring it in line with Court approved Nevada hourly rates for partner level work (which comprises the vast majority of hours in this matter), Plaintiffs' lodestar would still, not even considering the work that remains to be done, amount to more than the fees requested here. *See Wunderlich v. State Farm Mut. Auto. Ins. Co.,* No. 221CV00486JADEJY, 2021 WL

_____

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

6138236, at *2 (D. Nev. Dec. 28, 2021) (court held that in 2021 an associate rate of $375 per hour and a partner rate of $550 per hour was reasonable); Lietz Decl., ¶ 31.[3] Indeed, while courts rarely adjust counsel's lodestar, if the Court were to reduce Class Counse's lodestar to 65% of the current amount it would result in a negative multiplier of -1.20. *Id*., ¶ 34.

Courts in the Ninth Circuit consider a number of factors in setting an appropriate fee, including: (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check. *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1048-52 (9th Cir. 2002); *see also Kissel v. Code 42 Software Inc*., 2018 WL 6113078, at *4 (C.D. Cal. Feb. 20, 2018). These factors support Class Counsel's fee request.

### 1.    Class Counsel Achieved a Favorable Result for the Class

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Pitarro v. DSV Air & Sea, Inc.*, No. 19-cv-00849-SK, 2021 WL 649973, at *2 (N.D. Cal. Jan. 28, 2021) ("The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."); *Hensley v. Eckerhart*, 461 U.S. 424, 434-36 (1983); *In re Bluetooth Headsets Prods. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011).

Here, the settlement provides a range of recovery the Class Representatives and

---

[3] Adjusted for inflation, <u>even without factoring in market rate increases</u>, $375.00 in December of 2021 has the same purchasing power as $422.58 as of June 2024. *See* https://data.bls.gov/cgi-bin/cpicalc.pl?cost1=375&year1=202112&year2=202406 (last visited August 5, 2024). Moreover, adjusted for inflation and without factoring market rate increases, $550 in December of 2021 has the same purchasing power as $619.78. *See https://data.bls.gov/cgi-bin/cpicalc.pl?cost1=550&year1=202112&year2=202406* (last visited August 5, 2024).

Settlement Class Members likely would have recovered at trial: Settlement Class Members can receive compensation for ordinary unreimbursed out-of-pocket losses up to $350, including lost time at a rate of $35 per hour for up to 4 hours; up to $10,000 per claim for extraordinary out-of-pocket expenses that occurred as a result of the Data Incident; 3 years of IDX's credit monitoring and identity theft protection services; and an Alternative Cash Payment of $50 for each Settlement Class Member. S.A., §§ 2.1-2.5, ECF 103. By settling and paying Settlement Class Members now, practical remedies that have been absent become immediately available. Even if Plaintiffs achieved a successful judgment, relief to Settlement Class Members would likely be forestalled for years following the exhaustion of appeals. The results achieved here are substantial, timely, and support Class Counsel's fee request.

### 2. Class Counsel Performed Superior Quality Work to Achieve the Settlement

"Courts have recognized that the 'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 WL 12327929, at *31 (C.D. Cal. July 24, 2013) (quoting *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009)). When evaluating this factor, the "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *12 (citations omitted). As set forth above, the results achieved are significant.

Moreover, in setting fee awards, courts also consider counsel's experience and skill. *Hanlon*, 150 F.3d at 1029; *Chambers*, 214 F. Supp. 3d at 902. Class Counsel's skill and experience in complex class action litigation also favor the requested fee award here. The backgrounds of Class Counsel demonstrate that Class Counsel are experienced in the highly

specialized field of class action litigation, well credentialed, and equal to the difficult and novel tasks at hand. Lietz Decl., ¶¶ 2, 17, 24, 32, 39-40; *see also* ECF No. 104-1. Class Counsel's fee request is commensurate with that experience, which they were able to leverage to procure the settlement. The skill demonstrated by Class Counsel in developing the operative Amended Consolidated Complaint; preparing oppositions to Defendant's Motions to Dismiss, Motion to Stay, Objection to Order regarding Motion to Stay, and Motion for Protective Order; coordinating with Defendant regarding complex discovery and informal discovery issues including setting forth a discovery plan; and negotiating with defense counsel and settling the action early further supports the fees requested. *See Vizcaino*, 290 F.3d at 1050, n.5; *Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017) (class counsel's consumer class action expertise allowed for a result that "would have been unlikely if entrusted to counsel of lesser experience or capability" given the "substantive and procedural complexities" and the "contentious nature" of the settlement); *Allagas v. BP Solar Int'l, Inc.*, No. 314CV00560SIEDL, 2016 WL 9114162, at *2 (N.D. Cal. Dec. 22, 2016) (class counsel that were "highly experienced in prosecuting and settling complex class actions" factors in favor of requested fee).

