David K. Lietz, *pro hac vice*
dlietz@milberg.com
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877

George Haines, Esq.
Nevada Bar No. 9411
Gerardo Avalos, Esq.
Nevada Bar No. 15171
**FREEDOM LAW FIRM**
8985 S. Eastern Ave., Suite 100
Las Vegas, Nevada 89123
(702) 880-5554
(702) 385-5518 (fax)
Ghaines@freedomlegalteam.com

(additional counsel on signature page)

*Attorneys for Plaintiffs*
*and Settlement Class*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| SARA SANGUINETTI, RAYMOND D. SPEIGHT, DAVID DIETZEL, PATRICIA SAAVEDRA, AND NINA S. KUHLMANN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>NEVADA RESTAURANT SERVICES, INC.,<br><br>        Defendant. | Case No. 2:21-cv-01768-RFB-DJA<br><br>Consolidated with: 2:21-cv-01780-RFB-EJY<br><br><u>CLASS ACTION</u><br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: November 18, 2024<br>Time: 10:00 AM PT<br>The Hon. Richard F. Boulware, II |

i

TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs Sara Sanguinetti, Raymond D. Speight, David Dietzel, and Nina S. Kuhlmann ("Plaintiffs"), individually and on behalf of all others similarly situated, will and hereby do move this Court, under Federal Rule of Civil Procedure 23, for an order granting final approval of the Parties' proposed class action settlement. Plaintiffs respectfully request that the Court enter an order:

1.    Granting final approval of the Class Settlement Agreement and Release ("Agreement"), ECF 103;

2.    Certifying the Settlement Class for settlement purposes;

3.    Finally appointing Plaintiffs Sara Sanguinetti, Raymond D. Speight, David Dietzel, and Nina S. Kuhlmann as Class Representatives for the Settlement Class;

4.    Finally appointing David Lietz and Gary Klinger of Milberg Coleman Bryson Phillips Grossman PLLC; M. Anderson Berry and Gregory Haroutunian of Clayeo C. Arnold, A Professional Corp.; Jean Martin of Morgan & Morgan; George Haines and Gerardo Avalos of Freedom Law Firm; Michael Kind of Kind Law, and; and David Wise and Joseph Langone of Wise Law Firm, PLC as Settlement Class Counsel;

5.    Finally approving the ultimate dispersal of funds under the Agreement and in accordance with Settlement Class Counsel's Motion for Fees and Costs (ECF 123).

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed declaration of Patrick M. Passarella of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement and all exhibits attached thereto, all other documents filed in support of this motion, the papers and pleadings on file in this action, and upon such other and further evidence as may be offered at the time of the hearing.

Dated: November 4, 2024

Respectfully Submitted,

*/s/David Lietz*

David K. Lietz
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Email: dlietz@milberg.com

George Haines, Esq. (#9411)
Gerardo Avalos, Esq. (#15171)
FREEDOM LAW FIRM
8985 South Eastern Avenue, Suite 350
Las Vegas, Nevada 89123
Telephone: (702) 880-5554
Email: Ghaines@freedomlegalteam.com

David Hilton Wise, Esq.
Joseph M. Langone, Esq.
WISE LAW FIRM, PLC
421 Court Street
Reno, Nevada 89501

Gary M. Klinger
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
227 Monroe Street, Suite 2100
Chicago, IL 60606
Email: gklinger@milberg.com

M. Anderson Berry, Esq.
Gregory Haroutunian, Esq.
CLAYEO C. ARNOLD
A PROFESSIONAL CORPORATION
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Email: aberry@justice4you.com
gharoutunian@justice4you.com

Michael Kind, Esq. (#13903)
KIND LAW
8860 South Maryland Parkway, Suite 106
Las Vegas, Nevada 89123

Jean Martin, Esq.
MORGAN & MORGAN
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602

*Attorneys for Plaintiffs and Settlement Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... vi

I.    INTRODUCTION ......................................................................................................... 1

II.   FACTUAL BACKGROUND .......................................................................................... 1

   A.   Plaintiffs' Claims ................................................................................................. 1

   B.   Procedural History ............................................................................................... 2

   C.   Plaintiffs' Claims ................................................................................................. 3

   D.   Discovery and Investigation ................................................................................ 3

   E.   Settlement Negotiations ....................................................................................... 3

III.  THE SETTLEMENT ...................................................................................................... 5

   A.   The Class .............................................................................................................. 5

   B.   The Benefits to Settlement Class Members .......................................................... 5

   C.   Preliminary Approval and Class Notice Program ............................................... 6

IV.   ARGUMENT ................................................................................................................. 8

   A.   The Court Should Finally Approve the Settlement ............................................... 8

   B.   The Settlement Satisfies all the Rule 23(e)(2) and Bluetooth Factors ............... 10

      1. The Class Was Adequately Represented ......................................................... 10

      2. The Settlement was Negotiated at Arm's Length ............................................ 11

      3. The Relief is Adequate .................................................................................... 11

      4. The Proposed Settlement Treats Class Members Equitably ............................ 13

      5. There is no opposition to the Settlement ........................................................ 13

         a.    The Strength of Plaintiffs' Case Weighs in Favor of Final Approval ............... 14

         b.    The Risk, Expense, Complexity and Likely Duration of Further Litigation All
               Weigh in Favor of Final Approval ................................................................... 15

         c.    The Risk of Maintaining Class Action Status Through Trial .......................... 17

         d.    The Relief Offered in the Settlement Favors Final Approval .......................... 17

e.  The Extent of Discovery Completed Favors Final Approval Because the Settlement Was Reached as a Result of Arm's Length, Non-Collusive Negotiated Resolution ........ 18

f.  A Consideration of the Experience and Views of Class Counsel Favor Final Approval .......................................................................................................... 19

g.  There is No Governmental Participant in this Action ...................................... 19

h.  The Positive Reaction of the Class Members to the Settlement Favors Final Approval .......................................................................................................... 19

i.  Lack of Collusion Among the Parties ................................................................ 20