Class Counsel were also equal to the experience and skill of the lawyers for NRS, a factor to be considered here. *See In re Am. Apparel, Inc. S'holder Litig.,* No. CV 10–06352 MMM (JCGX), 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.") (citing W*ing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997)). Defendant was represented in this case by a highly respected law firm (Kemp Jones, LLP) with significant resources and substantial experience in class action litigation. This factor, therefore, weighs in favor of the requested fee award.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

### 3.    The Litigation was Risky, Complex, and Expensive

Another factor in determining attorneys' fees is the risk counsel took of "not recovering at all, particularly in a case involving complicated legal issues." *In re Toyota*, 2013 WL 12327929, at *31 (C.D. Cal. July 24, 2013) (internal alterations and citations omitted); *see also In re Heritage*, 2005 WL 1594389, at *14 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of costs, is a factor in determining counsel's proper fee award."). Although nearly all class actions involve a high level of risk, expense, and complexity— undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is a complex class action in an especially risky area. "Historically, data breach cases have had great difficulty in moving past the pleadings stage and receiving class certification." *Pfeiffer v. RadNet, Inc.,* No. 2:20-CV-09553-RGK-SK, 2022 WL 2189533, at *3 (C.D. Cal. Feb. 15, 2022); *see also, e.g., Antman v. Uber Techs., Inc.,* No. 3:15-CV-01175-LB, 2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015) (holding that the risk that plaintiff's identity could be stolen was insufficient to confer standing based on a data breach exposing plaintiff's name and driver's license number); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (loss of personal information and allegations of a heightened risk of identity theft, without more, calls standing into question); *Hammond v. The Bank of New York Mellon Corp.*, No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases and noting that "every court to [analyze data breach cases] has ultimately dismissed under Rule 12(b)(6) . . . or under Rule 56 following the submission of a motion for summary judgment"); s*ee also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010) (approving a data breach settlement in part because "proceeding through the

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

litigation process in this case is unlikely to produce the plaintiffs' desired results").

Moreover, "[h]istorically, data breach cases have experienced minimal success in moving for class certification." *Cheryl Gaston v. FabFitFun, Inc.,* No. 2:20-CV-09534-RGK-E, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021).[4]  Even if this Court had granted in full Plaintiffs' motion for class certification, the inherent risks attendant to trying a data breach class action would have only magnified the difficult legal questions at issue here. *See, e.g., In re Anthem, Inc. Data Breach Litig.,* No. 15-MD-02617-LHK, 2018 WL 3960068, at *12 (N.D. Cal. Aug. 17, 2018) ("[C]lass certification was not guaranteed, in part because Plaintiffs had a scarcity of precedent to draw on."); *In re Equifax Inc. Customer Data Sec. Breach Litig.,* No. 1:17-MD-2800-TWT, 2020 WL 256132, at *7 (N.D. Ga. Mar. 17, 2020), aff'd in part, rev'd in part and remanded, 999 F.3d 1247 (11th Cir. 2021). Although Plaintiffs believe they would have prevailed in this action, a verdict for the defense was entirely possible.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. Data breach cases are among the riskiest and most uncertain of all class action litigation, making settlement the more prudent course when a reasonable deal is available. Here, the litigation was fraught with numerous risks. While Class Counsel was confident in Plaintiffs' claims, there is a recognized element of risk in any litigation, particularly complex and expensive data breach class

---

[4] *See also, Adkins v. Facebook, Inc.,* 424 F. Supp. 3d 686, 699 (N.D. Cal. 2019) (granting motion to certify injunctive-only class, but denying motion to certify damages and issues classes in data breach class action); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,* 293 F.R.D. 21 (D. Me. 2013) (denying class certification in data breach action); *In re TJX Cos. Retail Sec. Breach Litig.,* 246 F.R.D. 389 (D. Mass. 2007) (same). *In re Brinker Data Incident Litig.,* No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *14 (M.D. Fla. Apr. 14, 2021), *vacated in part sub nom. Green-Cooper v. Brinker Int'l, Inc.,* 73 F.4th 883 (11th Cir. 2023) ("The Court acknowledges it may be the first to certify a Rule 23(b)(3) class involving individual consumers complaining of a data breach involving payment cards….").