C.  Notice was Provided According to the Preliminary Approval Order and Satisfied Due Process and Rule 23 ................................................................................................ 20

D.  The Settlement Class Should be Finally Certified .................................................... 22

V.  CONCLUSION .................................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adoma v. Univ. of Phoenix, Inc.*,
  913 F. Supp. 2d 964 (E.D. Cal. 2012) ................................................................................ 14, 15, 19

*Barbosa v. Cargill Meat Sols. Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) ....................................................................................... 16, 17, 18, 19

*Billittri v. Securities America, Inc.*,
  Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) .................... 21

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ................................................................................................... 18

*Brown v. Transurban USA, Inc.*,
  318 F.R.D. 560 (E.D. Va. 2016) ...................................................................................................... 11

*Chester v. TJX Cos.*,
  No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) ................................. 14

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ......................................................................................................... 19

*Dunk v. Ford Motor Co.*,
  48 Cal. App. 4th 1794 (1996) ........................................................................................................... 22

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ......................................................................................................................... 22

*Espinosa v. United Student Aid Funds, Inc.*,
  553 F.3d 1193 (9th Cir. 2008) ......................................................................................................... 21

*Fox v. Iowa Health Sys.*,
  No. 3:18-CV-00327-JDP, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021) ........................................... 16

*Franklin v. Kaypro Corp.*,
  884 F.2d 1222 (9th Cir. 1989) ........................................................................................................... 9

*G. F. v. Contra Costa Cnty.*,
  No. 13-CV-03667-MEJ, 2015 WL 7571789 (N.D. Cal. Nov. 25, 2015) ........................................... 20

*Gordon v. Chipotle Mexican Grill, Inc.*,
  No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ..................................... 15

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ............................... 16

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1988) ......................................................................................... 9, 18, 20

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ........................................................................................................ 10

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg.,*
  *Sales Practices & Prod. Liab. Litig.*,
  952 F.3d 471 (4th Cir. 2020) ......................................................................................................... 11

*In re Marriott Int'l, Inc.*,
  78 F.4th 677 (4th Cir. 2023) .......................................................................................................... 17

*In re Syncor Erisa Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ......................................................................................................... 9

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
  266 F. Supp. 3d 1 (D.D.C. 2017) .................................................................................................... 16

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  720 F. Supp. 1379 (D. Ariz. 1989) ................................................................................................. 14

*Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.*,
  544 U.S. 1044, 125 S.Ct. 2277, 161 L.Ed.2d 1080 (2005) ............................................................ 11

*Lewis v. Starbucks Corp.*,
  No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) .............................. 18

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ............................................................................................. 9, 15, 18

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ....................................................................................................................... 20

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................................ passim

*Navellier v. Sletter*,
  262 F.3d 923 (9th Cir. 2001) ......................................................................................................... 22

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ................................................................................... 9, 10, 15, 17, 18

*Ontiveros v. Zamora,*
   303 F.R.D. 356 (E.D. Cal. 2014) ........................................................................... 17

*Paz v. AG Adriano Goldschmeid, Inc.,*
   No. 14CV1372DMS(DHB), 2016 WL 4427439 ................................................... 16

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985) ............................................................................................... 20

*Rodriguez v. W. Publ'g Corp.,*
   563 F.3d 948 (9th Cir. 2009) ................................................................................. 18

*Smith v. Triad of Ala., LLC,*
   No. 1:14-CV-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017)........................ 17

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) ................................................................................... 9

*Stott v. Capital Financial Services,*
   277 F.R.D. 316 (N.D. Tex. 2011) .......................................................................... 21

*United States v. Armour & Co.,*
   402 U.S. 673 (1971) ............................................................................................... 15

*Van Lith v. iHeartMedia + Entm't Inc.,*
   No. 1:16-CV-00066-SKO, 2017 WL 1064662 (E.D. Cal. Mar 20, 2017)................... 14, 15

*Vasquez v. Coast Valley Roofing, Inc.,*
   266 F.R.D. 482 (E.D. Cal. 2010) ..................................................................... 15, 19

*Wren v. RGIS Inventory Specialist,*
   No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................... 10, 18

*Zinser v. Accuflix Research Inst., Inc.,*
   253 F.3d 1180 (9th Cir. 2001) ............................................................................... 22

**STATUTES**

Cal. Bus. & Prof. Code §§ 17200 .................................................................................. 3

Nev. Rev. Stat. § 41.600 ................................................................................................ 3

**RULES**

Fed. R. Civ. P. 23 .......................................................................................................... 22

Fed. R. Civ. P. 23(a) and 23(b)(3) ................................................................................ 22

Fed. R. Civ. P.23(c) ................................................................................................ 21, 22

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................ 21

Fed. R. Civ. P. 23(c)(3) ................................................................................................. 21

Fed. R. Civ. P. 23(e) .................................................................................... 8, 10, 11, 20

Fed. R. Civ. P. 23(e)(2) ............................................................................................ 9, 10

Fed. R. Civ. P. 23(e)(2)(C) ............................................................................................ 11

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................ 13

Fed. R. Civ. P. 23(e)(3) ........................................................................................... 10, 13

## OTHER AUTHORITIES

*Manual for Complex Litigation, Third* § 30.42 (1995) ................................................ 11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs Sara Sanguinetti, Raymond D. Speight, David Dietzel, and Nina S. Kuhlmann ("Plaintiffs"), individually and on behalf of all others similarly situated, hereby seek final approval of a proposed class action settlement (the "Settlement") with Defendant Nevada Restaurant Services, Inc. ("Defendant" or "NRS"). The Settlement was reached following extensive investigation, discovery and arm's-length negotiations conducted under the assistance of an experienced mediator, Bruce Friedman, Esq. of JAMS. Under the facts of this data incident, Plaintiffs believe that the Settlement represents a positive result for the proposed Settlement Class.