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

litigation. *See In re Omnivision Tech*s., 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) ("The risk that further litigation might result in plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees.").

### 4.     Class Counsel Worked on a Contingent Basis

"Attorneys are entitled to a larger fee award when their compensation is contingent in nature." *In re Toyota*, 2013 WL 12327929, at *32 (citing *Vizcaino*, 290 F.3d at 1048-50); *see also Kissel*, 2018 WL 6113078, at *5. "[W]hen counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 261 (N.D. Cal. 2015). The potential of receiving little or no recovery in the face of increasing risk weighs in favor of the requested fee. *See In re Washington*, 19 F.3d 1291, 1299; *Ching v. Siemens Indus., Inc.,* No. 11-CV-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) ("Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work.").

Here, Defendant adamantly denied (and continues to deny) any wrongdoing, much less a legal entitlement to class certification or any recovery. The path to establishing liability was particularly challenging given these risks. Class Counsel has already exceeded the reduced $346,442 fee and expense request, having invested 885.2 hours investigating, analyzing, researching, litigating, and negotiating a favorable resolution of this case, incurring $602,700.95 in lodestar in a case that could have failed, and advancing over $17,329.01 in litigation expenses. Lietz Decl., ¶¶ 18, 35. Class Counsel expended these resources despite the genuine risk that they would never be compensated at all—not only in this litigation. Moreover, Class Counsel faced a

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

defendant with ample resources to vigorously fight the litigation, represented by experienced counsel. Forgoing other work, Class Counsel litigated this class action on a purely contingent basis. *Id.*, ¶¶ 9-14. The risk of non-recovery is sufficiently substantial to justify the instant fee request.

### 5.    The Reaction of the Class Supports the Fee Request

The absence of objections or disapproval by Settlement Class Members to Class Counsel's fee request further supports finding the fee request reasonable. *See In re Heritage Bond Litig.*, 2005 WL 1594389, *15-16. Settlement Class Members have until August 18, 2024 to file objections or request exclusion, and counsel has not been notified of any objections or exclusion requests made to date. Lietz Decl., ¶ 6. The absence of objections and opt-outs to date is further evidence that the amount of attorneys' fees is reasonable. *See, e.g Jarrell v. Amerigas Propane, Inc.*, No. 16-CV-01481-JST, 2018 WL 1640055, at *2 (N.D. Cal. Apr. 5, 2018).

### 6.    Although Unnecessary, a Percentage Crosscheck Confirms the Reasonableness of the Fee Request

The Ninth Circuit recently held that it does "not require courts employing the lodestar method to perform a 'crosscheck' using the percentage method." *In re Hyundai*, 926 F.3d at 571. This would make "little logical sense," it explained, because "the lodestar method yields a fee that is presumptively [reasonable]." *Id.* (internal citations omitted).

However, if the Court were inclined to conduct a percentage crosscheck, it would only confirm the reasonableness of Class Counsel's request. When doing a percentage crosscheck, attorneys' fees are "calculated on the basis of the *total fund made available* rather than the actual payments made to the class." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 51 (2000) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997). *See also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("attorneys' fees sought

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

under a common fund theory should be assessed against every class members' share, not just the claiming members.") (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980)); *Estrada v. iYogi, Inc.,* No. CV21301989WBSCKD, 2016 WL 310279, at *6 (E.D. Cal. Jan. 26, 2016) ("Where there is a claims-made settlement . . . the percentage of the fund approach . . . is based on the total money available to class members, not just the money actually claimed."); *Glass v. UBS Fin. Servs., Inc*., No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452 (9th Cir. 2009).