When the benefits of the Settlement are balanced against the inherent risks of continued, protracted litigation, including potential defeat at certification, on the merits and/or on appeal, the fairness, adequacy, and reasonableness of the proposed settlement is clear. Accordingly, Plaintiffs respectfully request that this Court grant final certification of the Class and final approval of the Settlement and enter the proposed order of Final Approval Order submitted herewith.

### II.    FACTUAL BACKGROUND

#### A.    Plaintiffs' Claims

Plaintiffs allege that on or about January 16, 2021, cybercriminals breached NRS's computer systems and networks ("Data Incident"). Plaintiffs further allege that, as a result of the Data Incident, the criminals gained access to Plaintiffs' and Class Members' personal information, including but not limited to names, dates of birth, Social Security Numbers, driver's license numbers or state ID numbers, passport numbers, financial account and/or routing numbers, health insurance information, treatment information, biometric data, medical record, taxpayer identification numbers, and credit card numbers and/or expiration dates (collectively, "PII"). Not every data element was compromised for each Plaintiff or Settlement Class Member.  For example, Plaintiffs Sanguinetti, Speight, and Dietzel's Notice of Data Incident letters informed them that their "Date of Birth and Driver's License, and name" was

compromised. ECF 26-2, 26-3, and 26-4. Plaintiff Kuhlman was informed that her "Date of Birth and Other State ID, and name" was included in the information affected. ECF 26-6. Other Class Members had gaming information such as their "Patron ID number" compromised. ECF 26-5. Discovery in this action showed that the data compromised for the majority of the Class Members was similar to that compromised for the named Plaintiffs.

After discovering the Data Incident, NRS notified approximately 227,903 individuals of the Data Incident. In the notice letter, NRS offered individuals who were impacted by the Data Incident one or more years of free credit monitoring depending on his/her jurisdiction. Individuals, including Plaintiffs, were mailed notices of the Data Incident on or around July 1, 2021.

**B.    Procedural History**

On August 24, 2021, Plaintiff Sara Sanguinetti filed a lawsuit asserting claims against NRS relating to the Data Incident. On September 27, 2021, Plaintiff Raymond D. Speight filed a separate lawsuit asserting claims against NRS relating to the Data Incident (Case No. 2:21-cv-01780-RFB-EJY). On November 4, 2021, the Court consolidated these matters, and on November 16, 2021, Plaintiffs filed the operative amended class-action complaint in the United States District Court for the District of Nevada. The case is titled *Sanguinetti, et al. v. Nevada Restaurant Services, Inc.*, Case No. 2:21-cv-01768-RFB-DJA (D. Nev.) (the "Litigation").

After substantial litigation including significant motion practice and discovery, and over the course of several months, the Parties engaged in settlement negotiations. The Parties participated in a formal mediation presided over by Bruce Friedman, Esq. on November 7, 2023. As a result of these negotiations and the mediation, and negotiations following the mediation which lead to a mediator's proposal by Mr. Friedman, the Parties accepted Mr. Friedman's mediator's proposal with some modification, and reached a settlement, which is memorialized in the settlement agreement ("Settlement Agreement"), filed with this Court on March 12, 2024 as ECF 103.

The Court held a preliminary approval hearing on May 9, 2024, and subsequently granted the motion for preliminary approval on May 28, 2024. ECF 114.

### C.    Plaintiffs' Claims

In the Consolidated Complaint, Plaintiffs assert the following six claims: (1) Negligence; (2) Breach of Implied Contract; (3) Negligence Per Se; (4) Violation of the Nevada Consumer Fraud Act, Nev. Rev. Stat. § 41.600; (5) Unjust Enrichment; (6) Violation of the California Consumer Privacy Act ("CCPA"); and (7) Violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq. ECF No. 20 at ¶¶ 162–248.

### D.    Discovery and Investigation

After the filing of the Amended Consolidated Complaint, resolution of Defendant's motions to dismiss, and after considerable negotiations over a confidentiality agreement and ESI protocol, Plaintiffs and NRS (the "Parties") engaged in formal discovery and mutual exchange of information, which included information regarding NRS's PII storage systems, policies and procedures regarding the safeguarding of PII in NRS's possession, custody, or control, information regarding the Plaintiffs' information that was potentially affected by the cybersecurity incident, and knowledge of third party unauthorized access to PII in the Data Incident. The Parties also brought discovery disputes to the Court's attention via motions, and worked on scheduling and preparing for depositions. With a thorough understanding of each party's information and the strengths and weaknesses of the claims and defenses in this matter, Class Counsel was able to evaluate the probability of class certification, success on the merits, and NRS's monetary exposure for the claims before the Parties agreed to a formal mediation. ECF 106-1, Declaration of David Lietz in Support of Motion for Preliminary Approval ("Lietz Decl.") ¶ 5.