In data breach class action cases where a component of the recovery is the provision of credit monitoring and identity protection services, the retail value per settlement class member of such a product has been included in determining the value of the settlement for purposes of assessing the reasonableness of class counsel's fee requests. For example, in *Aguallo v. Kemper Corp.,* No. 1:21-cv-01883 (N.D. Ill.), the Court granted final approval and approved plaintiffs' counsel's fees and expenses request of $2,500,000 based on a valuation of the settlement at $17.1 million, which included the value of Aura Financial Shield (a similar product offered by Pango), which was valued as being worth "conservatively" $12.1 million in that matter even if only 1 percent of the Class claimed those benefits.  *See id.*, ECF Nos. 53, 46-1.

Settlement Class Members will be provided with free access to IDX's Identity credit monitoring and identity theft protection services for a period of three years from the Effective Date. S.A., §§ 2.4-2.5. IDX Identity includes the following services: password protection; CyberScan Dark Web Monitoring; single bureau credit monitoring; annual single bureau credit report; court record, payday loan, change of address, and Social Security Number Trace

monitoring; $1 million in identity theft insurance, and more.[5]

This service is sold to consumers for a range of approximately $9-$10 per month ($108-$120 per year).[6] Even using the lower amount in that range, the retail value of providing IDX Identity to all 227,903 Settlement Class Members for 36 months is $73,840,572. Moreover, in addition to the credit monitoring benefits offered to the Settlement Class through IDX, the value of the Alternative Cash Payment provides an additional $150,000 in value to the Settlement Class. S.A., § 2.5. This amounts to a total settlement benefit of $73,990,572 for these two items alone. Even if a modest 2% of the Settlement Class were to claim only these two benefits, the Settlement proceeds paid to the Settlement Class would total $1,479,811.44, which is more than four times the amount of fees requested here which courts in this District have found to be reasonable. *See Small v. Univ. Med. Ctr. of S. Nevada*, No. 213CV00298APGPAL, 2019 WL 3063509, at *2 (D. Nev. May 29, 2019), *quoting Barbosa v. Cargill Meat Sol. Corp*., 297 F.R.D. 431,448 (E.D. Cal. 2013) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value with 25 percent considered a benchmark percentage.")

The settlement also offers the opportunity to claim ordinary unreimbursed out-of-pocket losses up to $350, including lost time at a rate of $35 per hour for up to 4 hours; up to $10,000 per claim for extraordinary out-of-pocket expenses that occurred as a result of the Data Incident. The remedial measures and commitments being made by Defendant in the Settlement Agreement over the next 36 months are also a tangible value to the Settlement Class. S.A., § 2.7. However, even if no valid claims are made for the out-of-pocket losses, the lost time, or the extraordinary

---

[5] *See* https://www.idx.us/privacy-identity-protection/consumer-plans (last visited August 5, 2024).
[6] *Id*.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

losses, and no value is assigned to the remedial measures, the value of the settlement is, at a minimum, $2,236,800.44, which includes: (1) $150,000 for the Alternative Cash payments to Settlement Class Members (assuming a claims rate that will fully subscribe this benefit); (2) $1,476,811.44 for the value of IDX identity (based on an approximated 2% claims rate); (3) $346,442 in requested attorneys' fees and costs; and (4) approximately $263,547 in notice and administration expenses including the supplemental Reminder Notice. Lietz Decl., ¶ 8. Class Counsel's fee request inclusive of expenses of $346,442 is therefore 15.5% of the value of the settlement at most. This is well below the Ninth Circuit benchmark, and presumptively reasonable. Plaintiffs' attorneys' fees request is reasonable as a percentage of the recovery using either of these calculations and should be approved.

## VI.    THE REQUESTED SERVICE AWARDS ARE WARRANTED.

Service awards for named plaintiffs are provided to encourage them to undertake the responsibilities and risks of representing the classes and to recognize the time and effort spent in the case. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (explaining that such awards "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general"); *see also Scovil v. FedEx Ground Package Sys., Inc*., No. 1:10-CV-515-DBH, 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014) ("Because a named plaintiff is an essential ingredient of any class action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit.") A service award is appropriate where the class representatives "have actively participated and assisted Class Counsel in this litigation for the substantial benefit of the Settlement Class despite facing significant personal limitations and sacrifices." *In re Prudential Ins. Co. of Am. SGLI/VGLI*

*Contract Litig.*, Nos. 11-md-02208-MAP, etc., 2014 WL 6968424, at *7 (D. Mass. Dec. 9, 2014); see generally, *Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases.").