### E.    Settlement Negotiations

On November 7, 2023, the Parties engaged in an arm's-length mediation before Bruce Friedman, Esq., currently employed by JAMS in Los Angeles, California. Mr. Friedman is a highly sought after and accomplished mediator with a plethora of experience mediating data breach cases. The mediation involved extensive negotiations, discussions and considerations of the case by each party. The Parties went into mediation willing to explore a potential settlement for the dispute, but each was prepared to

litigate their claims and defenses through trial and appeal if no settlement could be reached. After an all-day, arm's-length mediation, the Parties were unable to reach an agreement to resolve all claims arising from or related to the Data Breach. ECF 106-1, Lietz Decl. at ¶ 6.  However, through the continued efforts of Mr. Friedman and the Parties to come to a mutually agreeable resolution, the Parties eventually reached agreement on the material terms of the Settlement. *Id.*

Class Counsel has conducted a thorough investigation into the facts of this case. Plaintiffs believe the claims asserted in the Litigation, as set forth in the Amended Consolidated Class Action Complaint, have merit. Plaintiffs and Proposed Settlement Class Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against NRS through motion practice, trial, and potential appeals. They have also considered the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation, especially in complex class actions. Proposed Settlement Class Counsel are highly experienced in class action litigation and very knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and in this Litigation.  They have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class, in light of all known facts and circumstances, the risk of significant delay, the defenses that have been and could be asserted by NRS both to certification and on the merits, trial risk, and appellate risk. *Id.* at ¶ 7.

Plaintiffs and Class Counsel, considering the above factors, believe that the settlement confers substantial benefits upon the Settlement Class, and that it is an excellent result for the Class. *Id.* at ¶ 2, Ex. 1 (Agreement).

NRS denies each and all of the claims and contentions alleged against it in the Litigation. NRS denies all charges of wrongdoing or liability as alleged, or which could be alleged, in the Litigation. Nonetheless, NRS has concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. NRS has considered the uncertainty and risks inherent in any litigation. NRS has, therefore, determined that it is desirable and beneficial that the

Litigation be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement.

Settlement here is both desirable and beneficial. Indeed, because of the settlement, Settlement Class Members will receive timely, guaranteed relief and will avoid the risk of an unfavorable judgment.

## III.    THE SETTLEMENT

The settlement's key terms are noted below.

### A.    The Class

In the Preliminary Approval Order, the Court certified the following Settlement Class:

**all persons who were mailed notice by NRS that their personal and/or financial information was impacted in a data incident occurring on or before January 16, 2021**.

Specifically excluded from the Settlement Class are: (i) NRS, any Related Entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

### B.    The Benefits to Settlement Class Members

The settlement provides for substantial monetary and credit monitoring relief to the Settlement Class, including the option to elect an alternative cash payment:

1.    <u>Expense Reimbursement</u>. All members of the Settlement Class who submit a Valid Claim using the Claim Form are eligible for the following documented out-of-pocket expenses, not to exceed $350 per member of the Settlement Class, that were incurred as a result of the Data Incident.

2.    <u>Lost Time</u>.    Members of the Settlement Class are also eligible to receive up to four hours of lost time spent dealing with issues arising out of the Data Incident (calculated at the rate of $35 per hour).

3.    <u>Extraordinary Expense Reimbursement:</u> All members of the Settlement Class who have suffered a proven monetary loss and who submit a Valid Claim using the Claim Form are eligible for up

to $10,000 if: (1) the loss is an actual, documented, and unreimbursed monetary loss requiring the submission of a proof of loss under penalty of perjury; (2) the loss was caused by the Data Incident; (3) the loss occurred between January 16, 2021, and the Claims Deadline; and (4) the loss is not already covered by the Expense Reimbursement category above; and the member of the Settlement Class made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

4.    <u>Credit Monitoring and Identity-Theft Protection.</u>  All members of the Settlement Class who submit a Valid Claim using the Claim Form are eligible for 36 months of free one-bureau identity-theft protection with $1M in fraud protection.

5.    <u>Alternative Cash Payment.</u> In place of the benefits contained in ¶¶ 1, 2, and 4 above, and not in addition to all other benefits, all Settlement Class Members are eligible to receive a payment of $50. The amount of Alternative Cash Payments shall not exceed $150,000 and, if the amounts claimed exceed that amount, they shall be reduced *pro-rata* so that the total amount to be paid is not more than $150,000.

**C.    Preliminary Approval and Class Notice Program**

On May 28, 2024, this Honorable Court granted preliminary approval to the proposed Settlement and approved the conditional certification of the Class, the appointment of Plaintiffs as Settlement Class Representatives, and appointment of undersigned counsel as Settlement Class Counsel. ECF 114 at 2-3.

The Court's Order approved the Notice Program set forth in the Agreement, and appointed Kroll Settlement Administration, LLC ("Kroll") as the Claims Administrator to facilitate the Notice Program and settlement administration. *Id.* at 4. Per the terms of the Agreement, Kroll served a CAFA notice of the settlement via first-class certified mail or email to the appropriate State and Federal officials. Declaration of Patrick M. Passarella of Kroll Settlement Administration, LLC ("Passarella Decl."), ¶ 4. Following preliminary approval, Defendant provided Kroll with the contact information of the Settlement Class, which Kroll used to compile an updated Class List for the 223,682 Settlement Class Members. *Id.*, ¶ 8. Kroll then mailed the Short Notice using that Class List, which after multiple address corrections and

re-mailings likely reached 216,173 of the 223,682 Settlement Class Members—a rate of approximately 96.64%. *Id.*, ¶ 13. This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which consider 70% to be a high reach rate and the "norm" for such notice campaigns. *Id.* Notice that reaches almost 97% of the Settlement Class satisfies all applicable due process requirements, and weighs in favor of final approval.

Additionally, Kroll set up a dedicated settlement website, which went live on June 17, 2024. *Id.*, ¶ 5. This website contained, among other things, information about the settlement, copies of the Agreement, the operative Class Action Complaint, the Preliminary Approval Order, the Long Notice, the motion for an Attorneys' Fees and Expenses Award and incentive awards and the Claim Form. Kroll will also post on the Settlement Website copies of this motion for final approval. The Settlement Website also contained contact information for Kroll, answers to frequently asked questions, important dates and deadlines, including the Opt-Out Deadline, Objection Deadline, Claims Deadline, and the Final Approval Hearing date, and provided Settlement Class Members the opportunity to file a Claim Form online. *Id.* Kroll also established a toll-free telephone number for Settlement Class Members to call and obtain additional information regarding the settlement. *Id.*, ¶ 6. As of October 30, 2024, the IVR system received 1,376 calls, and 486 callers have received a call back. *Id.* Kroll also designated a post office box in order to receive opt-out requests, Claim Forms, objections, and correspondence from Settlement Class Members. *Id.* at ¶ 7.

In addition to the successful "reach" of the Notice Program, the Notice Program also created a positive response from the Settlement Class in terms of claims filed and lack of objection. The Claims Deadline was September 17, 2024. Passarella Decl. ¶ 14. As of August 17, 2024, sixty (60) days after the initial Short Notice was mailed, a total of 2,399 Settlement Claims had been received through the mail or electronically through the Settlement Website, equating to a filing rate of 1.07%. *Id.* at ¶ 15. To increase the filing rate, counsel for the Parties decided that a reminder Short Notice, that included a tear-off Claim Form and business reply mail postage ("BRM"), should be mailed. *Id.* The reminder notice – funded by Class Counsel agreeing to cover half of the cost from decreasing the maximum amount of

attorney' fees ($400,000) that could have been sought under this Settlement, and with Defendant agreeing to cover the remaining half of the cost – made a huge difference in terms of boosting the claims rate. As of October 30, 2024, sixty-four (64) days after the reminder Short Notice was mailed, Kroll received 10,759 Claim Forms through the mail and 3,308 Claim Forms filed electronically through the Settlement Website, for a total of 14,067 Settlement Claims, thereby increasing the filing rate to 6.29%. *Id*. at ¶ 16. While a number of these claims (at least 1,090) were postmarked after the Claims Deadline (i.e. were late claims), Defendant instructed and Class Counsel approved that late claims received by October 31, 2024 are to be considered eligible for payment. *Id*. at ¶ 17. In short, the Parties took extraordinary measures to deliver a high claims rate for this type of case before the Court conducts the final approval hearing.

**This claims rate is higher than the average rate for data breach settlements and higher even than the estimated claims rate expected for this settlement.** Based upon Kroll's personal knowledge and experience administering dozens of data incident settlements, the average claims rate across all data incident settlements is 3.04% with a median rate of 2.04%. *Id.* at ¶ 20. Narrowing the analysis to data incident settlements with similar class sizes (between 50,000 and 400,000) shows approximate claims rates of 2.91% and a median rate of 1.92%. *Id.*

There is also no opposition to this settlement generally, and specifically no objection to the Motion for Attorneys' Fees, Expenses, and Service Awards. *Id*. at ¶ 22. Remarkably, there is not a single opt-out either, a rarity for a class of over 220,000. The high claims rate and complete lack of opposition definitively establishes that this Settlement Class overwhelmingly supports this Settlement.

## IV.    ARGUMENT

### A.  The Court Should Finally Approve the Settlement

A class action may not be settled without Court Approval. *See* Fed. R. Civ. P. 23(e). Approval of a class action settlement requires three steps: (1) preliminary approval; (2) notice to all class members; and (3) a final settlement approval hearing at which objecting class members may be heard. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is committed to the sound discretion of

the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988). This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources." *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *In re Syncor Erisa Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

Federal law strongly favors and encourages settlements, especially in class actions. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[T]here is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits."). Moreover, when reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiation between the parties," and must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Court of Appeals will rarely overturn approval of a class action settlement unless "the terms of the agreement contain convincing indications that the incentives favoring pursuit of self-interest rather than the class's interests in fact influenced the outcome of the negotiations and that the district court was wrong in concluding otherwise." *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003).

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice*, 688 F.2d at 625. In making this determination, the Court must consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the

method of processing class-member claims;

       (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

       (iv) any agreement required to be identified under Rule 23(e)(3); and

       (D) the proposal treats class members equitably relative to each other.

Fed.R.Civ.P. Rule 23(e)(2).

       In addition to the Rule 23(e)(2) factors, courts in the Ninth Circuit look to nine factors in making this determination: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011).

       "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id. (quoting Officers for Justice,* 688 F.2d at 625) (citation omitted); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[D]istrict courts have wide discretion in assessing the weight and applicability of each factor." (citation omitted)). Importantly, courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialist,* No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011).

       Each of these factors (both the Rule 23(e) factors and the *Bluetooth* factors) weighs in favor of final approval. With a strong settlement that enjoys robust support from the Settlement Class, and to which there is no opposition, the Court should find that the Settlement is fair, reasonable, and adequate, and finally approve it.

    **B.  The Settlement Satisfies all the Rule 23(e)(2) and Bluetooth Factors.**

        **1.  The Class Was Adequately Represented.**

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation." *Brown v. Transurban USA, Inc.,* 318 F.R.D. 560, 567 (E.D. Va. 2016) (citation omitted). Here, the Settlement Class Representatives have the same interests as all other Settlement Class Members as they are asserting the same claims and share the same injuries. Further, the Court has already recognized Class Counsel's experience and qualifications in appointing them to lead this litigation and the record shows Class Counsel worked diligently to litigate and ultimately bring this case to resolution. *See* Doc. 114, Order Granting Preliminary Approval; *see also In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.,* 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

### 2.    The Settlement was Negotiated at Arm's Length.

The negotiations in this matter occurred at arm's length. See ECF 104-1, Lietz Decl. ¶ 6. Settlements negotiated by experienced counsel that result from arm's-length negotiations are presumed to be fair, adequate and reasonable. *See Leonardo's Pizza by the Slice, Inc. v. Wal–Mart Stores, Inc.,* 544 U.S. 1044, 125 S.Ct. 2277, 161 L.Ed.2d 1080 (2005) (a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" (quoting *Manual for Complex Litigation, Third* § 30.42 (1995)). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

### 3.    The Relief is Adequate.

The relief offered to Class Members in the proposed Settlement addresses the types of repercussions and injuries arising from the Data Incident and is more than adequate under the factors outlined in Rule 23(e)(2)(C).

Class Counsel, who have meaningful experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. The Court may rely upon such

experienced counsel's judgment. *See, e.g., DIRECTV, Inc.,* 221 F.R.D. at 528 (""the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (citations omitted).

    i.    *The Costs, Risk, And Delay Of Trial And Appeal.*

As outlined in the preliminary approval motion, Plaintiffs faced significant risks and costs should they have continued to litigate the case. First, there was a risk that Plaintiffs' claims would not have survived, or survived in full, on a class-wide basis after a motion for class certification, motions for summary judgment, and Daubert motions on damages methodologies, among other motions. Second, if Plaintiffs had prevailed on a motion for class certification, successfully defeated all the other objections and motions Defendant would have filed, and proceeded to trial, Plaintiffs still would have faced significant risk, cost, and delay including likely interlocutory and post-judgment appeals.

In contrast to the risk, cost, and delay posed by proceeding to trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class. It ensures that Settlement Class Members with valid claims for Out-of-Pocket Losses or Lost Time will receive guaranteed compensation now and provides Settlement Class Members with access to Identity Theft Protection services (benefits that may not have been available at trial) or alternative cash payments. The substantial costs, risk, and delay of a trial and appeal support a finding that the proposed Settlement is adequate.

    ii.    *The Method Of Distributing Relief Is Effective.*

The proposed distribution process will be efficient and effective. The available relief was detailed clearly in the Notice that was provided to all Settlement Class Members, laying out the benefits to which they are entitled.

Noticing the Settlement Class of the available relief was efficient and effective. Notice included dissemination of individual notice by direct mail, in the form of the Short Form postcard notice. This direct mail notice reached almost 97% of the Class. Therefore, Settlement Class Members received effective and efficient notice of the relief offered. Because Settlement Class Members were able to make

claims through a simple online form, by mail, or by the tear-off claim form on the Reminder Notice that even came with prepaid postage, the method of distributing the relief was both efficient and effective, and the proposed Settlement is adequate under this factor.

       iii.    *The Terms Relating To Attorneys' Fees Are Reasonable*.

Class Counsel has requested $346,442.00 in attorneys' fees and for reimbursement of out-of-pocket costs and expenses (which are not less than $17,329.01, before any expenses are added for the final approval hearing). This request is on par with awards routinely granted by courts in the Ninth Circuit and is supported by a lodestar crosscheck, as laid out in the previously filed amended attorneys' fee motion. ECF 123. This factor supports approval of the proposed Settlement.

       iv.    *Any Agreement Required To Be Identified Under Rule 23(e)(3)*.

Apart from the Settlement Agreement, there are no additional agreements between the Parties or with others made in connection with the Settlement. Accordingly, this factor weighs in favor of final approval of the Settlement.

### 4.      The Proposed Settlement Treats Class Members Equitably.

The Settlement Class Members are treated equitably because they all have similar claims arising from the same data breach, and they all are treated the same under the Settlement. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members are eligible to claim the various benefits provided by the Settlement if they meet the requirements, including compensation for Out-of-Pocket Losses, compensation for time spent responding to the Data Incident, credit monitoring and identity protection or, alternative cash payments.

### 5.      There is no opposition to the Settlement.

In assessing adequacy, the Court should consider the degree of opposition to the Settlement. After a far-reaching, extensive direct notice campaign, and a reminder notice that was mailed to 215,997 Class Members, no Settlement Class Members submitted an objection or sought to opt-out.

The *Bluetooth* factors are similarly satisfied.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     *a.  The Strength of Plaintiffs' Case Weighs in Favor of Final Approval*

     "When assessing the strength of [the] plaintiff's case, the court does not reach 'any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989)). The Court must "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id*. Accordingly, where a court determines that a claim may have "some measure of merit," but that it also faces inherent weaknesses, the court should find that the "strength of Plaintiff's case" factor "weighs in favor" of final approval of the Settlement. *Van Lith v. iHeartMedia + Entm't Inc.*, No. 1:16-CV-00066-SKO, 2017 WL 1064662 at *11 (E.D. Cal. Mar 20, 2017).

     While Plaintiffs and Class Counsel believe that there is evidence from which the Court could rule in favor of Plaintiffs' claims at trial, there exist real concerns as to the viability of their case at trial. First, as Defendant argued in its motion to dismiss, Plaintiffs may not be able to prove that they suffered any damages. ECF 26 at pages 8-13. Defendant also challenged Plaintiffs' standing and produced a declaration from its forensic expert who stated that there is no evidence that Plaintiffs' information involved in the Data Incident has been posted to the surface web, dark web, or deep dark web, or otherwise fraudulently misused. ECF Nos. 66-67. Defendant's expert further stated that its forensic investigation uncovered that Plaintiffs had their information compromised in other cyberattack incidents unrelated to this incident and that their information taken from those other incidents have been posted to the dark web. *Id*. Second, differences in damages resulting from the data breach between affected individuals give rise to individualized issues that may ultimately prevent Plaintiffs from certifying a class. "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos*., No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). As described in the preliminary approval and attorneys' fee motions, Plaintiffs faced heavy obstacles and inherent risks with respect to the novel claims in data breach

class actions, including class certification, summary judgment, and trial  Thus, the substantial benefits the Settlement provides favors final approval of the settlement. ECF 104 at page 11; ECF 123 at pages 17-19.

Where, as here, a claim has "some measure of merit" but also faces inherent weaknesses, a court should find that the "strength of Plaintiff's case" factor "weighs in favor" of approval of the settlement. *Van Lith*, 2017 WL 1064662 at *11.

  b. *The Risk, Expense, Complexity and Likely Duration of Further Litigation All Weigh in Favor of Final Approval*

"Another relevant factor is the risk of continued litigation against the certainty and immediacy of recovery from the [s]ettlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (citation omitted). "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." *Adoma*, 913 F. Supp. 2d at 976. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* (quoting *Nat'l Rural Telecomms. Coop*, 221 F.R.D. at 526. "The parties…save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something that they might have won had they proceeded with litigation." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971)).

Although nearly all class actions involve a high level of risk, expense, and complexity— undergirding the strong judicial policy favoring amicable resolutions, *Linney*, 151 F.3d at 1238 —this is an especially complex class in an especially risky arena. As one federal district court recently observed in finally approving a settlement with similar class relief:

> Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

*Fox v. Iowa Health Sys*., No. 3:18-CV-00327-JDP, 2021 WL 826741, at \*5 (W.D. Wis. Mar. 4, 2021). Data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp*., No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307, at \*1 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases of similar notoriety and implicating data far more sensitive than at issue here have been found wanting at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Liti*g., 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and most uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.,* No. 14CV1372DMS(DHB), 2016 WL 4427439, at \*t (S.D. Cal. Feb. 29, 2016). Here, the certainty of the Settlement clearly outweighs the plain risk and expense of continued litigation. Absent settlement, the Parties would be required to continue litigation, which would necessarily require significant discovery, the retention of several experts by both sides, a contested motion for class certification, and other dispositive motions such as a motion for summary judgment and possible appeals. Indeed, this action will likely become more complex over time and require further resource expenditure the longer it goes on for, as new issues may emerge through discovery or simply determinations relating to case strategy. *Id.* As such, this factor clearly weighs in favor of final approval. *Barbosa v. Cargill Meat*

*Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (concluding that this factor favored approval where 'there remained significant procedural hurdles for the putative class to confront, including certification" and "there were significant risks in continued litigation and no guarantee of recovery.").

### c. The Risk of Maintaining Class Action Status Through Trial

Other than for settlement purposes, the Court has not certified any class treatment of this case. Absent settlement, class certification in consumer data breach cases has only occurred in a few cases. *See, e.g., Smith v. Triad of Ala*., LLC, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *15 (M.D. Ala. Mar. 17, 2017), on reconsideration in part, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017). Even when certification is granted, there are appeals. *See In re Marriott Int'l, Inc*., 78 F.4th 677, 680 (4th Cir. 2023) (decertifying class). While certification of additional consumer data breach classes may follow, the dearth of precedent adds to the risks posed by continued litigation.

### d. The Relief Offered in the Settlement Favors Final Approval

"In assessing the consideration obtained by the class members in a class action settlement, it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Ontiveros v. Zamora*, 303 F.R.D. 356, 370 (E.D. Cal. 2014). "[A] proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526 (citation omitted). Indeed, "[i]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* at 527; *See also*, *e.g.*, *Officers for Justice*, 688 F.2d at 623.

From the Settlement, Class Members could claim substantial benefits, including a choice of monetary relief (either documented loss reimbursements of up to $10,000, including lost time, or a cash payment) and a three-year subscription to Credit Monitoring Services. As of the filing of this Motion, 14,067 valid claims have been made. While a larger award is "theoretically possible, 'the very essence of a settlement is a compromise, a yielding of absolutes and an abandoning of highest hopes." *Barbosa*,

297 F.R.D. at 447 (quoting *Linney*, 151 F.3d at 1242); see also *Hanlon*, 150 F.3d at 1027 (the fact that "the settlement could have been better…does not mean that the settlement presented was not fair, reasonable or adequate."). Accordingly, this factor weighs in favor of final approval.

> e. *The Extent of Discovery Completed Favors Final Approval Because the Settlement Was Reached as a Result of Arm's Length, Non-Collusive Negotiated Resolution*

As to the factors pertaining to the extent of discovery completed and the stage of proceedings, the amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g., Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979). Stated another way, "[w]hat is required is that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently." *Barbosa*, 297 F.R.D. at 447 (citation omitted).

Additionally, this Circuit puts "a good deal of stock in the product of arms-length, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1027; *Officers for Justice*, 688 F.2d at 265). Accordingly, there is a "presumption of fairness…if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-0605778 JCS, 2011 WL 1230826 at *6 (N.D. Cal. Apr. 1, 2011), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

Here, the Parties engaged in formal discovery, as well as extensive investigation of the claims, which allowed each side to fully assess the claims and potential defenses in this action. Following and as a result of those efforts, the Parties engaged in an adversarial, non-collusive and arm's length mediation with a well-regarded third-party neutral. In reaching the Settlement, Class Counsel considered issues including, *inter alia*, (1) certification of the Settlement Class; (2) monetary remuneration for Settlement Class; and (3) credit monitoring services to be purchased for the Settlement Class Members. The resulting Agreement is the product of hours of such arm's length negotiations between the Parties, creating a presumption of fairness. Accordingly, this factor favors final approval.

*f.   A Consideration of the Experience and Views of Class Counsel Favor Final Approval*

"In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties." *Barbosa*, 297 F.R.D. at 447 (citation omitted). "Great weight is accorded to the recommendation of counsel, who are the most closely acquainted with the facts of the underlying litigation." *Adoma*, 913 F. Supp. 2d. at 977 (citation omitted). "This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Id*. (citation omitted). "Thus, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'" *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

Class Counsel have extensive experience in litigating consumer class actions, particularly data breach class actions. *See* ECF 106-1. Class Counsel evaluated the case, considered the defenses that had been and would be raised and—although they believed they could prevail at trial—ultimately concluded that settlement was the best option. ECF 106-1 at ¶ 7. Considering the Parties' strongly divergent views, and their awareness of the burdens of proof necessary to establish liability for the claims and the potential challenges to bringing a class certification motion, the Parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation. ECF 106-1 at ¶ 12. The Parties have produced a result that they believe to be in their respective best interests. Accordingly, this factor favors final approval.

*g.   There is No Governmental Participant in this Action*

As this case does not involve a governmental participant, this factor does not apply.

*h.   The Positive Reaction of the Class Members to the Settlement Favors Final Approval*

"The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court." *Vasquez*, 266 F.R.D. at 490 (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528). "Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable." *Barbosa*, 297 F.R.D. at 448

19

(citation omitted). Indeed, "[i]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 (collecting cases).

To date, not a single Settlement Class member has objected to the Settlement, and none have chosen to opt out. Passarella Decl., ¶ 22. By contrast, approximately 14,067 Settlement Class Members submitted claims and stand to receive benefits from the Settlement. *Id.*, ¶ 16. Accordingly, the reaction of the Settlement Classes should be considered highly favorable. *Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness").

### i. Lack of Collusion Among the Parties

The parties negotiated a substantial, multifaceted Settlement, as described above. Class Counsel and NRS's counsel are well-versed in handling data-related class actions such as this one and fully understand the values recovered in similar cases. The assistance of a respected third-party mediator also is evidence of no collusion. Therefore, the Court can be assured that the negotiations were not collusive. *See G. F. v. Contra Costa Cnty.,* No. 13-CV-03667-MEJ, 2015 WL 7571789, at *11 (N.D. Cal. Nov. 25, 2015) (working with neutral mediators is "a factor weighing in favor of a finding of non-collusiveness") (internal quotation marks and citation omitted).

### C. Notice was Provided According to the Preliminary Approval Order and Satisfied Due Process and Rule 23

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950). While individual notice should be provided where

class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic mail or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the direct mail Postcard Notice is the gold standard, and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342 (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc*., Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves and/or enter an appearance through an attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *See Espinosa v. United Student Aid Funds, Inc*., 553 F.3d 1193, 1202 (9th Cir. 2008), aff'd, 559 U.S. 260, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) ("The standard for what amounts to constitutionally adequate notice, however, is fairly low; it's 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection.'").

As outlined in detail in the supporting declaration of the Settlement Administrator, the Notice Plan here, and its execution, satisfied all the requirements of Rule 23(c). After all re-mailings, Kroll has reason to believe that the initial mailed notice likely reached re-mailings likely reached 216,173 of the 223,682 Settlement Class Members—a reach ate of approximately 96.64%. Passarella Decl. ¶ 13. This

reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign. *Id*. This reach rate also does not include the second mailed "reminder" notice to 215,997 Settlement Class Members, or the substantial amount of Settlement Website visits and calls to the IVR phone system. *Id*. at ¶¶ 5-6, 10.

Notice here was robust, effective, and met all due process requirements, as well as the requirements of Rule 23(c). This weighs in favor of final approval as well.

### D. The Settlement Class Should be Finally Certified

Courts have broad discretion to certify a class for purposes of a class action settlement. *Zinser v. Accuflix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001); *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1807 (1996) n. 19 (holding certification in settlement cases is subject to a "lesser standard of scrutiny")**;** *see also Navellier v. Sletter*, 262 F.3d 923, 941 (9th Cir. 2001). The fundamental question "is not whether…plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). Here, nothing has changed vis a vis class certification since the Court preliminarily certified the Settlement Class. For the same reasons articulated in connection with preliminary approval (and recapped here), the Settlement Class satisfies the Rule 23(a) and 23(b)(3) requirements for final certification.

### V.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court grant final certification of the Class and final approval of the Settlement reached in this matter and enter the proposed Final Approval Order accordingly.

1

Dated: November 4, 2024

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

*/s/ David K. Lietz*
David K. Lietz
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Email: dlietz@milberg.com

George Haines, Esq. (#9411)
Gerardo Avalos, Esq. (#15171)
8985 South Eastern Avenue, Suite 350
Las Vegas, Nevada 89123
Telephone: (702) 880-5554
Email: Ghaines@freedomlegalteam.com

David Hilton Wise, Esq.
Joseph M. Langone, Esq.
WISE LAW FIRM, PLC
421 Court Street
Reno, Nevada 89501

M. Anderson Berry
Gregory Haroutunian
CLAYEO C. ARNOLD
A PROFESSIONAL CORPORATION
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Email: aberry@justice4you.com
gharoutunian@justice4you.com

Gary M. Klinger
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
227 Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

Michael Kind, Esq. (#13903)
KIND LAW
8860 South Maryland Parkway, Suite 106
Las Vegas, Nevada 89123

Jean Martin, Esq.
MORGAN & MORGAN
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602

*Attorneys for Plaintiffs and Settlement Class*

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 4, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered users.

*/s/ David K. Lietz*
David K. Lietz