Each of the Plaintiffs for whom service awards are sought have spent a significant amount of time assisting Class Counsel in litigating the Action for the benefit of absent Settlement Class Members. Lietz Decl., ¶¶ 37-38. Plaintiffs actively assisted Class Counsel in gathering facts for this case. *Id.* The class representatives' time and effort expended on behalf of the Settlement Class as a whole should not go unrecognized. The Court should therefore approve of a service awards of $2,500 for four of the named Plaintiffs (who are also the Court-appointed Class Representatives). As the Court will note, the requested amounts are consistent with or fall below service awards previously approved by courts in this Circuit. *See, e.g., Cunningham v. Leslie's Poolmart, Inc.*, No. CV 13-02122-CAS (CWx), 2016 WL 7173806, at *2 (C.D Cal. Apr. 18, 2016) (approving payment of $10,000 service awards to each of the Plaintiffs); *Negrete v. Allianz Lif Ins. Co. of North America*, 2015 WL 12592726, at *15 (C.D. Cal. Mar. 17, 2015) (same); *Quezada v. Schneider Logistics Transloading & Distrib., Inc.*, No. CV 12-2188 CAS (DTBx), 2014 WL 12584436, at *12 (C.D. Cal. May 12, 2014) (explaining that "other courts have found that service awards of $10,000 to named plaintiffs are reasonable") (citing cases); *Fulford v. Logitech, Inc.*, No. 08-CV-02041 MMC, 2010 WL 807448, at *6, n.1 (N.D. Cal. Mar. 5, 2010) (collecting cases awarding service fees between $5,000 and $40,000).

## VII.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court enter an order (a) approving the payment of $346,442 in combined attorneys' fees and reimbursed litigation expenses, and (b) approving the payment of $2,500 service awards to the Class Representatives.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

Date: October 25, 2024                     Respectfully Submitted,

                                           */s/George Haines*
                                           George Haines, Esq. (#9411)
                                           Gerardo Avalos, Esq. (#15171)
                                           **FREEDOM LAW FIRM**
                                           8985 South Eastern Avenue, Suite 350
                                           Las Vegas, Nevada 89123
                                           Telephone: (702) 880-5554
                                           Email: Ghaines@freedomlegalteam.com

                                           David Hilton Wise, Esq.
                                           Joseph M. Langone, Esq.
                                           **WISE LAW FIRM, PLC**
                                           421 Court Street
                                           Reno, Nevada 89501

                                           M. Anderson Berry, Esq.
                                           Gregory Haroutunian, Esq.
                                           **CLAYEO C. ARNOLD**
                                           **A PROFESSIONAL CORPORATION**
                                           865 Howe Avenue
                                           Sacramento, CA 95825
                                           Telephone: (916) 239-4778
                                           Email: *aberry@justice4you.com*
                                           *gharoutunian@justice4you.com*

                                           David K. Lietz
                                           **MILBERG COLEMAN BRYSON**
                                           **PHILLIPS GROSSMAN, PLLC**
                                           5335 Wisconsin Avenue NW, Suite 440
                                           Washington, D.C. 20015-2052
                                           Telephone: (866) 252-0878
                                           Email: *dlietz@milberg.com*

                                           Gary M. Klinger
                                           **MILBERG COLEMAN BRYSON**
                                           **PHILLIPS GROSSMAN, PLLC**
                                           227 Monroe Street, Suite 2100
                                           Chicago, IL 60606
                                           Telephone: (866) 252-0878
                                           Email: *gklinger@milberg.com*

                                           Michael Kind, Esq. (#13903)
                                           **KIND LAW**

---

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

8860 South Maryland Parkway, Suite 106
Las Vegas, Nevada 89123

Jean Martin, Esq.
MORGAN & MORGAN
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602

*Attorneys for Plaintiffs and the Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of such filing to all registered users.

*/s/ George Haines*
George Haines

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS